Robert E. Boone III (California Bar No. 132780)
reboone@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
120 Broadway, Suite 300
Santa Monica, CA  90401-2386
Telephone:   (310) 576-2100
Facsimile:    (310) 576-2200

Kelly W. Cunningham (California Bar No. 186229)
kcunningham@cislo.com
**CISLO AND THOMAS LLP**
12100 Wilshire Boulevard, Suite 1700
Los Angeles, CA 90025
Telephone:   (310) 451-0647
Facsimile:    (310) 394-4477

Attorneys for Defendant
AMP PLUS, INC. d/b/a Elco Lighting

# UNITED STATED DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DMF, Inc., a California corporation, | Case No. 2:18-cv-07090-CAS-GJS |
| Plaintiff, | **DEFENDANT AMP PLUS, INC. dba ELCO LIGHTING'S OPPOSITION TO PLAINTIFF DMF, INC.'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| AMP PLUS, INC., d/b/a ELCO LIGHTING, a California corporation; ELCO LIGHTING, INC., a California corporation, | Date:          January 7, 2019 Time:          10:00 a.m. Location:      Courtroom 8D, 350 West First Street, Los Angeles, CA |
| Defendants. | |
| AMP PLUS, INC., d/b/a ELCO LIGHTING, a California corporation; | |
| Counterclaimant, | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |
| v. | |
| DMF, Inc., a California corporation, | |
| Counter-Defendant. | |

USA01\12335985.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................ 1

II.  FACTUAL BACKGROUND ...................................................................... 2

III. LEGAL STANDARDS .............................................................................. 3

IV.  DMF IS NOT LIKELY TO SUCCEED ON THE MERITS BECAUSE
     THE '266 PATENT IS VULNERABLE TO BEING FOUND INVALID .... 4

     A.   The '266 Patent is Vulnerable to Being Found Invalid in View of
          the Prior Art .................................................................................... 5

          1.   The '266 Patent is Anticipated by Both the Kim and Imtra
               References ............................................................................... 5

               a.   The Kim Patent, U.S. Patent No.  9,222,661 ................... 5

               b.   The Imtra Product and Product Description .................... 6

          2.   The '266 Patent is Obvious in View of Kim, in View of
               Imtra, and in View of the Combined Teachings of Numerous
               Other Prior Art ....................................................................... 6

               a.   The Kim Patent, U.S. Patent No. 9,222,661 ................... 7

               b.   The Imtra Product and Product Description .................... 7

               c.   The Yoshiro Patent Reference, Japan Patent No.
                    JP2007265961A ............................................................. 8

               d.   The Gloisten Patent, U.S. Patent No. 7,566,154 ............. 8

               e.   The Reisenauer Patent, U.S. Patent No. 7,488,097 ......... 8

               f.   The LMH2 Product and Product Description ................. 9

     B.   The '266 Patent is Vulnerable to Being Held Invalid as
          Impermissibly Indefinite Because the '266 Patent Claims 1-21
          Impermissibly Include Method Steps in an Apparatus Claim ............ 10

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

V.    DMF IS NOT LIKELY TO SUCCEED ON THE MERITS BECAUSE
      ELCO'S MODIFIED ELL MODULE DOES NOT INFRINGE .................11

      A.    The "Closed Rear Face" of the Casting Means the Exterior Rear
            Surface .................................................................................12

            1.    The Claims Demonstrate the Term "Closed Rear Face"
                  Means the Exterior Surface .......................................12

            2.    The Specification Demonstrates that the Term "Closed Rear
                  Face" Means the Exterior Surface ..............................13

            3.    The Prosecution History Demonstrates That DMF
                  Misconstrues the Patent Claim Term "Closed Rear Face".......14

      B.    DMF Mischaracterizes the Comparison Between the '266 Patent
            Claims and Elco's Modified ELL Module ..........................14

VI.   DMF IS NOT LIKELY TO PREVAIL BECAUSE IT HAS UNCLEAN
      HANDS .....................................................................................15

VII.  DMF HAS NOT DEMONSTRATED IRREPARABLE HARM.................16

      A.    DMF Has Not Demonstrated Lost Market Share ...............18

      B.    DMF Has Not Demonstrated a Tarnished Reputation.......20

      C.    DMF's Product Safety Accusations Against Elco are False and Do
            Not Establish Irreparable Harm ......................................22

      D.    DMF's Alleged Possible Loss of Its Investment Is Measurable and
            Does Not Constitute Irreparable Harm .............................24

VIII. THE BALANCE OF HARDSHIPS WEIGHS AGAINST AN
      INJUNCTION .............................................................................24

IX.   AN INJUNCTION WILL NOT SERVE THE PUBLIC INTEREST .........24

X.    ANY INJUNCTION MUST BE NARROWLY TAILORED....................25

XI.   CONCLUSION ...........................................................................25

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEFENDANT AMP PLUS, INC. DBA ELCO LIGHTING'S OPPOSITION TO
PLAINTIFF DMF, INC.'S MOTION FOR PRELIMINARY INJUNCTION

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*,
    452 F.3d 1331 (Fed. Cir. 2006) ........................................................... 4

*Amazon.com, Inc. v. Barnesandnoble.com*,
    239 F.3d 1343 (Fed. Cir. 2001) ....................................................... 4, 16

*Apple Inc. v. Samsung Elecs. Co.*,
    695 F.3d 1370 (Fed. Cir. 2012) ......................................................... 16

*Apple Inc. v. Samsung Elecs. Co.*,
    735 F.3d 1352 (Fed. Cir. 2013) ......................................................... 16

*Apple Inc. v. Samsung Electronics Co.*,
    678 F.3d 1314 (Fed. Cir. 2012) ......................................................... 16

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
    726 F.3d 1296 (Fed. Cir. 2013) ........................................................... 3

*Automated Merchandising Sys., Inc. v. Crane Co*,
    357 F. App'x 297 (Fed. Cir. 2009) ............................................... 16, 17

*Aventis Pharma S.A. v. Hospira, Inc.*,
    743 F. Supp. 2d 305 (D. Del. 2010) ............................................. 10, 11

*Bilski v. Kappos*,
    561 U.S. 593, 130 S.Ct. 3218, 177 L.Ed. 2d 792 (2010) .................. 10

*Bristol- Myers Squibb Co. v. Ben Venue Labs., Inc.*,
    246 F.3d 1368 (Fed. Cir. 2001) ........................................................... 6

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    CASE NO. 1:15 CV 2331, 2015 WL 7430082
    (N.D. Ohio Nov. 18, 2015) ................................................................ 20

*In re Cruciferous Sprout Litig.*,
    301 F.3d 1343 (Fed. Cir. 2002) ........................................................... 5

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ................................................................... 17, 22

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

*Erico International Corp. v. Vutec Corp.*,
    516 F.3d 1350 (Fed. Cir. 2008) ........................................................... 4

*Hoist Fitness Systems, Inc. v. Tuffstuff Fitness Int'l, Inc.*,
    No. EDCV1701388ABKKX, 2017 WL 5640562
    (C.D. Cal. Oct. 31, 2017)........................................................... 3, 20

