Ben M. Davidson, Esq., Bar No. 181,464
*ben@dlgla.com*
DAVIDSON LAW GROUP, ALC
4500 Park Granada Blvd., Suite 202
Calabasas, California 91302
Telephone: (818) 918-4622

David W. Long, Esq. (admitted *pro hac vice*)
*longdw@ergoniq.com*
ERGONIQ LLC
8200 Greensboro Drive, Suite 900
McLean, Virginia 22102
Telephone: (202) 847-6853

Attorneys for Plaintiff
DMF, Inc.

Robert E. Boone III, Bar No. 132,780
reboone@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone:  310-576-2100

Kelly Cunningham, Bar No. 186,229
kcunningham@cislo.com
CISLO&THOMAS LLP
12100 Wilshire Blvd., Suite 1700
Los Angeles, California 90025
Telephone:  310-451-0647

Attorneys for Defendants AMP Plus, Inc.
d/b/a ELCO Lighting, and ELCO Lighting Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DMF, Inc., a California corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>AMP Plus, Inc. d/b/a ELCO Lighting, a California corporation; and<br><br>ELCO Lighting Inc., a California corporation,<br><br>    Defendants. | Case No.  2:18-CV-07090 CAS (GJSx)<br><br>**Joint Rule 26(f) Report** |

Plaintiff DMF, Inc. ("DMF") and Defendants AMP Plus, Inc. d/b/a ELCO Lighting, a California corporation ("ELCO"); and ELCO Lighting Inc. ("ELI") (collectively, "Defendants") respectfully submit the following Joint Report pursuant to Federal Rule of Civil Procedure 26(f).

a. Statement of the Case:

**DMF's Statement:**

Because the Court is familiar with this case based on briefing relating to DMF's preliminary injunction motion, DMF will only briefly summarize the case background here.

*Defendants' Patent Infringement*

Defendants)[1] copied DMF's flagship, premium product, the DRD2 Module, and ELCO offered its knock-off as a commodity product at substantially lower prices to dealers who fulfill orders for the DRD2. ELCO named its DRD2 copy the "ELL Module." ELCO has sold three versions of the ELL Module, dubbed by its counsel "Version 1" "Version 2" and "Version 3." All three versions infringe the claims of DMF's U.S. Patent No. 9,964,266 ("the '266 Patent") entitled "Unified Driver and Light Source Assembly For Recessed Lighting." ELCO also induces infringement as well as contributes to infringement of claims directed to the combination of the module with housings and trims used with the modules.

DMF is a specification-grade company and the DRD2 Module has received numerous prestigious industry awards, as a premium product available exclusively from DMF at a premium price. The DRD2 Module is frequently selected by lighting designers and other lighting specifiers in construction plans for building projects throughout the United States—i.e., the DRD2 Module is *specified* during the early *specification stage* of a building project. The sale of the DRD2 module

---

[1] DMF will take discovery regarding the activities of the "ELCO" entities that have been identified in Defendants' marketing material and refers herein to both entities as "ELCO".

2

typically occurs during the *construction stage* of the building project, which occurs months (or even a year or more) after the product has been *specified*; the construction stage is when a contractor orders the *specified* product from a distributor carrying the DRD2 Module.

ELCO is a commodity-grade supplier that competes on price instead of design. ELCO's President, Mr. Steve Cohen, stated in a May 2015 personal bankruptcy filing that ELCO was in danger of becoming obsolete because it did not have a strong presence in the competitive LED market:

> While Elco Lighting has historically been a very profitable business, the Debtor believes its **future is uncertain** as a result of the fact that the government is in the process of requiring much of new construction and major remodeling in California to use High Efficacy lighting fixtures (LED). The LED light fixture business is **very competitive**. Elco Lighting **does not have a strong presence in that market**, and it is **unclear whether Elco Lighting will be capable of obtaining a strong presence** in that market. If Elco Lighting is not able to obtain a strong presence in the LED market, the **Elco Lighting business could be rendered obsolete**." [emphasis added]

ELCO's solution to this imminent obsolescence was to copy DMF's market-proven DRD2 Module and offer it to DMF's distribution chain and others at substantial discounts, to fulfil the demand created by DMF's innovation and by the work of DMF's own sales professionals who promote the sale of DMF's products.