*Hologic, Inc. v. Senorx, Inc.*,
    No. C-08-00133-RMW, 2008 WL 1860035
    (N.D. Cal. Apr. 25, 2008) ........................................................... 16

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005) ........................................................... 10

*Johnson Worldwide Associates, Inc. v. Zebco Corp.*,
    175 F.3d 985 (Fed. Cir. 1999) ........................................................... 14

*Johnston v. IVAC Corp.*,
    885 F.2d 1574 (Fed. Cir. 1989) ........................................................... 14

*Markman, Inc. v. Westview Instruments, Inc.*,
    54 F.3d 967 (Fed. Cir. 1995) (*en banc*),
    *aff'd*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)...................... 11

*Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*,
    976 F.2d 1559 (Fed. Cir. 1992) ........................................................... 5

*Nanoexa Corp. v. Univ. of Chicago*,
    No. 10-CV-2631-LHK, 2010 WL 3398532
    (N.D. Cal. Aug. 27, 2010) ........................................................... 17

*Nutrition 21 v. United States*,
    930 F.2d 867 (Fed. Cir. 1991) ........................................................... 17

*Open Text, S.A. v. Box, Inc.*,
    36 F. Supp. 3d 885 (N.D. Cal. 2014) ........................................................... 17

*Perricone v. Medicis Pharmaceutical Corp.*,
    432 F.3d 1368 (Fed. Cir. 2005) ........................................................... 5, 6

*Phillips v. AWH Corp.*,
    415 F.3d 1303, 75 U.S.P.Q.2d 1321 (Fed. Cir. 2005).................................... 12

*Sas v. Blow Mold Servs., Inc.*,
    No. CV1200867RGKDTBX, 2012 WL 12882423
    (C.D. Cal. Oct. 2, 2012)........................................................... 24

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

iv

DEFENDANT AMP PLUS, INC. DBA ELCO LIGHTING'S OPPOSITION TO
PLAINTIFF DMF, INC.'S MOTION FOR PRELIMINARY INJUNCTION

*Schering Corp. v. Geneva Pharm., Inc.*,
    339 F.3d 1373 (Fed. Cir. 2003) ............................................................. 6

*Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs*
    *Logistics, LLC*,
    No. CV 17-1390-LPS-CJB, 2018 WL 395750
    (D. Del. Jan. 8, 2018).............................................................................. 20

*Thome v. U.S.F.D.A.*,
    No. 11-cv-00676-LHK, 2011 WL 856290
    (N.D. Cal. Mar. 9, 2011) ...................................................................... 16

*Travel Tags, Inc. v. UV Color, Inc.*,
    690 F. Supp. 2d 785 (D. Minn. 2010) ................................................... 17

*Trebro Mfg., Inc. v. Firefly Equipment, LLC*,
    748 F.3d 1159 (Fed. Cir. 2014) ....................................................... 19, 20

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) ......................... 3, 16

**Statutes**

35 U.S.C. § 101 ............................................................................................ 10

35 U.S.C. § 102 .............................................................................................. 5

35 U.S.C. § 102(a) .......................................................................................... 5

35 U.S.C. § 103 ........................................................................................... 5, 6

35 U.S.C. § 112(b) ....................................................................................... 10

35 U.S.C. § 271(b) ....................................................................................... 15

35 U.S.C. § 271(c) ....................................................................................... 15

**Rules**

Fed. R. Evid. § 701 ................................................................................ 17, 22

Fed. R. Evid. § 705 ................................................................................ 17, 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEFENDANT AMP PLUS, INC. DBA ELCO LIGHTING'S OPPOSITION TO
PLAINTIFF DMF, INC.'S MOTION FOR PRELIMINARY INJUNCTION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

DMF is not entitled to an injunction because it fails to satisfy its burden of proof on each element it must demonstrate to obtain such extraordinary relief.

DMF cannot demonstrate it likely will prevail on the merits at trial for several reasons.  First, DMF's '266 patent is vulnerable to being invalidated based on a plethora of prior art references, each of which, and in combination with each other, anticipate and/or render obvious the '266 claims.  The '266 patent is vulnerable to being invalidate also because it improperly mixes classes of claims together into single claims and thus is impermissibly indefinite.  Second, even if the '266 patent were valid (and it is not), Elco is not infringing the patent.  Elco's ELL module clearly falls outside the patent's claims because the ELL module's light source is closer to the open front face of the casting than the rear closed face — just the opposite of what is claimed in the '266 patent.  Third, Elco has a strong affirmative defense that DMF has unclean hands based on DMF's deceptive marketing of its OneFrame system and DRD2 product.  As a matter of law, DMF cannot obtain injunctive relief to preserve its alleged goodwill and reputation built on fraud.

DMF also has not and cannot establish that absent an injunction it will be irreparably harmed.  DMF fails to demonstrate that it has lost market share, or that its purported goodwill or reputation has been tarnished, as a result of Elco's sales of ELL modules.  DMF's evidence of irreparable harm amounts to nothing more than inadmissible speculation and hearsay, and outright false accusations about alleged defects in Elco's product.  DMF pulled the wool over the eyes of the lighting industry with its false marketing scheme, but its attempt to do the same with this Court fails.  In any event, DMF's alleged injuries are simply measurable damages.

DMF also fails to demonstrate that the balance of equities tips in its favor, or that an injunction is in the public interest.  Indeed, it would constitute a harsh result

1

1  if Elco were enjoined from selling its non-infringing product, in favor of a patent

2  holder who defrauded the market about a patent that likely will be invalidated.  By

3  contrast, without an injunction DMF can still be made whole by damages if it

4  succeeds (albeit unlikely) on claims.  Moreover, it is not in the public interest to

5  reward DMF's deceptive marketing tactics with an injunction.  The public interest is

6  best served by permitting free and truthful competition.

7  **II.    FACTUAL BACKGROUND**

8         Although Elco contends that its initial ELL design did not infringe DMF's

9  '266 patent, that design is moot for purposes of this Motion because Elco no longer

10  sells that version of the product.  Elco's last shipment of the initial ELL design was

11  early September.  (Declaration of Saeed "Steve" Cohen ("Cohen Decl.") ¶ 8.)  There

12  is no conduct to enjoin regarding that design version of Elco's ELL module.

13         The only product at issue for this Motion is Elco's modified ELL design,

14  which Elco developed in August 2018, and began selling in September 2018.  (*Id.* at

15  ¶¶ 9-10.)  As explained in detail by Elco's expert, Timothy Fisher, the modified

16  ELL design does not infringe the '266 patent, primarily because the LED light

17  source is located closer to the open front face of the casting than to the rear closed

18  face of the casting.  (Declaration of Timothy S. Fisher ("Fisher Decl.") ¶¶ 45-51; *see*

19  Cohen Decl. 9 and Exh. 1.)  Notably, as modified, the ELL module no longer fits

20  inside a standard 2" junction box, which is DMF's biggest selling point about the

21  DRD2 module.

22         By its Motion DMF seeks to protect its alleged goodwill and reputation based

23  on its self-proclaimed innovative DRD2 module and OneFrame system.  However,

24  whatever goodwill or reputation DMF developed regarding its '266 patent is ill-

25  gotten.  In an effort to garner initial interest in these products, DMF misrepresented

26  that they are fire-rated up to 2 hours under UL Standard 514A and can be installed

27  in any ceiling.  DMF's product literature is riddled with these false statements.  (*See*

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1   Declaration of Benjamin Ardestani ("Ardestani Decl.") ¶¶ 25-31 and Exhs. 6-8.)