***Defendants' Trademark Infringement***

DMF is the owner of common law rights to the marks OneLED and ONEFRAME ("the One Marks") and, in addition to its common law rights, has been granted registered marks OneFrame, U.S. Reg. No. 5,032,463 and OneLED, U.S. Reg. No. 5,503,155.[2] DMF has used and uses its One Marks to help customers

---

[2] Registration No. 5,032,463 on the trademark ONEFRAME in Class 11, covers LED luminaires, lighting fixtures, recessed lighting fixtures, recessed ceiling and wall lights; recessed lighting components, namely, light housings, trims, fittings, and wiring, and in Class 9, covers junction boxes and wiring enclosures for use in connection with recessing lighting. DMF has used the ONEFRAME trademark since at least October 2015.

identify its LED lighting products, including in advertising and packaging used to sell those products as part of DMF's overall branding efforts.

ELCO advertises, markets, offers to sell and sells its competing, knock-off lighting products and accessories, *e.g.,* ELCO's Trim products, under the confusingly similar and conceptually identical name "UNO," which is commonly understood as the Spanish word for "ONE." These knock-off products are sold in the same distribution channels as DMF's genuine lighting products sold by DMF under its ONE Marks. DMF believes that ELCO did not use "UNO" or "ONE" to sell LED modules until after ELCO decided to copy and sell knock-offs of DMF's products that DMF sold using the One Marks.

By purposefully adopting a confusingly-similar name having the same meaning to promote identical products to the same customers, and through the same marketing channels, ELCO has caused a likelihood of confusion as to an affiliation, connection or association between products sold under DMF's One Marks and ELCO's UNO mark. ELCO's conduct is even more egregious and the likelihood of confusion has been exacerbated because ELCO's copying extends not just to DMF's protected trademarks, but to ELCO's deceptively similar copying of DMF's products themselves, to DMF's marketing, including, for example, product images in marketing materials.

---

Registration No. 5,503,155 on DMF's trademark OneLED, in Class 11, covers LED Lighting Modules; LED luminaires; lighting fixtures; recessed lighting fixtures; recessed ceiling and wall lights; recessed lighting components, namely, light housings, trims, fittings, and wiring, and in Class 9, covers junction boxes and wiring enclosures for use in connection with recessed lighting. DMF has used the OneLED trademark since at least January 2012.

*Defendants' Other Acts Constituting Unfair Competition*

A known and prevalent practice in the LED lighting industry is a company asking a manufacturer of one company's product to make a similar knock-off product. Or, alternatively, both companies may knowingly purchase the same or similar products made by the same manufacturer and label them under their own separate brands.

DMF's DRD2 Modules were designed by DMF and are not manufactured for any other companies. ELCO, however, has engaged in a scheme to cause confusion in the marketplace regarding whether ELCO's ELL Modules are the same or manufactured by the same company as DMF's products, and whether ELCO is the company that introduced these products and established a track record of reliability and quality control with respect to these products.

As part of this scheme, ELCO copied and sold knock-offs of DMF's DRD2 LED Module in competition with DMF to the same consumers or potential consumers, using similar marketing materials, including in some cases images of the products that are deceptively similar, and even a similar trademark "UNO," meaning "ONE," creating a likelihood that a significant number of consumers would be misled into believing that the products come from the same manufacturer and have the same track record and reputation for quality, reliability, customer satisfaction and experience with manufacturing and quality testing, as described above. After the filing of this lawsuit, DMF became aware of other evidence of ELCO's scheme, including ELCO's falsely stating in one marketing communication for the ELL Module that DMF was a "[n]ew comer to market" and that DMF had improperly obtained a "fraudulent patent."

*DMF's Claims*

5

Based on Defendants' conduct, DMF's Complaint asserts the following causes of action:

1. Direct patent infringement under 35 U.S.C. § 271(a)
2. Inducing patent infringement under 35 U.S.C. § 271(b)
3. Contributory patent infringement under 35 U.S.C. § 271(c)
4. Patent infringement under 35 U.S.C. § 271(f)
5. Infringement of One Marks (OneLED and OneFrame) and Unfair Competition (15 U.S.C. § 1114 and 1125(a))
6. Infringement of One Marks (Trademark Infringement) Under California Law
7. Violation of California Business & Professions Code §17200 and Common Law Unfair Competition

Defendants, in their Amended Answer and Counterclaims, have raised a first counterclaim of non-infringement and a second counterclaim of patent invalidity based on anticipation and obviousness. *See* Dkt. 18 at 18-28.