2         In truth, DMF's products are not fire-rated up to 2 hours under UL Standard

3   514A.  That standard has nothing to do with fire rating, and to pass fire-rating

4   requirements the products must be installed in a fire-rated ceiling, not just any

5   ceiling, as DMF suggests.  (*Id.* at ¶¶ 32-35 and Exhs. 9-10.)  Acknowledging its

6   false advertising, DMF only recently changed its product literature to remove some

7   of these blatant lies.  (*Id.* at ¶¶ 36-44 and Exhs. 11-13.)

8         Despite those revisions, DMF continues to misrepresent its DRD2 related

9   products.  DMF continues to falsely represent that its junction boxes recommended

10  for use with the DRD2 module are recessed downlights (*id.* at ¶¶ 45-49 and Exhs.

11  14-17), and to inaccurately suggest that all junction boxes used for recessed lights

12  must be fire-rated (Declaration of Louise Gardner ("Gardner Decl.") ¶¶ 8-13.

13  **III.   LEGAL STANDARDS**

14        "A preliminary injunction is an 'extraordinary and drastic remedy.'"  *Hoist*

15  *Fitness Systems, Inc. v. Tuffstuff Fitness Int'l, Inc.*, No. EDCV1701388ABKKX,

16  2017 WL 5640562, at *1 (C.D. Cal. Oct. 31, 2017) (internal citations and quotations

17  omitted).  A preliminary injunction "may only be awarded upon a <u>clear showing</u> that

18  the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555

19  U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (emphasis added).

20        "A plaintiff seeking a preliminary injunction must establish that he is likely to

21  succeed on the merits, that he is likely to suffer irreparable harm in the absence of

22  preliminary relief, that the balance of equities tips in his favor, and that an injunction

23  is in the public interest."  *Winter*, 55 U.S. at 20.  An accused infringer can defeat a

24  showing of likelihood of success on the merits by demonstrating a substantial

25  question of validity or infringement.  *See Aria Diagnostics, Inc. v. Sequenom, Inc.*,

26  726 F.3d 1296, 1304 (Fed. Cir. 2013).

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEFENDANT AMP PLUS, INC. DBA ELCO LIGHTING'S OPPOSITION TO
PLAINTIFF DMF, INC.'S MOTION FOR PRELIMINARY INJUNCTION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**IV.    DMF IS NOT LIKELY TO SUCCEED ON THE MERITS BECAUSE THE '266 PATENT IS VULNERABLE TO BEING FOUND INVALID**

To demonstrate a likelihood of success on the merits, DMF must show that it will likely prove infringement of the asserted claims, and that the asserted claims will likely withstand any invalidity challenge(s). *Amazon.com, Inc. v. Barnesandnoble.com*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). If the accused infringer raises a substantial question regarding infringement or validity, the Court should deny the motion for preliminary injunction. *Id.* at 1350-51.

The accused infringer need not prove patent invalidity by clear and convincing evidence, but need only show at this stage of the case the "vulnerability" of the patent. *Erico International Corp. v. Vutec Corp.*, 516 F.3d 1350, 1356 (Fed. Cir. 2008). Indeed, demonstrating a substantial question of invalidity requires <u>less</u> proof than at trial or summary judgment:

> A particular reference which did not on its face disclose all of the limitations of the claim in suit was argued to be anticipatory, even though there was a conflict in the testimony as to whether the reference would have taught one of ordinary skill in the art the claim limitations not expressly stated on the face of the reference. Although insufficient to demonstrate invalidity for purposes of the summary judgment motion, the reference was enough to prevent issuance of the preliminary injunction.

*Amazon.com*, 239 F.3d at 1358-59.

If Elco raises a substantial question as to the validity of the '266 patent that DMF does not conclusively rebut, then DMF cannot – as a matter of law – demonstrate the required likelihood of success on the merits. *Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*, 452 F.3d 1331, 1335 (Fed. Cir. 2006); *Erico International*, 516 F.3d at 1356. That is precisely the case here.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**A.** **The '266 Patent is Vulnerable to Being Found Invalid in View of the Prior Art**

**1.** **The '266 Patent is Anticipated by Both the Kim and Imtra References**

A patent claim is invalid if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a). This standard is considered to be the "novelty" requirement of a patent.

The '266 patent is vulnerable to being held invalid, sufficient for the Court to deny DMF's Motion. The '266 patent claims a priority date of July 5, 2013. Any printed publications, including patents and published patent applications, published before that date constitute prior art per 35 U.S.C. §§ 102, 103.

**a.** **The Kim Patent, U.S. Patent No. 9,222,661**

The prior art Kim Patent (Exh. 1 to Fisher Decl.) states a priority date of February 6, 2013. It discloses the structure recited in the independent claims of the '266 patent. (Fisher Decl. ¶ 33.) The Kim Patent Claim Chart (Exh. 2 to Fisher Decl.) shows how the Kim Patent anticipates representative claim 1 of the '266 patent. Even if the Kim Patent does not expressly disclose a plurality of elements positioned proximate to the open front face of the casting so as to align with corresponding tabs of a standard junction box, these alignment features would be inherent in the product in that one must align and mount the device in order to use it.

A single prior art reference that discloses, either expressly or inherently, each limitation of a claim invalidates that claim by anticipation. *Perricone v. Medicis Pharmaceutical Corp.*, 432 F.3d 1368, 1375-76 (Fed. Cir. 2005) (*citing*, *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir. 1992). Thus, a prior art reference without express reference to a claim limitation may nonetheless anticipate by inherency. *Id.* (*citing*, *In re Cruciferous*

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1   *Sprout Litig.*, 301 F.3d 1343, 1349 (Fed. Cir. 2002). "Under the principles of

2   inherency, if the prior art necessarily functions in accordance with, or includes, the

3   claims limitations, it anticipates."  *Id.*

4        The doctrine of anticipation by inherency is consistent with the basic principle

5   in patent law that "that which would literally infringe, if later in time, anticipates if

6   earlier."  *See*, *Bristol- Myers Squibb Co. v. Ben Venue Labs.*, Inc., 246 F.3d 1368,

7   1378 (Fed. Cir. 2001).  Inherency operates to anticipate entire inventions as well as

8   single limitations within an invention.  *Schering Corp. v. Geneva Pharm., Inc.*, 339

9   F.3d 1373, 1379-80 (Fed. Cir. 2003).

10       Here, forming elements proximate to the open front face so as to align with a

11  standard junction box is inherent in that the Kim product must be aligned and

12  mounted such as to an electrical box during use.  (Fisher Decl. ¶ 34.)

13                   **b.    The Imtra Product and Product Description**

14       The prior art Imtra product and product description (Exh. 3 to Fisher Decl.)

15  was published at least by June 17, 2012.  The Imtra catalog discloses the structure

16  recited in the independent claims of the '266 patent.  The Imtra Claim Chart shows

17  how the Imtra catalog anticipates representative claim 1 of the '266 patent.  (Exh. 4

18  to Fisher Decl.)