**Defendants' Statement**

Defendants have not infringed, and are not infringing, DMF's '266 Patent. ELI does not sell any lighting products, let alone the (wrongly) accused ELL modules and other products. Elco stopped selling its version 1 design of ELL modules in September 2018, shortly after DMF filed suit. Elco's version 2 design ELL module avoids the '266 Patent because the light source for the ELL is closer to the open front face of the unitized casting than the closed rear face — just the opposite of a limitation DMF placed on what is claimed in the '266 Patent. This feature avoids all claims asserted by DMF. Elco's version 3 design ELL module likewise does not infringe the '266 Patent.

Furthermore, DMF's '266 Patent is vulnerable to being invalidated based on a plethora of prior art references, each of which, and in combination with each other, anticipate and/or render obvious the '266 claims. The '266 Patent is

vulnerable to being invalidated also because it improperly mixes classes of claims together into single claims and thus is impermissibly indefinite.

In addition, even if the '266 Patent were valid (and it is not) and Defendants were infringing it (and they are not), DMF is not entitled to any recovery because it has unclean hands based on DMF's deceptive marketing of its OneFrame system and DRD2 product.

DMF's trademark claim has no merit. Elco's use of "UNO" to market its compact recessed lighting products does not infringe DMF's OneLED and OneFrame marks. The DMF marks are not similar to "UNO", and there is no likelihood of confusion between DMF's marks and Elco's "UNO." DMF's mark does not cover "UNO", or for that matter, any other Spanish word.

For the above reasons, DMF's unfair competition claim has no merit either.

### b. Manual for Complex Litigation

The parties agree that the procedures of the Manual for Complex Litigation are not applicable to this case.

### c. Discovery Plan:

The parties agree to exchange Rule 26(a)(1) disclosures on January 14, 2019.

The parties agree to a proposed schedule for fact discovery and other major events in the case as proposed below.

#### i. Discovery Cut-off:

The parties propose:

1. a fact discovery cutoff date of October 1, 2019;
2. an expert discovery cutoff date of August 28, 2019;
3. the parties will serve expert reports on issues on which they bear the burden by June 27, 2019, rebuttal reports by July 15, 2019, and reply reports by July 28, 2019.

7

### ii. Identification of Infringement Contentions, Invalidity Contentions, and Claim Construction Positions:

The parties agree to exchange infringement and invalidity contentions as follows, by adopting in part Patent Local Rules 3-1 and 3-3 of the Local Patent Rules developed by the District Court for the Northern District of California, as follows:

a. DMF will identify its asserted patent claims by February 5, 2018.

b. DMF will identify, in response to an interrogatory to be served by Defendants, its infringement contentions by February 15, 2018.

c. Defendants ELCO will identify, in response to an interrogatory to be served by DMF, their invalidity contentions as to each asserted patent claim by February 15, 2018.

d. The parties may supplement their respective infringement and invalidity contentions with leave of Court, based on a showing of good cause under Patent Local Rule 3-6 of the Northern District of California Patent Local Rules.[3]

e. The parties will exchange claim terms to be construed and proposed constructions by March 1, 2019. The parties will then meet and confer to reach agreement where possible. By March 26, 2019, the parties will exchange claim construction briefs limited to 25 pages identifying their respective claim construction positions. By April 5, 2019, the parties will exchange rebuttal briefs limited to 25 pages

---

[3] The Parties will use interrogatories to obtain ELCO's response to DMF's infringement positions and DMF's responses to ELCO's invalidity positions; unless otherwise agreed upon by the Parties, those non-infringement/invalidity responses will be exchanged simultaneously no sooner than 14 days, and no later than 30 days, after service of the infringement/invalidity positions.

identifying their response to these claim construction positions. By April 19, 2009, the parties will prepare a Joint Claim Construction Chart that includes:

    i. The construction of those terms on which the parties agree.

    ii. Each party's proposed construction of each disputed term, together with an identification of all references from the specification or prosecution history that support that construction, and an identification of any extrinsic evidence known to the party on which it intends to rely either to support its proposed construction or to oppose any other party's proposed construction, including, but not limited to, as permitted by law, dictionary definitions, citations to learned treatises and prior art, and expected testimony of percipient and expert witnesses.

    iii. The Joint Claim Construction Chart will be used by the parties for purposes of preparing expert reports in light of their differing claim constructions. The parties will request that the Court resolve their claim construction disputes as identified in the Joint Claim Construction Chart in connection with summary judgment motions of infringement and invalidity, or, in the event that such motions are not filed, in connection with proposed Jury Instructions on the meaning of the claims.