19       **2.    The '266 Patent is Obvious in View of Kim, in View of Imtra,**

20             **and in View of the Combined Teachings of Numerous Other**

21             **Prior Art**

22       In addition, for the patent claim to be valid, it must be "non-obvious" in view

23  of the combined teachings of the prior art.  Specifically, a patent claim is invalid "if

24  the differences between the claimed invention and the prior art are such that the

25  claimed invention as a whole would have been obvious before the effective filing

26  date of the claimed invention to a person having ordinary skill in the art to which the

27  claimed invention pertains."  35 U.S.C. § 103.

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

### a.  The Kim Patent, U.S. Patent No. 9,222,661

The Kim Patent also renders obvious the independent claims of the '266 Patent because it discloses the structure recited in the '266 claims.  Even if the Kim Patent does not expressly disclose a plurality of elements positioned proximate to the open front face so as to align with corresponding tabs of a standard junction box, the addition of such alignment features would have been obvious to a person of ordinary skill in the art.  (Fisher Decl. ¶¶ 36-38 and Exhs. 1-2.)

Additionally, the prior art Foshan Patent reference (Exh. 5 to Fisher Decl.) was published on February 13, 2013.  The Foshan reference discloses a recessed lighting device that has a plurality of elements positioned proximate to the open front face so as to align with corresponding tabs of a standard junction box, and, by the priority date for the '266 patent, there were numerous adaptor plates on the market for mounting such recessed lighting to a standard-sized junction box, such as the Blackman reference.  (Fisher Decl. ¶¶ 39-40 and Exhs. 5-6).  The Kim/Foshan/Blackman Claims Chart shows how the disclosures of Kim combined with the alignment features of Foshan or the Blackman adapter plate renders obvious  aligning and mounting the device inside a standard-sized junction box. (Fisher Decl. ¶¶ 41-42 and Exh. 7.)

### b.  The Imtra Product and Product Description

The Imtra product and product description (Exhs. 3-4 to Fisher Decl.) likewise renders obvious the independent claims of the '266 patent because they disclose the structure recited in the '266 claims.  Regardless of any differences between Imtra's mounting springs and DMF's claimed plurality of alignment elements, the addition of such alignment features to Imtra would have been obvious to a person of ordinary skill in the art, and numerous adaptor plates for such purposes are commonly available, as discussed above with respect to the Kim patent.  (Fisher Decl. ¶ 43.)  The Imtra catalog even offered "screw-mount fixtures."

(Exh. 4 to Fisher Decl., at p. 3.)

Additionally, the disclosures of Imtra, together with the plurality of alignment features in the Foshan reference, render obvious the claims of the '266 patent. The Imtra/Foshan/Blackman Claims Chart shows how the disclosures of Imtra combined with the alignment features of Foshan or the Blackman adapter plate renders obvious aligning and mounting the device inside a standard-sized junction box. (Fisher Decl. ¶ 43 and Exh. 8).

### c.    The Yoshiro Patent Reference, Japan Patent No. JP2007265961A

The prior art Yoshiro patent reference (Exh. 9 to Fisher Decl.) was published on October 11, 2007 and likewise renders obvious the independent claims of the '266 patent because it, combined with the alignment features of Foshan or Blackman, discloses the structure recited in the claims. The Yoshiro/Foshan/Blackman Claim Chart showing how Yoshiro, in combination with either Foshan or Blackman, render obvious representative claim 1 of the '266 patent. (Fisher Decl. ¶ 44 and Exh. 10.)

### d.    The Gloisten Patent, U.S. Patent No. 7,566,154

The prior art Gloisten Patent (Exh. 11 to Fisher Decl.) was published on March 27, 2008 and likewise renders obvious the independent claims of the '266 Patent. Gloisten, together with the alignment features of Foshan or Blackman, discloses the structure recited in the claims of the '266 patent. The Gloisten/Foshan/Blackman Claim Chart shows how the Gloisten patent renders obvious representative claim 1 of the '266 Patent. (Fisher Decl. ¶ 45 and Exh. 12).

### e.    The Reisenauer Patent, U.S. Patent No. 7,488,097

The prior art Reisenauer Patent (Exh. 13 to Fisher Decl.) was published on August 23, 2007 and likewise renders obvious the independent claims of the '266 patent because it, combined with the alignment features of Foshan or Blackman,

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEFENDANT AMP PLUS, INC. DBA ELCO LIGHTING'S OPPOSITION TO
PLAINTIFF DMF, INC.'S MOTION FOR PRELIMINARY INJUNCTION

discloses the structure recited in the claims.  The Reisenauer/Foshan/Blackman

Claim Chart shows how the Reisenauer Patent renders obvious representative claim

1 of the '266 patent.  (Fisher Decl.¶ 46 and Exh. 14).

### f.       The LMH2 Product and Product Description

The prior art LMH2 (Exh. 15 to Fisher Decl.) was published at least as early

as September 9, 2012.  The LMH2 online product description, combined with the

alignment features of Foshan or Blackman, discloses the structure recited in the

independent claims of the '266 patent.  The LMH2/Foshan/Blackman Claim Chart

shows how the LMH2 renders obvious representative claim 1 of the '266 patent.

(Exh. 16 to Fisher Decl.)

DMF previously argued that the LMH2 is not relevant because it discloses an

external driver, not enclosed under the reflector as required by the claims of the '266

patent.  The '266 patent claims, however, recite the driver as including an electronic

device to either supply _or_ regulate the electrical energy to the light source module:

the driver including an electronic device to at least one of supply and regulate

electrical energy to the light source module (Dkt. No. 1-1, the '266 patent, at

claim 1, col, 8, lines 5-7).

Regardless of whether the LMH2 uses an external driver for the supply of

electrical energy to the light module, the LMH2 additionally houses a driver that

includes an electronic device for regulating the electrical energy to the light source

module, and this driver is indeed internal and enclosed under the reflector:



BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1   (Fisher Decl. ¶¶ 48-50 and Exh. 16, the third row of the claim comparison).

2        Thus, the claims of DMF's '266 patent are a merely obvious combination of

3   already known elements.  The concept of having a compact recessed lighting system

4   that can fit inside a standard junction box is not new, as demonstrated by the

5   foregoing prior art references and the associated claim charts.  (Fisher Decl. ¶ 50.)

6        **B.    The '266 Patent is Vulnerable to Being Held**

7              **Invalid as Impermissibly Indefinite Because the**

8              **'266 Patent Claims 1-21 Impermissibly Include**

9              **Method Steps in an Apparatus Claim**

10       A patent must contain "one or more claims particularly pointing out and

11  distinctly claiming the subject matter which the inventor or a joint inventor regards

12  as the invention." 35 U.S.C. § 112(b).  The Patent Act specifies four independent

13  classes of inventions eligible for patent protection: processes, machines (apparatus),

14  manufactures, and composition of matter. *Bilski v. Kappos*, 561 U.S. 593, 130 S.Ct.

15  3218, 3225, 177 L.Ed. 2d 792 (2010) (*citing*, 35 U.S.C. § 101).

16       A patent claim is invalid on grounds of indefiniteness if it, for example,

17  impermissibly mixes two or more different classes of patentable subject matter.