### iii. Dispositive Motions:

**DMF's Statement:**

DMF intends to file a motion for summary judgment and may seek leave for more than 25 pages in order to address both issues of infringement and invalidity in the same brief.

**Defendants' Statement:**

9

ELCO intends to file a petition for either post grant review ("PGR") or inter partes review ("IPR") with the United States Patent and Trademark Office ("USPTO"), challenging the validity of the '266 Patent on a variety of grounds. ELCO intends to file this petition as soon as possible. Once ELCO files the PGR or IPR petition, it intends to file a motion with this Court to stay this action pending a ruling by the USPTO on the invalidity of the '266 Patent.

If this Court does not stay the action and the case proceeds, ELCO and ELI each intends to file a motion for summary judgment and may seek leave for more than 25 pages in order to address both issues of infringement and invalidity in the same brief.

    **iv.**    **Amendment of Pleadings:**

**Parties' Joint Statement:**

The parties agree on a deadline of March 1, 2019 for the amendment of pleadings or joinder of additional parties.

    **DMF's Statement:**

DMF is considering an amendment to its unfair competition claims to state that it seeks damages in addition to injunctive relief for certain acts of unfair competition other than for trademark infringement. In particular, Count V currently seeks injunctive relief based on California Business & Professions Code § 17200. DMF is investigating a potential amendment to seek damages under the Lanham Act for Defendants' unfair competition, including based on a recent communication alleging that DMF is a "new comer" that obtained a "fraudulent patent."

    **Defendants' Statement:**

Defendants intend to seek leave to amend its Answer and Counterclaim to allege additional affirmative defenses, including the defense of unclean hands and indefiniteness of certain claims of the '266 Patent.

    **d. Discovery Rules:**

The parties agree that there should be no departure from the Federal Rules of Civil Procedure in the number of interrogatories or depositions, except that:

(1) the parties' interrogatories directed to infringement and invalidity positions should count as a single interrogatory, even if it requires responding based on multiple claims, products, prior art references and their combinations;

(2) each side (i.e., both Defendants as one side and DMF as the other side) should be allowed 100 requests for admission total, as well as unlimited requests for admission for the purpose of authenticating documents and/or establishing the admissibility of documents;

(3) One 30(b)(6) deposition per side (with 7 hours allotted to each witness designated for a topic) and only 25 interrogatories per side.

e. **Deadlines:** The parties propose the following deadlines:

| Matter | Plaintiff's Proposal | Defendants' Proposal | Court Order |
|---|---|---|---|
| Rule 26(a) Initial Disclosures | January 16, 2019 | | |
| DMF Identification of Asserted Claims | February 5, 2019 | | |
| Parties Exchange Infringement and Invalidity Contentions In Response To Interrogatories | February 15, 2019 | | |
| Parties Exchange Claim Terms To Be Construed | March 1, 2019 | | |
| Parties Exchange Claim Construction Briefs | March 26, 2019 | | |

| | | | |
|---|---|---|---|
| Parties Serve Rebuttal Claim Construction Briefs | April 5, 2019 | | |
| Parties Prepare Joint Claim Construction Chart | April 29, 2019 | | |
| Expert Reports Served On Issues On Which Party Bears Burden | June 27, 2019 | | |
| Rebuttal Expert Reports Served | July 15, 2019 | | |
| Reply Expert Reports Served | July 28, 2019 | | |
| Expert Discovery Cutoff | August 28, 2019 | | |
| Fact Discovery Cutoff | September 16, 2019 | | |
| Last day for filing dispositive motions | September 23, 2019 | | |
| Pretrial Conference | November 4, 2019 | | |
| Trial | December 9, 2019 | | |

f. **Settlement/Alternative Dispute Resolution (ADR):**

**Parties' Joint Statement:**

The parties discussed settlement at the outset of the case. The parties both would prefer mediation through a Magistrate Judge if the Court permits this procedure and, in the alternative, will proceed through private mediation.