18  *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir.

19  2005) (holding patent claim indefinite for reciting both an apparatus and a method

20  step required for the apparatus to infringe the claim apparatus is invalid because "it

21  is unclear when infringement occurs").  In, *Aventis Pharma S.A. v. Hospira, Inc.*, the

22  District Court held a composition claim invalid because, "by its own terms," to

23  infringe, the composition had to additionally "form[] an injectable solution or be

24  used to form an injectable solution." *Aventis Pharma S.A. v. Hospira, Inc.*, 743 F.

25  Supp. 2d 305, 329 (D. Del. 2010) ("Had the patentees wished to state that the

26  composition was merely 'capable of' being formed into a perfusion, they could

27  easily have said so explicitly.").

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1    As in *Aventis Pharma*, DMF impermissibly mixed two different classes of

2 patentable subject matter by including a method step in its apparatus claims 1 - 21.

3 Claim 1 is representative:

> 1.  A compact recessed lighting system, comprising: a
> light source module for emitting light; a driver for
> powering the light source module to emit light, the driver
> including an electronic device to at least one of supply
> and regulate electrical energy to the light source module;
> ...wherein the heat conducting closed rear face and the
> heat conducting sidewall of the unified casting
> ***significantly dissipate*** heat generated by the light source
> module ***during operation*** of the light source module.

(Dkt. No, 1-1, the '266 patent, at claim 1, col. 8, lines 2-44) (emphasis added).

    As in *Adventis Pharma*, it is unclear whether a "compact recess lighting

system" having all of the forgoing <u>*apparatus*</u> elements would, by itself, infringe

claim 1 or whether it would infringe only if its rear face and sidewalls later, "during

operation," in fact "significantly dissipate heat generated by the light source module

during operation of the light source."  Claims 1-21, therefore, are invalid on the

grounds of indefiniteness.

    As explained above, DMF cannot clearly establish that it is likely to succeed

on the merits because its '266 patent is at least vulnerable to being found invalid.

As a result, the Court must deny DMF's motion for preliminary injunction.

## V.      DMF IS NOT LIKELY TO SUCCEED ON THE MERITS BECAUSE ELCO'S MODIFIED ELL MODULE DOES NOT INFRINGE

    The necessary first step in an infringement or an invalidity analysis is claim

construction.  *Markman, Inc. v. Westview Instruments, Inc.*, 54 F.3d 967, 976 (Fed.

Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577

(1996).  To ascertain the meaning of a claim term, "the words of a claim are

generally given their ordinary and customary meaning," as would be understood by

"a person of ordinary skill in the art in question at the time of the filing of the patent

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

11

1   application in question." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313, 75

2   U.S.P.Q.2d 1321 (Fed. Cir. 2005) (*en banc*).  The person of ordinary skill in the art

3   is deemed to read the claim term not only in the context of the particular claim in

4   which the disputed term appears, but in the context of the entire patent, including the

5   specification.  *Id.*  The 'ordinary meaning' of a claim term, then, is "its meaning to

6   the ordinary artisan after reading the entire patent."  *Id.* at 1321.

7       A.    **The "Closed Rear Face" of the Casting Means the Exterior Rear**

8                   **Surface**

9         DMF argues that the patent claim term "closed rear face" of the unitized

10  casting should be construed as meaning the interior surface of the casting (*see*

11  Motion at 14:12).  However, this contention has no merit.  The '266 patent claims,

12  the patent specification, and the prosecution history are consistent and demonstrate

13  that the claim term "closed rear face" should be construed as the **exterior** surface of

14  the rear wall of the casting.

15          1.    **The Claims Demonstrate the Term "Closed Rear Face"**

16                  **Means the Exterior Surface**

17        In the claims themselves, the term "closed rear face" is used in a manner that

18  would cause a person of ordinary skill to interpret the term as meaning the exterior

19  surface of the rear closed side of the casting.  This much is clear for a variety of

20  reasons.  First, only the *exterior* surface can "significantly dissipate heat generated

21  by the light source module during operation" as recited at the end of both

22  independent claims 1 and 17.  (Fisher Decl. ¶ 30).

23        Second, the very claim phrase that DMF would have this Court misconstrue,

24  "the light source module is closer to the closed rear face of the unified casting than

25  the open front face of the unified casting," compares the distance between the light

26  source and the closed rear face of the casting to the distance between the light

27  source and the open front face of the casting.  To determine whether the "dimension

28

12

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

between the heat conducting closed rear face and the open front face" is "less than 2 inches," one would measure the distance between the two **exterior** surfaces. (*Id.* at ¶ 31). Indeed, the open front face has no interior surface, only an exterior surface (*see* Dkt. No. 1-1, the '266 patent, at Fig. 1, ref. numeral **15**). (Fisher Decl. ¶ 32.)

Third, it would be unreasonable to compare these distances using the exterior surface of the front face but only the interior surface of the rear face. Because the light source is physically attached to the interior surface of the rear closed side of the casting, interpreting "closed rear face" to mean that very interior surface renders superfluous the light source location limitation language DMF added in the last amendment during patent prosecution to get the patent issued. It goes without saying that the light source will always be closer to the interior surface of the rear side — the very surface to which it is attached — than the open front face. A person of ordinary skill would instead compare the distances between the light source and the exterior surfaces of the front and back faces. (Fisher Decl. ¶ 32.)

### 2. <u>The Specification Demonstrates that the Term "Closed Rear Face" Means the Exterior Surface</u>

The specification of the '266 patent makes this even clearer. Both Figures 1 and 2 of the '266 patent clearly identify the exterior rear surface of the casting as the closed rear face **14** (as well as the exterior front surface as the open front face **15**):



FIG. 1

DEFENDANT AMP PLUS, INC. DBA ELCO LIGHTING'S OPPOSITION TO
PLAINTIFF DMF, INC.'S MOTION FOR PRELIMINARY INJUNCTION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  (Dkt. No. 1-1, the '266 patent, at Fig. 1).

2       **3.**     **The Prosecution History Demonstrates That DMF**

3       **Misconstrues the Patent Claim Term "Closed Rear Face"**

4       The prosecution history of the '266 patent demonstrates the importance of the

5  exterior surface of the rear face, not the interior surface.  That is, DMF argued

6  during prosecution that the claimed invention is distinguished over the prior art by

7  having the particular dimensions to fit within a standard-sized junction box.  *See*

8  Exh. 17 to Fisher Decl., DMF's February 6, 2018 Supplemental Amendment, at pp.

9  18-19 ("the claimed heat conducting unified casting ... has a particular configuration

10  and dimensions to facilitate recessing the unified casting substantially inside a

11  standard-sized junction box....").

12       It is the dimension to the **exterior** surface, not the interior surface, of the rear

13  wall of the casting that determines that the patented configuration can fit recessed

14  inside a standard-sized junction box.

15       **B.**     **DMF Mischaracterizes the Comparison Between the '266 Patent**

16       **Claims and Elco's Modified ELL Module**

17       Once the claim terms are properly construed, the trier of fact must compare

18  the properly construed claims to the allegedly infringing device to determine

19  whether the accused device embodies every limitation of the asserted claim(s).