**DMF's Statement:**

DMF believes that mediation will not be productive until the parties have exchanged infringement and invalidity contentions and until Defendant's CEO or any other person directing the business of Defendants has been deposed.

**Defendants' Statement:**

Defendants believe that mediation will not be productive until the parties have exchanged infringement and invalidity contentions and until Michael Danesh has been deposed.

g. **Trial estimate:**

The parties estimate a trial of 7-10 days.

h. **Privilege Logs:**

The parties agree that privileged communications after the filing of the Complaint do not need to be logged on a privilege log except for any communications relating to an opinion of counsel relied on either as a defense to willful infringement or as a defense to liability for induced or contributory infringement.

i. **ESI:**

a. **Document format:**

The parties agree that electronically stored information ("ESI") should be produced as single page tiff documents with multi-page text.

b. **Native files:**

The parties further agree that documents that do not render to tiff format well (e.g., xls, slsx, avi, mp3, etc.) should be produced in native format.

c. **Load files:**

The parties agree to produce Concordance load files (dat/opt).

d. **Metadata fields:**

The parties will provide the following metadata information:
BegDoc -> Beginning document number
EndDoc -> Ending document number

```
FILEEXT -> Extension of document. .xls.doc.ppt ect.
APPLICAT -> Application used to create file
BEGATTCH -> Beginning document number for document and attachments
ENDATTCH -> Ending document number for document and attachements
NUMATTCH -> Number of attachments
ATTRANGE -> Attachment document range
DATESENT -> Date email is sent
DATERCVD -> Date email is received
TIMESENT -> Time email is sent
TIMERCVD -> Time email is received
DATEMOD -> Date document is modified
TIMEMOD -> Time document is modified
DATESVD -> Date document is last saved
TIMESVD -> Time document is last saved
DATEACCD -> Date document is last accessed
TIMEACCD -> Time document is last accessed
DATECRTD -> Date document is created
TIMECRTD -> Time documents is created
FILENAME
MSGID -> Email unique identification number
MD5HASH -> Document unique identification number
DOCTYPE -> Email, eDoc, Attachment
FOLDER -> Email or Document folder location
TO -> Email recipient(s)
FROM -> Email sender
CC -> Email carbon copied recipient(s)
BCC -> Email blind carbon copied recipient(s)
SUBJECT -> Email Subject
AUTHOR -> Document creator
DOCTITLE -> Title of the document
PGCOUNT -> Number of pages
CUSTODIN ->
DOCLINK -> Path to native documents
EXTRACTED TEXT -> Path to text Files
REDACTION -> Verifies if a document has a redaction
CONFIDENTIAL -> Verifies designation
```

e. **Global de-duplication of ESI:**

The parties shall make reasonable attempts to de-duplicate ESI before producing it to avoid substantially duplicative productions.

**f. Locations That Will Not Be Searched For Responsive Documents:**

The parties agree to meet and confer regarding limiting discovery based on principles of proportionality and to limit initial discovery of emails to seven key custodians per side so that they can determine the facts of the case and decide how to effectively and efficiently conduct subsequent email discovery that may be necessary upon a showing of exceptional circumstances.

Respectfully submitted,

| | |
|---|---|
| DAVIDSON LAW GROUP, ALC | BRYAN CAVE LEIGHTON PAISNER LLP |
| By: /s/ Ben M. Davidson<br>　　Ben M. Davidson, Esq. | By: /s/ Robert Boone (by permission)<br>　　Robert E. Boone III |
| Attorneys for Plaintiff<br>DMF, Inc. | Attorneys for Defendants<br>AMP Plus, Inc. d/b/a ELCO Lighting and ELCO Lighting, Inc. |
| Date January 9, 2019 | Date January 9, 2019 |

## **CERTIFICATION PURSUANT TO LOCAL RULE 5-4.3.4(A)(2)(I)**

Pursuant to Local Rule 5-4.3.4(A)(2)(i), I hereby certify that the content of this document is acceptable to Robert Boone, counsel for Defendants, and I have obtained his authorization to affix his electronic signature to this document.

DAVIDSON LAW GROUP, ALC


By:   /s/ Ben M. Davidson
      Ben M. Davidson, Esq.

Attorneys for Plaintiff
DMF, Inc.

Date: January 9, 2019