20  *Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir.

21  1999); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989).  A device

22  that does not have each and every element recited in the claim does not literally

23  infringe the patent claim.  *Johnson Worldwide*, 175 F.3d at 988.

24       Elco's modified ELL module does not literally infringe the '266 patent.

25  Contrary to DMF's argument, Elco's modified ELL module does not "add" other

26  structural elements that are not in the patent claims.  DMF claimed a specific

27  arrangement of structures in which, "the light source module is **_closer_** to the closed

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

rear face" than the open front face.  (Dkt. No. 1-1, the '266 patent, claim 1, at col. 8, lines 24-26).  That limitation is in every claim of the '266 patent asserted by DMF.

The light source in Elco's modified ELL module is closer to the open front face of the casting than to the "closed rear face" — that is, just the opposite of the limitation DMF incorporated into its patent claims to get the '266 patent issued.  (Fisher Decl. ¶ 55.)  Because Elco's light source is not closer to the closed rear face, Elco's modified ELL module design does not literally infringe any of the claims of the '266 patent.

Furthermore, because Elco's modified ELL module design does not directly infringe the claims of the '266 patent, as a matter of law there can be no active inducement to infringe per 35 U.S.C. § 271(b) or contributory infringement per 35 U.S.C. § 271(c).  DMF, therefore, cannot clearly establish that it is likely to succeed on the merits.  Accordingly, the Court should deny DMF's Motion.

## VI.   DMF IS NOT LIKELY TO PREVAIL BECAUSE IT HAS UNCLEAN HANDS

DMF deceptively marketed its DRD2 modules in combination with its various junction boxes — coined as its OneFrame system — as a 2-hour fire-rated system certified under UL Standard 514A.  (Ardestani Decl. ¶¶ 25-31 and Exhs. 6-8.)  Contrary to DMF's representations, none of its "OneFrame" system components, including the DRD2 module itself, is fire-rated under that standard.  (Ardestani Decl. ¶ 32.)  Indeed, UL Standard 514A does not even cover fire ratings.  (*Id.*)  DMF essentially represented that its OneFrame system could be installed in any ceiling, when in fact those components must be installed in a fire-rated ceiling to pass fire resistance requirements.  (*Id.* at ¶ 33.)  DMF acknowledged its deceptive marketing tactics when it recently revised its product literature to remove some (but not all) of these misrepresentations.  (*Id.* at ¶¶ 36-44 and Exhs. 11-13.)  Despite those product literature revisions, DMF continues to falsely advertise its OneFrame

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1   system, including its junction boxes.  (*Id.* at ¶¶ 45-49; Gardner Decl. ¶¶ 12-13.)

2        Thus, whatever goodwill and great reputation DMF claims to have developed

3   regarding its DRD2 module and OneFrame system was attained by deceptive

4   marketing tactics.  It cannot now seek to an injunction allegedly to preserve

5   goodwill and reputation built on fraud.

6   **VII.   DMF HAS NOT DEMONSTRATED IRREPARABLE HARM**

7        Failure to prove irreparable harm is an independent ground for denying an

8   injunction.  *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343,

9   1350 (Fed. Cir. 2001).  DMF must prove "that irreparable harm is *likely* in the

10  absence of an injunction."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22

11  (2008) (emphasis in original); *see Thome v. U.S.F.D.A.*, No. 11-cv-00676-LHK,

12  2011 WL 856290, at *2 (N.D. Cal. Mar. 9, 2011) (Koh, J.) (denying TRO for failure

13  to meet the *Winter* standard).  DMF is not entitled to any presumption of irreparable

14  harm; it is the patentee's burden to prove its potential losses cannot be compensated.

15  *Automated Merch.*, 357 F. App'x at 301; *Hologic, Inc. v. Senorx, Inc.*, No. C-08-

16  00133-RMW, 2008 WL 1860035, at *14-15 (N.D. Cal. Apr. 25, 2008).

17       In order to satisfy the irreparable harm factor for injunctive relief, the patent

18  holder must establish the following two requirements: "1) that absent an injunction,

19  it will suffer irreparable harm, and 2) that a sufficiently strong causal nexus relates

20  the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Elecs. Co.*, 695

21  F.3d 1370, 1374 (Fed. Cir. 2012). Furthermore, "the causal nexus requirement is

22  simply a way of distinguishing between irreparable harm caused by patent

23  infringement and irreparable harm caused by otherwise lawful competition—e.g.,

24  'sales [that] would be lost even if the offending feature were absent from the

25  accused product.' " *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1361 (Fed.

26  Cir. 2013) (quoting *Apple Inc. v. Samsung Electronics Co.*, 678 F.3d 1314 (Fed. Cir.

27  2012)).

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEFENDANT AMP PLUS, INC. DBA ELCO LIGHTING'S OPPOSITION TO
PLAINTIFF DMF, INC.'S MOTION FOR PRELIMINARY INJUNCTION

"Although the 'quantum of evidence' required to prove irreparable harm is unclear, case law is clear that the *potential* for loss of market share is insufficient."  *Open Text, S.A. v. Box, Inc.*, 36 F. Supp. 3d 885, 906 (N.D. Cal. 2014) (internal citations omitted).  To support a preliminary injunction, lost market share must be proven.  *Automated Merchandising Sys., Inc. v. Crane Co*, 357 F. App'x 297, 301 (Fed. Cir. 2009) ("Lost market share must be proven (or at least substantiated with some evidence)").  "Neither the difficulty calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justify the extraordinary relief of an injunction prior to trial." *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991).  A court may not rely on "possible market share loss" because that "would apply in every patent case where the patentee practices the invention."  *Id.*  For example, merely demonstrating that defendant's product competes with the patentee's product will not suffice. *Travel Tags, Inc. v. UV Color, Inc.*, 690 F. Supp. 2d 785, 799 (D. Minn. 2010). "Conclusory and speculative allegations [of lost market share] are insufficient to prove irreparable harm."  *Nanoexa Corp. v. Univ. of Chicago*, No. 10-CV-2631-LHK, 2010 WL 3398532, at *5 (N.D. Cal. Aug. 27, 2010).

DMF claims that, unless an injunction issues, it will suffer irreparable harm in the form of "lost market share, loss of customers, pressure to decrease prices, and reputational harm due to ELCO's infringement."  (Mot. at 18.)

But DMF fails to proffer admissible evidence proving any of these alleged harms.  Instead, DMF relies upon inadmissible hearsay, unauthenticated documents and a video, testimony from witnesses who lack personal knowledge and are thus incompetent to testify, and so-called experts whose testimony fails to satisfy the reliability requirements of Federal Rules of Evidence 701 and 705 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993).

In the end, DMF's "evidence" that it will suffer these alleged harms boils

1    down to nothing more than pure, self-serving conjecture, and false accusations of

2    alleged safety issues with Elco's product.

3        **A.    DMF Has Not Demonstrated Lost Market Share**

4        DMF offers no evidence it has lost market share.  DMF claims that it <u>may</u>

5    lose sales if contractors use Elco's product on projects for which DMF's product

6    was originally specified.  Yet DMF fails to proffer any evidence that this has

7    actually occurred – even once – let alone that it has become prevalent.  The only

8    example cited by DMF pertains to a project for the Irvine Company where "Elco

9    ultimately failed to take away the Irvine Company as a customer on this particular

10   project."  (Danesh Decl. at ¶ 60.)  In other words, DMF did not lose any sales or

11   market share.

12       DMF's Motion is devoid of evidence demonstrating that its sales are

13   declining, let alone declining as the result of Elco.  Even if it had proffered such

14   evidence, such losses would be measurable and do not constitute irreparable harm.

15       DMF also claims that Elco is undercutting DMF's "premium pricing" for its

16   DRD2 product and may force DMF to lower its prices.  DMF claims that "once

17   customers buy Elco's knockoff of DMF's products at reduced prices, they are

18   unlikely to buy the real DRD2 LED Modules at DMF's standard pricing."  (Mot. at

19   19.)  But DMF has no evidence that it actually has been forced to lower prices with

20   numerous customers as a result of Elco's pricing.  DMF cites to just one alleged lost

21   $6,000 sale with its customer Capital of South Bay, but as DMF admits, it is fully

22   able to measure those alleged damages.  (Danesh Decl. at ¶ 72.)  Relying on

23   inadmissible hearsay, DMF also cites to an instance where one customer – Walters

24   Wholesale – allegedly asked DMF to give it a price concession on one purchase for

25   its customer, and DMF did so on that one occasion; there is no evidence of any

26   ongoing pricing concession with Walters Wholesale.  (Danesh Decl. at ¶ 71.)  Thus,

27   at best, DMF has lowered its pricing only in a couple of instances.  DMF clearly has

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  not had to lower its prices for all, or even most, of its customers, but even it if had

2  to, those alleged damages can be measured and do not constitute irreparable harm.

3  DMF likewise proffers no evidence that it has permanently lost customers to

4  Elco as a result of Elco's pricing of its ELL product.  Indeed, it makes no sense that

5  would happen if, as DMF contends, its DRD2 product is so far superior to Elco's

6  ELL product.  DMF has no evidence that Elco has stolen DMF customers away by

7  selling them ELL modules.  To the contrary, Elco's sales of its ELL product has

8  been to longstanding Elco customers.  (Cohen Decl. ¶ 17.)  DMF also cannot prove

9  that any of those Elco customers would have purchased DRD2 modules instead of

10  other Elco products if they had not purchased ELL modules.[1/]  But even if DMF

11  could prove that (and it cannot), any such losses are measurable and do not

12  constitute irreparable harm to DMF.

13  Faced with the reality that it has no evidence of losing market share, sales or

14  customers to Elco as a result of Elco's ELL product, DMF asserts – in conclusory

15  fashion – that every sale by Elco constitutes lost market share, lost sales and lost

16  customers, relying on *Trebro Mfg., Inc. v. Firefly Equipment, LLC*, 748 F.3d 1159

17  (Fed. Cir. 2014).  But DMF's reliance on *Trebro* is misplaced.  In *Trebro*, the patent

18  holder proffered admissible, "uncontroverted" evidence demonstrating that it sold a

19  sophisticated, high-cost niche product in a tiny three-party market, including its

20  patent licensee, with very few potential customers; its patented sod harvester retailed

21  for $210,000 each; it sold to non-repeat customers due to the product's longevity; it

22  ___

[1/]  Indeed, DMF has no proof whatsoever that customers would have bought DRD2 modules even if the ELL
module had not been available in the first place.  Those customers could have purchased other Elco products,
or numerous recessed lighting product made by another manufacturer besides Elco and DMF.  (Gardner
Decl. ¶¶ 14-20.)  The only sale of an ELL module that DMF can credibly claim was a lost sale is one where
DMF has proof that the customer installed the ELL module in a standard 2" junction box because that is the
only application that none of the multitude of other competing products – both Elco and non-Elco – can fit.
But DMF does not have any proof of this.  Indeed, Elco has not sold any junction boxes in connection with
any orders for its ELL modules.  (Cohen Decl. ¶ 16.)

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

sold only eight sod harvesters per year; a lost sale represented 1/8 of its gross annual sales revenue for the product and $50,000 in lost profit, roughly equal to the cost of one employee; the company had only 18 employees worldwide, and would have to lay off employees in the absence of an injunction. *See Trebro* at 1164, 1170.

By contrast, here, DMF has not submitted any evidence, let alone undisputed evidence, showing that it operates in conditions similar to those in *Trebro*, or even that it has lost sales or customers to Elco. *See, e.g., Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, No. CV 17-1390-LPS-CJB, 2018 WL 395750, at *15 (D. Del. Jan. 8, 2018) (citing *Cleveland Clinic Found. v. True Health Diagnostics LLC*, CASE NO. 1:15 CV 2331, 2015 WL 7430082, at *5 & n.4 (N.D. Ohio Nov. 18, 2015) (finding that the plaintiff's reliance on the *Trebro* case was misplaced, where the plaintiff "fails to point to any evidence that it lost a single customer as a result of defendant's alleged infringement[,]" offered no evidence of lost market share or loss of access to customers, and admitted that the market for the relevant products was "much larger" than the market in *Trebro*)).  DMF operates in the huge recessed lighting products market, which has many suppliers.  (Gardner Decl. ¶¶ 7(b), 14-20; Cohen Decl. ¶ 14.)   The DRD2 and ELL modules compete against numerous other recessed products provided by multiple suppliers; it is not a two-player, two-product market, as DMF incorrectly suggests and fails to prove. (Gardner Decl. ¶¶ 7(b), 14-20.)  *See, e.g., Hoist,* 2017 WL 5640562, at *3-*4 (denying injunction because parties competed with many other manufacturers and product lines).  But even if DMF has lost sales, they are quantifiable and do not constitute irreparable harm.

**B.   DMF Has Not Demonstrated a Tarnished Reputation**

DMF fails to prove, with admissible evidence, that its reputation has been or will be tarnished because of Elco's product.  For instance, DMF offers no evidence of surveys of customers in the lighting industry demonstrating that customers think

less of DMF or that its DRD2 product is inferior as a result of Elco's ELL product. Indeed, DMF does not even offer any anectdotal evidence of a single such incident.

DMF does not offer any admissible evidence to support its paranoid speculation that:

- Customers believe that DMF and Elco's respective products are made by the same manufacturer in China;
- Specifiers who are DMF customers are no longer specifying DMF's product in favor of Elco's product;
- Sales representatives are no longer promoting DMF's products to specifiers because Elco has more favorable pricing;
- Elco's product is being substituted for DMF's product at the construction/installation phase of projects originally specified with DMF's product;
- Sales representatives have been criticized for specifying or promoting DMF's products because Elco sells its ELL modules;
- Specifiers have been rebuked for specifying DMF products because Elco sells its ELL modules;
- Customers have complained that the DRD2 and ELL modules must be defective because Elco added the "kludge metal 'hat'" to its product; or
- Customers have complained that DMF's product must be defective or subpar because Elco's modified ELL product does not fit neatly in its box.

DMF tries to paint a picture of dire circumstances, but in the end, it has no admissible evidence that any of these phenomena has occurred, even once, let alone is prevalent in the marketplace. The testimony by DMF's hired gun, Chip Israel, is nothing but mere speculation about what people in the lighting industry <u>might</u> think about the parties' products. But Israel failed to conduct any surveys of a sufficient

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEFENDANT AMP PLUS, INC. DBA ELCO LIGHTING'S OPPOSITION TO
PLAINTIFF DMF, INC.'S MOTION FOR PRELIMINARY INJUNCTION

pool of lighting customers and instead relies upon a single telephonic interview, arranged by DMF's counsel no less, with one person who works for a lighting product distributor to "corroborate" his own speculation. Israel's methodology is unscientific, unsound and unreliable. Indeed, he fails to cite to a single instance of any of these alleged hypothetical fears actually occurring. Simply put, his testimony should be precluded under *Daubert* and FRE 701 and 705.

### C. DMF's Product Safety Accusations Against Elco are False and Do Not Establish Irreparable Harm

DMF's accusations that Elco's product is unsafe are misleading and unfounded, and in any event, are insufficient to establish irreparable harm.

250 volt fuse. DMF claims that Elco's use of a 250 volt fuse creates a safety hazard in commercial installations using 277 volts current and will tarnish DMF's product and reputation. This accusation is false, and just demonstrates DMF's willingness to mislead this Court. The fuse Elco uses in its ELL modules is rated for ███████, which is more than sufficient for 277 volt commercial applications. That fuse is UL-certified for use in the ELL modules. It does not present a safety hazard. (Ardestani Decl. ¶¶ 6-18 and Exh.1; Declaration of Joseph O'Neill ("O'Neill Decl.") ¶¶ 4-14 and Exhs. 1-3.)

Ground wire. DMF also claims that Elco's product is improperly grounded. This accusation also is false. Elco's ELL modules do not need a ground wire. UL certified the product without a ground wire, after extensive testing. The product is sufficiently grounded ███████████████████████████. (Ardestani Decl. ¶¶ 19-20 and Exh.2; O'Neill Decl. ¶¶ 15-17 and Exh. 4.) Apparently, DMF was unable to get its alleged 'superior' product UL-certified without a ground wire. That Elco was able to achieve what DMF could not does not mean that Elco is "poisoning the well" regarding these products or that Elco's product is tarnishing DMF's so-called good reputation.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Flickering.  DMF cites to an alleged instance where Elco's product was flickering after installation.  (*See* Chen Decl.)  But DMF does not have any admissible evidence of a product flickering, let alone that it in fact was an Elco ELL module.  DMF's witness on this topic, Benjamin Chen, simply regurgitates what he heard about the incident, all of which is inadmissible hearsay.  For instance, what L.C. Electrical employee Ray Chuang, or Parkway Wholesale employee Gary Hardwick told Mr. Chen about the alleged installation, malfunction/operation and removal of Elco products is not admissible.  (Chen Decl. at ¶¶ 2-4.)  Mr. Chen admittedly was never present at the site while any ELL modules were installed, so he has no personal knowledge about the alleged flickering, or even whether ELL modules were in fact installed there.  (Chen Decl. at ¶ 7 ("…where the ELL LED Modules had been before I arrived").)  The cell phone video of lights flickering that Mr. Parkway allegedly provided to Mr. Chen lacks foundation and is likewise inadmissible.  (Chen Decl. at ¶ 6 and Exh. 2.)  Mr. Chen did not take prepare that video, so he cannot competently testify about when and how the video was made, or even which products were installed at the time the video was made.

But even if DMF's evidence were admissible (and it is not), that evidence does not prove any defect in Elco's product.  DMF does not have any evidence of the actual cause of the flickering.  DMF has no evidence that anyone tested the alleged flickering lights, the circuit or circuits to which those lights were connected, the actual voltage or amperage being supplied to those lights at the time, or whether other equipment or products were connected to the circuit(s) at the time.  Without knowing that information, the cause of the flickering could be any number of reasons.  Elco's own testing of the ELL module under 277 volts did not duplicate the alleged flickering, demonstrating that the alleged flickering was not due to a product defect.  (Ardestani Decl. ¶¶ 23-24 and Exhs. 4-5.)

DMF nevertheless did not suffer any measurable damages or irreparable harm

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1   from this event. To the contrary, the customer attributed his dissatisfaction to Elco's

2   product alone, not to DMF's product. *See Sas v. Blow Mold Servs., Inc.*, No.

3   CV1200867RGKDTBX, 2012 WL 12882423, at \*4–5 (C.D. Cal. Oct. 2, 2012)

4   (finding no evidence of injury to reputation or goodwill where customer emails

5   expressed dissatisfaction with defendant's product and requested a guarantee that

6   plaintiff's would not have the same issue). Ironically, DMF benefitted from the

7   situation, gaining a sale of its own product to replace the Elco fixtures.

8       **D.**    **DMF's Alleged Possible Loss of Its Investment Is Measurable and**

9               **Does Not Constitute Irreparable Harm**

10       DMF's claim that it may not recoup its alleged investment in its DRD2

11   product does not constitute irreparable harm as a matter of law for the simple reason

12   that such alleged damages can be measured.

13   **VIII.** **THE BALANCE OF HARDSHIPS WEIGHS AGAINST AN**

14         **INJUNCTION**

15       The balance of hardships tips heavily in favor of Elco, not DMF. Elco should

16   not be enjoined from selling its non-infringing product, in favor of a patent that

17   likely will be invalidated for a variety of reasons, as explained above. That would

18   be a harsh consequence for Elco, particularly in light of DMF's deceptive marketing

19   tactics. DMF should not be rewarded for its fraudulent practices.

20   **IX.** **AN INJUNCTION WILL NOT SERVE THE PUBLIC INTEREST**

21       Competition in the marketplace is healthy and benefits the consuming public.

22   An injunction to preserve DMF's alleged goodwill and reputation, built on its

23   deceptive marketing scheme, will not serve the public interest. DMF deceived the

24   public about its DRD2 module and OneFrame system to unfairly compete with Elco

25   and others in the lighting industry. The public interest is served by truthful

26   marketing of products and services, not by deception. By issuing the requested

27   injunction, this Court would be condoning DMF's fraudulent practices.

28   

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

USA01\12335985.2

24

X.    **ANY INJUNCTION MUST BE NARROWLY TAILORED**

Elco should not be enjoined from selling trims, housings and junction boxes. Those items can be used with many different products besides the ELL module. DMF is not entitled to an injunction against selling those items.  Furthermore, if an injunction were to be issued, it should be strictly limited to Elco's modified ELL module that Elco.

XI.    **CONCLUSION**

For the foregoing reasons, the Court should deny DMF's Motion for Preliminary Injunction.  If, however, the Court issues an injunction, Elco requests that the Court order DMF to post a bond in the amount of $2 million.


Dated:  December 3, 2018        **BRYAN CAVE LEIGHTON PAISNER LLP**


By:  */s/ Robert E. Boone III*
            Robert E. Boone III

            Attorneys for Defendant
            AMP PLUS, INC. d/b/a Elco Lighting

DEFENDANT AMP PLUS, INC. DBA ELCO LIGHTING'S OPPOSITION TO
PLAINTIFF DMF, INC.'S MOTION FOR PRELIMINARY INJUNCTION