Ben M. Davidson (State Bar No. 181464)
ben@dlgla.com
DAVIDSON LAW GROUP, ALC
4500 Park Granada Blvd, Suite 202
Calabasas, California  91302
Office: (818) 918-4622
Fax: (310) 473-2941

David W. Long (admitted *pro hac vice*)
ERGONIQ LLC
8200 Greensboro Dr. Suite 900
McLean, VA  22102
Office: (202) 847-6853

*Attorneys for Plaintiff DMF, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DMF, Inc., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMP Plus, Inc. d/b/a ELCO Lighting, a California corporation; and<br><br>ELCO Lighting Inc., a California corporation,<br><br>Defendants. | Civil Action No. 2:18-cv-07090 CAS (GJXx)<br><br>**Plaintiff DMF's Opposition To Defendants' Ex Parte Application To Stay This Action** |

# Table of Contents

I.    Introduction .................................................................................... 1

II.   Factual Background and PTAB Procedure .................................... 1

    A.    ELCO Chose To Litigate Validity In This Court ........................... 1

    B.    IPR Institution Is A Low Standard Skewed In Favor of the Petitioner (ELCO) ......................................................................... 3

III.  PTAB Panel's Initial Claim Construction Decision ................... 6

    A.    "*standard junction box*" .............................................................. 7

        1.    Question 1: Does "claim differentiation" require changing the Court's claim construction? ............................................. 8

        2.    Question 2: Is a "question" raised as to the Court's construction because the PTAB was required to view expert testimony in a light most favorable to Petitioner ELCO?... 10

        3.    Question 3: Should the Court's claim construction be revised to give no weight to the prosecution history? ........ 12

    B.    "*driver*" ...................................................................................... 13

    C.    Claim Construction's Impact on Validity Grounds ..................... 14

IV.   Argument ..................................................................................... 16

    A.    Stay Standard .............................................................................. 16

    B.    This Court Need Not Defer To The PTAB's Initial Decision ...... 17

    C.    PTAB May Reconsider, Terminate or Stay the IPR In Deference To the Court's Case Status Ruling ................................................. 19

    D.    Stay Will Complicate—Not Simplify—Issues ............................ 21

    E.    Undue Prejudice and Tactical Advantage .................................... 22

        1.    Prejudice from wasting the substantial resources invested to bring this case to the brink of resolution............................. 22

1

**Table of Authorities**

2

**Cases**

3

*Acceleron, LLC v. Dell Inc.,*
   2018 U.S. Dist. LEXIS 223292 (N.D. Ga. April 6, 2018)......................................... 5

4

*Allergan Inc. v. Cayman Chem. Co.,*
   No. SACV 07-01316 JVS (RNBx),

5

   2009 WL 8591844 (C.D. Cal., Apr. 9, 2009) .......................................... 16

*Anderson Corp. v. Fiber Composites, LLC,*

6

   474 F.3d 1361 (Fed. Cir. 2007) ................................................. 9

7

*APP Pharm., LLC v. Ameridose LLC,*
   2011 WL 816622 (D.N.J. Mar. 8, 2011) .................................................. 23

8

*Apple, Inc. v. Ameranth, Inc.,*
   842 F.3d 1229 (Fed. Cir. 2016) ................................................. 8

9

*Cywee Group Ltd. v. Samsung Elecs. Co.,*
   2019 U.S. Dist. LEXIS 144149 (E.D. Tex. Feb. 14, 2019) ................................... 21

10

*Ecolab, Inc. v. Paraclipse, Inc.,*
   285 F.3d 1362 (Fed. Cir. 2002) ................................................. 9

11

12

*Emsat Advanced v. T-Mobile USA, Inc.,*
   No. 4:08cv00817,

13

   2011 U.S. Dist. LEXIS 23327 (N.D. Ohio Mar. 8, 2011) .................................... 21

*Estee Lauder Inc. v. L'Oreal, S.A.,*

14

   129 F.3d 588 (Fed. Cir. 1997) ................................................. 12

15

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.,*
   No. C 03-1431 SBA,

16

   2007 U.S. Dist. LEXIS 44107 (N.D. Cal. June 6, 2007)...................................... 18

*Howmedica Osteonics Corp. v. Zimmer, Inc.,*

17

   822 F.3d 1312 (Fed. Cir. 2016) ................................................. 9

18

*Immunex Corp. v. Sanofi et al.,*
   Case No. CV 17-02613 SJO (PLAx) (CD Cal. May 8, 2018) (Judge Otero)

19

   (Davidson Ex. 5) ......................................................... 22

*In re CSB-System Int'l, Inc.,*

20

   832 F.3d 1335 (Fed. Cir. 2016) ................................................. 5

21

*In re Magnum Oil Tools Int'l, Ltd.,*
   829 F.3d 1364 (Fed. Cir. 2016) .......................................... 3, 4

22

*Interwoven. Inc. v. Vertical Computer Sys., Inc.,*
   2012 WL 761692 (N.D. Cal. Mar. 8, 2012) .................................................. 23

23

*Intex Recreation Corp. v. Team Worldwide Corp.,*

24

   IPR2019-00243 & - 00244, Paper No. 7 (PTAB May 8, 2019)............................... 3

*Iridescent Networks, Inc. v. AT&T Mobility, LLC,*

25

   933 F.3d 1345 (Fed. Cir. 2019) ........................................... 12, 13

26

*Kraft Foods, Inc. v. Int'l Trading Co.,*
   203 F.3d 1362 (Fed. Cir. 2000) ................................................. 8

27

*Landis v. N. Am. Co.,*
   299 U.S. 248 (1936)........................................................ 16

28

1   *Liqwd, Inc. v. L'Oréal USA, Inc.*,
      2019 U.S. Dist. LEXIS 70749 (D. Del. Apr. 25, 2019)...................................... 7

2   *Livjo, Inc. v. Deckers Outdoor Corp.*,
      2011 U.S. Dist. LEXIS 158490 (C.D. Cal. Sep. 27, 2011) .................................... 18

3   *Markman v. Westview Instruments, Inc.*,
      52 F.3d 967 (Fed. Cir. 1995) ................................................................. 15

4   *Multiform Desicants, Inc. v. Medzam, Ltd.*,
5     133 F.3d 1473 (Fed. Cir. 1998) .............................................................. 8

6   *N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*,
      7 F.3d 1571 (Fed. Cir. 1993) ................................................................ 9

7   *O.I. Corp. v. Tekmar Co.*,
8     115 F.3d 1576 (Fed. Cir. 1997) .............................................................. 9

9   *PersonalWeb Techs., LLC v. Facebook, Inc.*,
      No. 5:13-CV-01356-EJD,
10    2014 U.S. Dist. LEXIS 4095 (N.D. Cal. Jan. 13, 2014)........................................ 20

11  *Phillips v. AWH Corp.*,
      415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...................................... passim

12  *Poly-America, LP v. API Industries, Inc.*,
13    839 F.3d 1131 (Fed. Cir. 2016) .............................................................. 9

14  *PPC Broadband, Inc. v. Corning Optical Communs. RF, LLC*,
      815 F.3d 734 (Fed. Cir. 2016) ............................................................... 5

15  *SAS Institute Inc. v. Iancu*,
      138 S. Ct. 1348 (2018)..................................................................... 5

16  *Seachange Int'l, Inc. v. C-COR Inc.*,
      413 F.3d 1361 (Fed. Cir. 2005) ....................................................... 8, 9, 10

17  *Speakware, Inc. v. Microsoft Corp.*,
      Case No. SA CV 18-1293-DOC (DFMx) (CD Cal. June 21, 2019) (Davidson Ex.
18    4) ...................................................................................... 3, 23

19  *Telemac Corp. v. Teledigital, Inc.*,
20    450 F. Supp. 2d 1107 (N.D. Cal. 2006)...................................................... 18

21  *Tinnus Enters. LLC v. Telebrands Corp.*,
      2017 U.S. Dist. LEXIS 110691(E. D. Tex. Apr. 5, 2017)............................... 16, 23

22  *TriVascular, Inc. v. Samuels*,
      812 F.3d 1056 (Fed. Cir. 2016) ............................................................. 3

23  *Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
      943 F. Supp. 2d 1028 (C.D. Cal. 2013) ..................................................... 16

24  *Unwired Planet, LLC v. Square, Inc.*,
25    2014 U.S. Dist. LEXIS 140831 (D. Nev. Oct. 3, 2014) ........................................ 3

26  *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*,
      983 F. Supp. 2d 713 (E.D. Va. 2014) ....................................................... 7

**Statutes**
35 U.S. C. § 307....................................................................... 20

27  35 U.S.C. § 316(e) ..................................................................... 3

28  35 U.S.C. § 321 ........................................................................ 1

35 U.S.C. 316(a)(11)................................................................................................ 20

**Other Authorities**

PTAB Trial Practice Guide (July 2019) ........................................................ 4, 5, 17

## I.     Introduction

The Court should deny ELCO's Ex Parte Application to Stay (Dkt. 325) for several reasons.  Further, ELCO continues to abuse the Ex Parte Application process that has forced DMF to—yet again—prepare opposition papers on a spur-of-the-moment emergency basis.  DMF respectfully requests that ELCO's stay motion be deemed submitted without further briefing and, if warranted, the Court hear the issue next Monday, December 2 at the same time that the Court is scheduled to hear ELCO's consolidation motion.

DMF also respectfully requests that the rebuttal expert report date not be stayed, but that it be continued from this Friday to next Friday, December 6 without otherwise altering the current case schedule.  That will allow the parties to avoid working over the Thanksgiving holiday, while providing a date certain for such reports for planning purposes that can be further modified in the event the Court deems it necessary following the December 2 hearing.

## II.    Factual Background and PTAB Procedure

### A.     ELCO Chose To Litigate Validity In This Court

DMF filed this case in August 2018 (Dkt. 1).  In September 2018, ELCO told DMF that it believed low-voltage DC Imtra products for boats were prior art that invalidated the '266 Patent claims; DMF disagreed because those were low-voltage DC devices for boats.[1]  On December 3, 2018, ELCO filed an opposition to DMF's motion for a preliminary injunction in which ELCO argued that the '266 Patent claims were invalid based on the Imtra prior art and indefinite validity challenges.[2]

At that same time, ELCO could have pursued a Post Grant Review ("PGR") proceeding in which the PTAB will consider both prior art and indefiniteness validity challenges.[3]  Indeed, ELCO had until February 8, 2019—nine months after

---

[1] Dkt. 28-7, Ex. 3, p. 25

[2] Dkt. 55-10. at 6-7, 10-11.

[3] 35 U.S.C. § 321.

the '266 Patent issued on May 8, 2018—to file a PGR Petition.[4]  But, rather than file a timely PGR Petition, ELCO chose to litigate validity in this Court and did so in opposing DMF's preliminary injunction motion.  That motion was argued on January 7, 2019 where the Court provided a tentative ruling rejecting ELCO's Imtra prior art and indefiniteness challenges.

Because PGR proceedings are preferred, an Inter Partes Review ("IPR") petition cannot be filed until the nine-month PGR period expires.  So ELCO could have filed an IPR petition on February 9, 2019.  But ELCO still chose to litigate the validity issues in this Court rather than file a timely IPR Petition.  The Court's March 7, 2019 preliminary injunction (Dkt. 147) maintained its rejection of ELCO's Imtra prior art and indefiniteness validity challenges.  ELCO still did not file an IPR Petition, but continued to litigate this case.

The parties exchanged infringement and validity contentions on March 1 followed by serving their *Markman* claim construction briefs in April 2019.  ELCO filed its IPR Petition on May 17, 2019, as essentially a "do-over" to avoid the consequences of its decision to litigate validity in this Court.  ELCO attempts to excuse waiting until May 17th to file a PTAB challenge by arguing that it needed DMF's infringement contentions" to know what claims to challenge besides the ones in the Complaint.[5]  That excuse fails because ELCO copied DMF's patented product[6] and did not need DMF to point out which product features and claims would be relevant.  This was clear at the January 14, 2019 scheduling conference when ELCO's counsel stated, "We're working on the petition now, Your Honor.  We hope to have it now in light of the other  briefing, be able to submit that in early February, first half of February."[7]  Yet ELCO waited three months to file its IPR petition, to

---

[4] *Id.*

[5] ELCO Ex Parte at 13-14.

[6] Dkt. 147 at 4 (Preliminary Injunction Order).

[7] Declaration of Ben M. Davidson In Support of DMF's Opposition to Ex Parte Application To Stay (Davidson Decl.), Ex. 1 (January 14, 2019 Hearing Tr.).

base its filing on DMF's *Markman* brief.  As one court explained, a stay under these circumstances "would give the movant (Defendant) a clear tactical advantage" where, among other things, "Defendant waited to file the petitions with the PTAB until after it had the benefit of Plaintiff's infringement contentions … and Plaintiff's *Markman* brief," as ELCO has did here.[8]

## B. IPR Institution Is A Low Standard Skewed In Favor of the Petitioner (ELCO)

The standard for instituting an IPR is lower than the preponderance of the evidence standard: The petitioner merely needs to show a "reasonable likelihood" that one or more patent claims may be invalid.[9]  The Federal Circuit describes this "reasonable likelihood" standard to be "a significant difference" from "a preponderance of the evidence" standard.[10]

Because the PTAB may not institute an IPR if the Petitioner asserts that claims are indefinite,[11] ELCO filed its IPR Petition without disclosing that ELCO simultaneously was arguing indefiniteness to this Court.  The Court has since dispositively ruled that the '266 Patent claims are not indefinite.[12]  Courts have refused to stay a case pending an IPR if the court already has gained familiarity with the issues by ruling on some invalidity defenses.[13]

---

[8] *Unwired Planet, LLC v. Square, Inc.*, 2014 U.S. Dist. LEXIS 140831, *10-12 (D. Nev. Oct. 3, 2014).

[9] 35 U.S.C. § 316(e).

[10] In *re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1376-77 (Fed. Cir. 2016); *accord TriVascular, Inc. v. Samuels*, 812 F.3d 1056, 1068 (Fed. Cir. 2016) ("[T]here is a significant difference between a petitioner's burden to establish a "reasonable likelihood of success" at institution, and actually proving invalidity by a preponderance of the evidence at trial.").

[11] *Intex Recreation Corp. v. Team Worldwide Corp.*, IPR2019-00243 & - 00244, Paper No. 7 (PTAB May 8, 2019) (Dkt. 205 at p. 571).

[12] Dkt. 266 at 29-30.

[13] *See, e.g.*, *Speakware, Inc. v. Microsoft Corp.*, Case No. SA CV 18-1293-DOC (DFMx) (CD Cal. June 21, 2019)(Davidson Decl. Ex. 4).

The PTAB's initial institution decision was based solely on ELCO's Petition, DMF's Initial Response and ELCO's Reply; there was no claim construction hearing.  The institution standard itself is relatively low and skewed in favor of the Petitioner (ELCO here).  For example, in addition to the low "reasonable likelihood" standard, expert testimony is "viewed in **the light most favorable to the petitioner**."[14]  Further, the PTAB's initial claim construction included new claim construction positions that ELCO had not raised and that DMF had no opportunity to respond (discussed further below).  That's part of the IPR institution process: the PTAB provides "an initial claim construction determination", but further evidence and arguments will be considered before the PTAB issues a "final claim construction decision" at the end of the IPR process about a year later.[15]  The  PTAB thus explains that it "is not bound by any findings made in its Institution Decision," which is made "without the benefit of a full record" and the PTAB "is free to change its view of the merits after further development of the record."[16]  The PTAB emphasized many times here that its decision is limited to the initial record.[17]

PTAB procedures have seen significant changes relevant here.  First, until recently, the PTAB instituted an IPR only on the specific claims and validity grounds that met the "reasonable likelihood" standard.  But that changed with the

---

[14] PTAB Trial Practice Guide (July 2019) at 19 (citing 37 C.F.R. §§ 42.108(c), 42.208(c)).

[15] PTAB Trial Practice Guide at 18.

[16] *In re Magnum Oil*, 829 F.3d at 1376-1377.

[17] *See, e.g.*, PTAB Decision at 6 ("At this stage of the proceeding …"); *id.* at 7 ("at this stage in the proceeding …"); *id.* at 14 ("Based on the record before us …"); *id.* at 21 ("On the present record … On this record…"); id. at 23 ("On this record …"); id. at 26 ("On the present record …"); id. at 28 ("Therefore, on the current record …"); id. at 29 ("On the record before us …"); id. at 31 ("Petitioner shows sufficiently for institution that …", "At this stage of the proceedings …", "On the record before us …"); id. at 33 ("At this stage of the proceedings …   We will revisit the question …").

1   Supreme Court's *SAS* decision last year,[18] and the PTAB now "will either

2   (1) institute as to all claims … on all grounds in the petition, or (2) … deny

3   institution."[19]

4         Second, the PTAB recently changed how it construes patent claims.  The

5   PTAB had always construed claims broadly under the "broadest reasonable

6   interpretation" ("BRI") standard used to examine original patent application claims,

7   which resulted in broader claim constructions than under the *Philips* standard used

8   by district court.[20]  For IPR petitions filed after November 13, 2018, however, the

9   PTAB now "appl[ies] the same standard used in federal courts to construe patent

10   claims."[21]  The Federal Circuit explained important differences between these claim

11   construction standards:

12   
13         By giving the claim language its broadest reasonable interpretation, the
14   patent examiner is able to reduce the possibility that, after the patent is
15   granted, the claims may be interpreted as giving broader coverage than
16   is justified.  While broadly construing claim language increases the
17   likelihood that otherwise distinguishable prior art will render the
18   claimed invention anticipated or obvious, the patentee can amend the
19   claim language during prosecution—and narrow it if necessary—to
20   clarify the scope of the invention and avoid rejection or cancellation of
21   the claims.

      District courts, by contrast, do not assign terms their broadest
reasonable interpretation.  Instead, district courts seek out the correct
construction—the construction that most accurately delineates the scope
of the claimed invention—under the framework laid out in *Phillips v.
AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).[22]

---

[18] *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018) ("The agency cannot curate the claims at issue but must decide them all.").

[19] PTAB Trial Practice Guide (July 2019) at 31.

[20] *See Acceleron, LLC v. Dell Inc.*, 2018 U.S. Dist. LEXIS 223292, *40 (N.D. Ga. April 6, 2018) ("The *Phillips* standard is more narrow than the BRI standard."); *In re CSB-System Int'l, Inc.*, 832 F.3d 1335, 1340-41 (Fed. Cir. 2016) (*Phillips* standard "emphasizes considering the plain meaning of the claim terms themselves in light of the intrinsic record [i.e., specification and file history] " but the PTAB in reexams uses the "broadest reasonable interpretation consistent with the specification.").

[21] PTAB Trial Practice Guide at 14-15.

[22] *PPC Broadband, Inc. v. Corning Optical Communs. RF, LLC*, 815 F.3d 734, 740 (Fed. Cir. 2016) (some internal quotations and citations omitted).

1   Thus, this Court has more experience in reliably construing patent claims under the

2   district court *Phillips* standard than does the PTAB.

3          Given the forgoing, ELCO's crowing that "the PTAB decided to institute inter

4   partes review … on <u>all</u> grounds" does not mean what ELCO wants you to believe it

5   means, and ELCO's statements that "the PTAB determined that ELCO <u>is likely to</u>

6   <u>prevail</u> on its invalidity challenges … against [all challenged claims]" (Ex Parte at

7   1), that "the PTAB felt that ELCO's invalidity contentions are <u>so strong</u> …" (Ex

8   Parte at 7), or that "the PTAB's <u>strong suggestion</u> that ELCO will ultimately prevail"

9   (Ex Parte at 12) are illusory:

10  ● As discussed below, the PTAB indicated that some patent claims may require
       receiving **building mains power**, which falls outside the rationale for the
11     asserted invalidity grounds (*i.e.*, invalidity in light of the PTAB construing
       "standard junction box" and "driver" as not being limited to buildings or
12     receiving building mains voltage).[23]

13  ● The PTAB indicated that some grounds had "potential weakness" but "we are
       required to institute trial on all grounds in the Petition."[24]

14  ● Page 34 of the PTAB Decision on which ELCO relies says only that "the
15     record demonstrates a **reasonable likelihood** that Petitioner will prevail with
       respect to **at least <u>one</u> of the claims** challenged in the Petition."

16  ● Nowhere does the PTAB say that "ELCO is **likely to** prevail" or make a
       "**strong suggestion** that ELCO will ultimately prevail."

17
18  **III.   PTAB Panel's Initial Claim Construction Decision**

19          The PTAB's **initial** construction of two claim terms—"standard junction box"

20  and "driver"—does conflict with this Court's claim construction, because the PTAB

21  did not construe those terms in the context of recessed lights for buildings.  The

22  claim construction rulings are found at the following pages:

|  | Court Construction Dkt. 266 | PTAB Construction Dkt. 325.2 (Boone Ex. A) |
|---|---|---|
| *"standard junction box"* (building main power) | Pages 26-27 | Pages 8-15 |
| *"driver"* | Pages 28-29 | Pages 15-21 |

---

27  [23] PTAB Initial Decision at 11-12 (referring to asserted Claim 16 and Claim 22 from which asserted Claim 25 depends).

28  [24] PTAB Initial Decision at 29.

1    That the PTAB's initial claim construction differs from this Court is not

2  surprising.  Unlike the PTAB's initial construction, the Court construed the claims

3  based on significantly more experience with the *Phillips* claim construction standard,

4  patents, file history, prior art and technology at issue and after the parties had a

5  complete, full and fair opportunity to be heard.  The PTAB's final claim construction

6  may align with the Court's, but that's an issue for another day (about a year away).

7    ELCO thus overplays—without explaining why—the PTAB's initial claim

8  construction "calls the Court's claim construction order with respect to [those] two

9  significant terms into question."[25]  Knowing what specific "questions" are raised is

10  the relevant inquiry here, not just some general assertion that there are differences.

11  As one court explained: The Court is "certainly not required to overturn its prior

12  decision based on the analysis in a decision by the PTAB granting or denying

13  institution of IPR."[26]

14    Below is a brief summary of the "questions" the PTAB's initial construction

15  might raise as to the Court's claim construction.  This provides necessary context for

16  making an informed decision about whether those questions are so significant that

17  the Court must alter its claim construction or even—as ELCO argues—stop this case

18  dead in its tracks, just shy of resolution.

19    **A.    "*standard junction box*"**

20    The PTAB stated that "The '266 patent purports to provide a lighting system

21  with a more compact and cost-effective design while complying with all building

22  and safety codes/regulations."[27]  But the PTAB ultimately construed the term

23  "standard junction box" outside the building context based on three grounds:

24

25  [25] Ex Parte Br. (Dkt. 325) at 4, 14.

26  [26] *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 983 F. Supp. 2d 713, 764-64
   (E.D. Va. 2014); *Liqwd, Inc. v. L'Oréal USA, Inc.*, 2019 U.S. Dist. LEXIS 70749, at
27  *13-14 (D. Del. Apr. 25, 2019)("a decision by the PTAB is not generally binding on
   this Court.").

28  [27] PTAB Initial Determination at 3 (citing Patent at 2:10-13).

(1) claim differentiation; (2) viewing expert testimony in a light most favorable to ELCO; and (3) giving no weight to the prosecution history.  We address below whether these three grounds might raise "questions" that would require the Court to change its claim construction.

### 1. Question 1: Does "claim differentiation" require changing the Court's claim construction?

The PTAB relied on the "doctrine of claim differentiation" to construe "standard junction box" where "each claim in a patent is presumptively of different scope."  ELCO did not raise claim differentiation in its Petition or in this Court.

Claim differentiation "only creates a presumption that each claim in a patent has a different scope; it is not a hard and fast rule of construction."[28]  The Federal Circuit has "declined to apply the doctrine of claim differentiation where the claims are not otherwise identical in scope," such as when the claims have other different limitations.[29]  For example, there is "a presumption that two independent claims have different scope when different words or phrases are used in those claims."[30]  The claim differentiation presumption that "claims … differ in scope does not mean that every limitation must be distinguished from its counterpart in another claim, but only that **at least one limitation must differ**."[31]  Further, "claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence."[32]

The PTAB relied on claim differentiation to construe "standard junction box" different from the Court because "[t]hree claims (claim 10, 16, and 22) in the '266

---

[28] *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1368-69 (Fed. Cir. 2005) (quoting *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1365-69 (Fed. Cir. 2000)).

[29] *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1238 (Fed. Cir. 2016).

[30] *Seachange*, 413 F.3d at 1368-69.

[31] *Kraft Foods*, 203 F.3d at 1368.

[32] *Seachange*, 413 F.3d at 1368-69 (quoting *Multiform Desicants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998)).

1   patent refer explicitly to a 'building'", but Claim 1 does not, so there is "a

2   presumption raised that claim 1, which recites a standard junction box, does not

3   require installation or placement in a building."[33]  But those three claims have other

4   distinguishing limitations and do **not** simply state: "The compact recessed lighting

5   system of claim 1, wherein the system is for use in a building."[34]  If the **only**

6   difference between those claims and Claim 1 was that those claims added "use in a

7   building", then claim differentiation *might* lead to construing Claim 1 outside the

8   building context (though that still is doubtful given the intrinsic and extrinsic

9   evidence here).[35]  In any event, Claims 10, 16 and 22 recite different limitations and

10  differ in scope from Claim 1 for many reasons beyond the term "building":

- **Claim 10** requires (1) that "wires pass[] through the … closed rear face and (2) the wires "are connected" to wires attached to the building electrical system and (3) the wires are connected with "caps or a connector."  Claim 1 does not have these limitations and, unlike Claim 10, is directly infringed without the device being "connected" to building wires.[36]

---

[33] PTAB Initial Determination at 11.

[34] *See, e.g., Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1375-76 (Fed. Cir. 2002) ("Because the only meaningful difference between claims 16 and 17 is the limitation of ultraviolate light, under the doctrine of claim differentiation, claim 16 does not require ultraviolet light.").

[35] *See Poly-America, LP v. API Industries, Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016) (rejecting argument that claim differentiation precluded construing a claim as having a limitation that is found in other claims, because "claim differentiation does not serve to broaden claims beyond their meaning in light of the patent as a whole, and it cannot override clear statements of claim scope found in the specification and prosecution history"); *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1582 (Fed. Cir. 1997) ("[T]he doctrine [of claim differentiation] cannot alter a definition that is otherwise clear from the claim language, description, and prosecution history."); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1323 (Fed. Cir. 2016) ("[C]laim differentiation is a rebuttable presumption that may be overcome by a contrary construction dictated by the written description or prosecution history"); *Anderson Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369-70 (Fed. Cir. 2007) ("The doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence."); *Seachange*, 413 F.3d at 1368-69 (rejecting application of claim differentiation doctrine, because it "is not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history").

[36] *See N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1577 (Fed. Cir. 1993) ("While it is true that dependent claims can aid in interpreting the scope of

- **Claim 16** requires "a trim directly coupled to the unified casting."  Claim 1 does not require a trim and, unlike Claim 16, is directly infringed without attaching a trim.

- **Claim 22** requires (1) that the unified casting's sidewall have "fins" and (2) wires have a "first connector" that is part of "a pair of complimentary keyed or interlocking connectors."  Claim 1 does not have those limitations.  Further, unlike Claim 22, Claim 1 has (1) a "significantly dissipates heat" limitation and (2) a "plurality of elements" limitation.[37]

| | | |
|---|---|---|
| 10.  The compact recessed lighting system of claim 9 [that depends from Claim 8 that depends from Claim 1] further comprising:<br><br>a first plurality of wires electrically coupled to the driver, wherein the first plurality of **wires passes through the heat conducting closed rear face** of the unified casting,<br><br>a second plurality of wires that emerge from the standard junction box and that are to bring electricity from an electrical system of a **building** in which the recessed lighting system is to be installed,<br><br>wherein the first plurality of **wires are connected** to the second plurality of wires through a **plurality of caps or a connector** inside of the standard junction box. | 16.  The compact recessed lighting system of claim 15 [that depends from Claim 1], further comprising:<br><br>a **trim directly coupled to the unified casting**, for covering a hole in a ceiling or wall of a **building** in which the compact recessed lighting system is placed, wherein the trim connects to the unified casting via the at least one twist-and-lock connector. | 22.  A compact recessed lighting system comprising:<br><br>***<br><br>the **sidewall of the unified casting has fins** formed on its outside surface; and<br><br>the system further comprises a plurality of wires connected to the driver and connected to **a first connector of a pair of complimentary keyed or interlocking connectors** … such that in operation the first connector is coupled to a second connector … wherein the second connector is coupled to electricity from an electrical system of a **building** in which the compact recessed lighting system is installed. |

### 2.   Question 2: Is a "question" raised as to the Court's construction because the PTAB was required to view expert testimony in a light most favorable to Petitioner ELCO?

The next reason the PTAB construed "standard junction box" differently from the Court appears to be because the PTAB under this **initial** institution stage was required to view expert testimony in a light most favorable to the Petitioner (ELCO

claims from which they depend, they are only an aid to interpretation and are nto conclusive.  The dependent claim tail cannot wag the independent claim dog.").

[37] *Seachange*, 413 F.3d at 1368-69 (rejecting application of claim differentiation to independent claims, because "there is still a presumption that two independent claims have different scope when different words or phrases are used in those claims").

here).[38]  For example, the PTAB appears to have viewed DMF's expert Mr. Benya's testimony in a limited way that is most favorable to ELCO:

> Mr. Benya's testimony is limited to junction boxes *used in residential or commercial buildings*.  As such, it does not address whether the "standard junction box" of the claims can be used only in residential or commercial buildings, or only in conjunction with building main power. [emphasis in original][39]

The PTAB did not mention Mr. Benya's other testimony that he construed the term "junction box" in the context of buildings because he believed that was required after his review of the patent specification and file history.[40]  In contrast, the PTAB viewed favorably the apparent absence of testimony by ELCO's expert, Dr. Bretschneider, because he did "not give testimony that a POSITA would have understood that the inclusion of a standard junction box in the clams [sic: claims] requires use of the recessed lighting system only in a building, and connection only to building main power."[41]

The PTAB also viewed favorably to ELCO the specific Dr. Bretschneider testimony relied on by the Court in construing "standard junction box":

> The Court also observes that ELCO's own lighting expert explains that "a junction box installed in the ceiling provides a location for connection to electrical mains and provides the physical mounting mechanism for a ceiling mounted light fixture." [Dkt. 266 at 27][42]

But the PTAB viewed that testimony favorably to ELCO as being limited to "ceiling mounted light fixtures" that was "not addressed specifically to the 'standard junction box.'"[43]

---

[38] The PTAB decision does not expressly state that the expert testimony was viewed in the light most favorable to ELCO (the Petitioner), but that is the standard the PTAB was required to apply and that is consistent with how the PTAB explained the expert testimony.

[39] PTAB Determination at 12-13.

[40] *See* Benya Decl. (Dkt. 65) at ¶¶19-23 (provided to and cited by PTAB as Ex. 2010).

[41] PTAB Determination at 13-14.

[42] PTAB Determination at 13.

[43] PTAB Determination at 13.

1    Importantly, ELCO already had the opportunity to ask the Court to view its

2    expert's testimony in the narrow, favorable way as the PTAB.  The Court provided

3    the parties a Tentative Claim Construction containing the quoted language above

4    before the claim construction hearing.  Neither ELCO nor its expert (who was at the

5    hearing to provide claim construction testimony) breathed a word of concern about

6    the Court's reading of that or any other expert testimony.[44]

        ### 3.    Question 3: Should the Court's claim construction be revised to give no weight to the prosecution history?

7
8        The PTAB construed "standard junction box" without giving any weight to

9    the file history statements that the Court considered in ruling that the claims should

10   be construed in the building context.  The PTAB gave two reasons for this, neither of

11   which were raised by ELCO to the PTAB or the Court (so DMF had no opportunity

12   to respond to them).

13       First, the PTAB ruled that "The statements of the Applicant's attorney are

14   argument, not evidence."[45]  Under the *Phillips* standard, however, the Applicant's

15   attorney arguments in the file history about the patented invention are the epitome of

16   "intrinsic **evidence**" that **must be** considered when construing the patent claims.[46]

17   We do not know why the PTAB ruled otherwise (perhaps unfamiliarity with the

18   district court *Phillips* standard?).

19
20       [44] Davidson Decl., Ex. 2 (Claim Construction Hearing Tr. of July 29, 2019) at 11.

21       [45] PTAB Decision at 14.  The *Estee Lauder* decision on which the PTAB panel
22   relies is not relevant here.  This was a district court case in which bare attorney
     argument about the factual reduction-to-practice date for a claim "cannot take the
     place of evidence lacking in the record" on the reduction-to-practice date—*i.e.*, an
23   attorney's bare argument is not evidence that something factually occurred on a
     given date.  *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 595 (Fed. Cir. 1997)
24   (considering testimony and other evidence submitted in an interference proceeding
     to decide who was the first inventor, which interference proceeding was then
25   appealed to, and tried de novo in, district court).

26       [46] *See Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d 1345, 1350
     (Fed. Cir. 2019) ("The meaning of a term must be considered in the context of all the
27   intrinsic evidence, including the claims, specification, and prosecution history.  The
     prosecution history, like the specification, provides evidence of how the U.S. Patent
     and Trademark Office and the inventor understood the patent.").
28

1    Second, the PTAB ruled that "the statements fail to make clear that the

2    standard junction box in the recessed lighting system claimed is limited to one in a

3    building that connects to building main power," citing cases requiring "clear

4    disavowal of claim scope."[47]  Not even ELCO would agree with that ruling.  Rather,

5    in this Court, ELCO argued that "[t]he prosecution history of a patent is also

6    **extremely important** … to ascertain the true meaning of language used in the patent

7    claims" and "[a]rguments made during prosecution shed light on what the applicant

8    meant by its various terms."[48]

9        The Federal Circuit recently explained that "clear and unmistakable disavowal

10   of claim scope" generally is not a proper application of the *Phillips* standard:

11       [] Iridescent contends that the prosecution history is irrelevant to the
         claim construction question because there is no clear and unmistakable
12       disavowal of claim scope.  We disagree.  We have explained that "[a]ny
         explanation, elaboration, or qualification presented by the inventor
13       during patent examination is relevant, for the role of claim construction
         is to capture the scope of the actual invention that is disclosed,
14       described, and patented.  Although the prosecution history may not in
         some cases be as clear a guide as the specification, it nonetheless "can
15       often inform the meaning of the claim language by demonstrating how
         the inventor understood the invention in the course of prosecution,
16       making the claim scope narrower than it would otherwise be." [citing
         *Phillips*, 415 F.3d at 1317][49]
17

18   Thus, the Court's claim construction ruling (Dkt. 266 at 30) properly applied the

19   *Phillips* standard in which "the prosecution history 'can often inform the meaning of

20   the claim language by demonstrating how the inventor understood the invention.'

21   [citing *Phillips*]."

         **B.    "*driver*"**

22       The PTAB's initial construction of "driver" is different the Court's claim

23   construction for reasons similar to those explained above for "standard junction

24   box."  For brevity, we only quickly identify them here.

25

26   _____

     [47] PTAB Decision at 14-15.

27   [48] ELCO Opening Claim Construction Brief (Dkt. 242) at 3 (emphasis adde).

     [49] *Iridescent Networks*, 933 F.3d at 1352-53.

28

1      First, the PTAB again applied its claim differentiation analysis that, because

2 some claims use the term "building", then other claims must be construed beyond

3 the building context.[50]

4      Second, the PTAB appears to misread clear language from the patent

5 specification ('266 Patent at 4:24-27), which states that the driver may "**deliver [i.e.,**

6 **output]** … a direct current (DC) voltage to the light source module 3", to mean that

7 "a driver **receives** [i.e., has input] DC voltage", stating:

8      Nowhere does the Specification (or prosecution history to the extent
identified to us) restrict the claimed system to be powered by only
9      "building main power."  In particular, the Specification discloses that
the driver may be any type of power supply that **delivers** AC **or DC**
10     voltage to the light source module.  Patent Owner does not address this
straightforward, unambiguous statement, although it was raised by
11     Petitioner.  We interpret the statement as permitting the use of a driver
that **receives DC voltage, e.g., from batteries**, which would not be
12     connected to building main voltage. [underline emphasis in original][51]

13      Third, the PTAB again gave no weight to "[t]he comments by Applicant's

14 counsel" during prosecution.[52]

15      Fourth, the PTAB viewed the expert testimony favorably to ELCO, limiting

16 DMF's expert's testimony as being only that "a driver is needed when operating

17 LED lights with building mains voltage, but not that the claimed recessed lighting

18 systems must always be connected to building mains voltage."[53]

19    **C.    Claim Construction's Impact on Validity Grounds**

20      As explained further below, the Court's constructions of "standard junction

21 box" and "driver" were made in the context the parties dispute over whether the low-

22 voltage DC Imtra prior art for boats invalidates the patent claims.  The Court

23 construed those terms favorable to DMF and we anticipate filing a summary

24 judgment motion to eliminate that prior art from the case based on that dispositive

25

26    [50] PTAB Decision at 18-19.

27    [51] PTAB Decision at 19.

     [52] PTAB Decision at 20.

28    [53] PTAB Decision at 20-21.

1    claim construction.  Specifically, construing either "standard junction box" or

2    "driver"—and certainly both—in the proper building context precludes invalidation

3    of the claims based on the low-voltage DC Imtra boat products.

4         Because the IPR concerns that same Imtra prior art at issue here, ELCO

5    erroneously argues that the Court could not enter summary judgment because, "[a]t a

6    minimum, the PTAB Decision raises a triable issue of fact as to whether the '266

7    patent is valid."[54]  The PTAB's decision is based on its initial **claim construction** of

8    "standard junction box" and "driver" that is different from this Court's construction.

9    But the construction of claim terms is a **question of law for the Court,**[55] not a

10   genuine dispute of material factual for the jury.  And the Court's construction of

11   those terms—by design—are dispositive of the Imtra validity dispute.

12        And those are not the only reasons for granting summary judgment on Imtra.

13   For example, there is no dispute that a "standard junction box" has an industry

14   specified size.[56]  So there will be no genuine factual dispute that the Imtra products

15   do not have the claimed "plurality of elements positioned … so as to align with

16   corresponding tabs of a standard junction."  ELCO's own expert Dr. Bretschneider

17   reports that the Imtra products are so small they fit **completely** inside a standard

18   junction box—with plenty of room to rattle around—which does not come close to

19   having a "plurality of elements" that align with the tabs (circled yellow below) of the

20   standard junction box (highlighting and yellow circles added):

21

22

23

24

25

26    _____

27        [54] ELCO Ex Parte  at 11.

         [55] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).

28        [56] *See* Court's Claim Construction Order (Dkt. 266 at 24-26).

*Expert Report of Eric Bretschneider*

Hatteras is dimensioned to fit inside a standard junction box. The picture below shows an Imtra Hatteras fixture inside a standard 4 inch junction box. [Exh. Y, Imtra Hatteras at p. 27] Thus a POSITA understands that Imtra 2011 and Imtra Hatteras teach a fixture that is dimensioned to fit inside a standard junction box.

## IV.  Argument

The Court should not grant ELCO's *ex parte* application to stay this case for several reasons.

### A.  Stay Standard

ELCO bears the burden of showing that a stay is appropriate.[57]  A stay following the PTAB instituting an IPR "is not automatic" as ELCO's one-size-fits all generic stay arguments indicate, but "must be based upon the circumstances of the individual case before the court" and "ultimately the Court must decide stay requests on a case-by-case basis."[58]  Thus, whether to stay pending IPR "is not limited" to certain factors, "[r]ather, 'the totality of the circumstances governs.'"[59]  One factor that must be considered is "the Court's ability to control its docket to ensure that cases are managed in the interest of justice."[60]  In *Universal Electronics*, the court expressed concern "that allowing the progress of its docket to depend on the status of

---

[57] *Tinnus Enters. LLC v. Telebrands Corp.*, 2017 U.S. Dist. LEXIS 110691, *8(E. D. Tex. Apr. 5, 2017) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

[58] *Tinnus*, 2017 U.S. Dist. LEXIS at *8-9 ("[T]here is not per se rule that patent cases should be stayed pending PTO proceedings, because such a rule 'would invite parties to unilaterally derail litigation.'").

[59] *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013) (quoting *Allergan Inc. v. Cayman Chem. Co.*, No. SACV 07-01316 JVS (RNBx), 2009 WL 8591844, at *2 (C.D. Cal., Apr. 9, 2009)).

[60] *Id.*

1   proceedings elsewhere can interfere with its obligation 'to secure the just, speedy,

2   and inexpensive determination of every action.'"[61]

3          **B.    This Court Need Not Defer To The PTAB's Initial Decision**

4          This Court need not defer to the PTAB to decide claim construction or even

5   whether the Imtra prior art invalidates the asserted patent claims.  Indeed, the PTAB

6   Trial Practice Guide indicates that the PTAB actually should defer to this Court's

7   claim construction decision: The PTAB will give a district court's claim construction

8   appropriate weight based on, among other things, "the similarities between the

9   record in the district court … and the record before the Board" and "whether the

10  terms construed by the district court … are necessary to deciding the issues before

11  it."[62]  Such deference to this Court is especially warranted in this case for several

12  reasons.

13         First, the recessed lighting technology at issue is relatively straight-forward

14  and easily falls within this Court's abilities.[63]  So, unlike other technically complex

15  cases, there is no reason to defer to the PTAB for any technical expertise.

16         Second, this Court has substantial experience with this case and technology

17  after investing court resources to study the patent claims, specification, file history—

18  and even the precise Imtra prior art at issue in the IPR—and rule on the preliminary

19  injunction and claim construction issues in this case.  The parties and Court have

20  been litigating the Imtra validity issue in this case since ELCO filed its preliminary

21  injunction opposition papers nearly a year ago.  And in issuing a tentative ruling in

22  Jaunary 2010 and granting the preliminary injunction in March (Dkt. 147 at 16), the

23  Court specifically considered ELCO's arguments that '266 Patent claims were

24
25         [61] *Id.* (citing Fed. R. Civ. P. 1).  "If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner." *Id.*

26         [62] PTAB Trial Practice Guide at 16.

27         [63] Claim Construction Hearing Tr. of July 29, 2019 at 23 (Davidson Decl. Ex. 2
28  ("[U]nlike most other patents, this one seems clear to me and requires less construction than many others I've seen.").

1   anticipated or obvious based on the Imtra prior art, stating, *inter alia*: "[T]he Imtra

2   product is designed to receive low-voltage, direct current from a boat, and is not

3   designed to be connected to the higher, main voltage of a residential or commercial

4   building."

5       Third, the Court's claim construction ruling (Dkt. 266) was made in the

6   context of the Imtra prior art validity dispute.  For example, DMF's claim

7   construction brief (Dkt. 237 at 7, 9 (emphasis added)) explained that construction of

8   the "standard junction box" and "driver" claim terms would resolve validity disputes

9   about the low-voltage DC Imtra prior art:

10  - *standard junction box* – "**The Dispute**.  The dispute underlying this claim
11     term concerns ELCO reading the term "standard junction box" on alleged
   prior art that may not be compatible with the size of a standard junction box
   for residential/commercial buildings or perform such a junction box's function
   of enclosing wire splices to building main voltage (120 VAC or 277 VAC)—
12     *e.g.*, **the alleged prior art may concern a low voltage device in a boat**."

13  - *driver* – "**The Dispute**.  The dispute underlying this claim term concerns
   ELCO reading the term "driver" on low direct current ("DC") voltage
14     components of **alleged prior art that does not receive the much higher
   building mains alternating current ("AC") voltage** (e.g., 120 VAC or 277
15     VAC) that is the subject of the '266 Patent.

16  Court's typically deny a stay where, as here, the Court has invested resources and

17  has significant experience in the technology and issues presented in the case.[64]

18      Fifth, as discussed, this Court has significantly more experience in applying

19  the district court *Phillips* claim construction standard, which the PTAB only recently

20  started to apply.

21  _____

22  [64] *Livjo, Inc. v. Deckers Outdoor Corp.*, 2011 U.S. Dist. LEXIS 158490, *25 (C.D. Cal. Sep. 27, 2011) ("This case is poised for trial.  After considering parties' briefs and oral argument on Defendant's summary judgment motion,
23  this Court is familiar with the patent at issue.  As a result, the Court finds it unnecessary to wait for the USPTO's guidance upon reexamination.") *Telemac*
24  *Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006)("Because this Court is already familiar with some of Telemac's patents, its interest in
25  simplifying the proceedings by waiting for the PTO to reexamine the patents is not as strong as it might otherwise be."); *Fresenius Med. Care Holdings, Inc. v. Baxter*
26  *Int'l, Inc.*, No. C 03-1431 SBA, 2007 U.S. Dist. LEXIS 44107, at *14-16 (N.D. Cal. June 6, 2007)("Moreover, this Court is already intimately familiar the with
27  the technology at issue here, and therefore its interest in simplifying the proceedings by waiting for the PTO to reexamine the patents is significantly weaker than in cases
28  where trial has not already been held.")

Sixth, unlike the Court's construction, the PTAB's *initial* claim construction ruling is not intended to govern those proceedings, but is only an initial ruling based on an incomplete record in which the PTAB views expert testimony in a light most favorable to ELCO.  Indeed, as discussed, the PTAB's initial construction was based on new claim construction grounds not raised by ELCO that DMF has not had the opportunity to respond to.

Seventh, if the "questions" ELCO alleges were raised as to the Court's claim construction have any merit here, then ELCO can decide to allot briefing space to the issues in opposing DMF's anticipated summary judgment motion on, *inter alia*, the Imtra prior art validity challenge.  That simple summary judgment motion—which will be very boring since the Court will be traversing well-worn ground—may lead to settlement or otherwise resolve this case, the co-pending design patent case between the parties, and the IPR proceeding.

### C.    PTAB May Reconsider, Terminate or Stay the IPR In Deference To the Court's Case Status Ruling

The PTAB has discretion to deny instituting an IPR based on the advanced stage of a co-pending district court litigation.  The PTAB explained that the reason it did not exercise that discretion here was its belief that this Court may stay this case if an IPR were instituted:

> [W]e viewed the District Court's order [denying without prejudice ELCO's request for a stay] as signaling … a willingness to revisit the issue of a stay following our decision on institution.  It is, therefore, a possibility that the March 31, 2020, trial date in the District Court may not hold.
>                                            …
> [W]e do not believe the record of this case supports the conclusion that we should deny institution of trial.  For example, as noted above, the District Court has signaled a willingness to consider a stay of its proceedings pending our determination in this IPR, which would necessarily delay the trial date cited by Patent Owner.[65]

Accordingly, if the Court timely denies ELCO's stay motion, the PTAB may decide to reconsider whether to institute the IPR, terminate the IPR or stay the IPR.

---

[65] PTAB Initial Decision at 34.

Even if the IPR still were to proceed, DMF agrees with ELCO that proceeding "based on an incorrect claim construction is nonsensical."[66]  As discussed above, there is no reason to believe that this Court's claim construction is incorrect and, even if it were, the anticipated summary judgment to be filed in a few weeks gives ELCO the opportunity to raise the claim construction "questions" (discussed above) for the Court to consider a few weeks after that.  In contrast, the PTAB will not seek to correct any errors in its initial claim construction until entering its final determination that—as ELCO admits—is not expected until a year from now.[67]  It would be "nonsensical" to stay this case and proceed in the PTAB IPR for a year on the single Imtra validity issue under an incorrect claim construction.  In contrast, it is highly efficient for any alleged claim construction "questions" to be addressed by this Court in a matter of weeks in a simple summary judgment ruling that simultaneously resolves all infringement and validity issues (not just Imtra).

Further, the Court and parties should not waste the significant resources and effort invested to reach this advanced stage by stopping progress just short of resolution.  ELCO erroneously compares this simple case on recessed lights that is near resolution to cases that involved complex technologies with burdensome pretrial and trial stages yet to be completed.  For example, *PersonalWeb* filed patent cases against Facebook and 20 other defendants that used complex data processing systems.[68]  *Emsat Advanced* alleged infringement of complex mobile phone tracking

---

[66] Ex Parte at 14.

[67] 35 U.S. C. §§ 307, 316(a)(11); see also Ex Parte at 12 ("[T]he PTAB will issue final orders … within twelve months after institution of the IPR.").

[68] *PersonalWeb Techs., LLC v. Facebook, Inc*., No. 5:13-CV-01356-EJD, 2014 U.S. Dist. LEXIS 4095, at *5 (N.D. Cal. Jan. 13, 2014).

1  software patents.[69]  *Cywee Group* involved "cutting-edge motion sensing
2  technologies for handheld devices."[70]

3  **D.    Stay Will Complicate—Not Simplify—Issues**

4  ELCO's argument that a stay would save valuable resources[71] is mistaken for
5  several reasons.

6  First, as a threshold matter, ELCO's generic assertion is detached from the
7  handful of specific issues that actually remain in the patent part of this case.  The
8  Court's claim construction order—by design—essentially resolved the infringement
9  issues (e.g., the Court rejected ELCO's "closed rear face" construction on which it
10  primarily relied for non-infringement).  ELCO's remaining invalidity defense are
11  prior art challenges based on three primary references that the Court already
12  considered in the preliminary injunction ruling and the Court's claim construction
13  ruling—by design—essentially resolved favorably to DMF: (1) the Imtra low-
14  voltage DC products; (2) the LMH2 low-voltage DC products that require an
15  external heat sink;[72] and (3) the Kim patent with a two-part housing (heat sink rear
16  and non-heat conducting sidewall) rather than a "unified casting" and that is
17  **identical** to the Woo reference that the patent Examiners found did not invalidate the
18  patent claims.[73]  ELCO's unclean hands defense does not appear to be an issue and,
19  if so, the Court already indicated that "the merits of this defense are better resolved

[69] *Emsat Advanced v. T-Mobile USA, Inc.*, No. 4:08cv00817, 2011 U.S. Dist. LEXIS 23327, at *2 (N.D. Ohio Mar. 8, 2011)

[70] *Cywee Group Ltd. v. Samsung Elecs. Co*., 2019 U.S. Dist. LEXIS 144149, *10 (E.D. Tex. Feb. 14, 2019)

[71] *Ex Parte* at 1.

[72] *See* Preliminary Injunction Order (Dkt. 147) at 2; Benya Decl. (Dkt. 64) at 74.

[73] See Preliminary Injunction Order (Dkt. 147) at 13-15.

1  on a motion for summary judgment."[74]  In sum, what remains of the patent case is

2  very straightforward and most likely will be resolved in whole or in part a few weeks

3  from now by summary judgment.

4      Second, the PTAB's initial determination indicates that at least two asserted

5  patent claims should be construed in the building context.  The PTAB's claim

6  differentiation argument identified Claim 16 and Claim 22 as having the "building"

7  limitation; Claim 16 and Claim 25 (that depends from Claim 22) are asserted claims.

8      Third, this case also has trademark and unfair competition claims arising

9  under the Lanham Act and California law.[75]

10     Fourth, DMF's design patent case against ELCO is pending.[76]

11     DMF has maintained, and ELCO has not disputed, that a timely judgment

12 entered in the '266 utility patent case is likely to lead to settlement of all these

13 matters.  We may be just weeks away from that.

### E.   Undue Prejudice and Tactical Advantage

#### 1.   Prejudice from wasting the substantial resources invested to bring this case to the brink of resolution

16     Where, as here, a case is in an advanced stage, the substantial investment of

17 time and effort by courts has led to denial of a stay, even after an IPR has been

18 instituted.  For example, in *Immunex Corp. v. Sanofi et al.,*[77] the PTAB had instituted

19 an IPR.  The plaintiff moved to stay right before briefing was completed on a

20 potentially dispositive motion.  Judge Otero noted that "[b]oth parties ha[d] invested

21 a substantial amount of resources into this briefing" and that compelling the

---

[74] Order of Apr. 29, 2019 (Dkt. 2183 at 1).  ELCO either has dropped the defense or should be precluded from raising it for failing to comply with Magistrate Judge Standish Order (Dkt. 286) that ELCO produce unclean hands defense discovery.

[75] Dkt. 1 at 43-49.

[76] *DMF Inc. v. AMP Plus, Inc.,* Case No. 2:19-cv-04519.

[77] *Immunex Corp. v. Sanofi et al.,* Case No. CV 17-02613 SJO (PLAx) (CD Cal. May 8, 2018) (Judge Otero)(Davidson Decl., Ex. 5) at 9.

1  defendants to complete their inter partes review proceedings before the Court heard

2  the summary judgment motion would give the plaintiff a clear tactical advantage.  *Id.*

3      In *Speakware, Inc. v. Microsoft Corp.*, Judge Carter denied a motion to stay

4  based on the significant resources spent in the case—though not as significant as

5  those spent by the Court here—even though trial was over six months away:

6          Over the past eleven months, the parties have briefed motions to
           consolidate and two motions to dismiss, including additional briefing
7          responding to the Decision and Order by Special Master Phillips. The
           Court has also expended significant resources in the instant action,
8          including the determination of a substantive Alice motion regarding the
           validity of the 186 Patent. Accordingly, staying the case now, for
9          months on end, would "undermine this Court's efficient management of
           the case." *Polaris*, 2016 WL 7496740, at *2 (denying stay of a case
10         filed nine months prior).[78]

11     In *Tinnus v. Telebrands*,[79]  the PTAB had instituted post-grant reviews (PGRs)

12  using the higher "more likely than not" standard.[80]  Noting the possibility that the

13  PTAB would not cancel all of the claims, the court declined to stay in light of "the

14  practical difficulties of resetting a trial date after significant delay, the undertaking of

15  re-familiarization with the issues of the case, and the necessity to determine the

16  scope of what was decided by the PTAB, and how, if at all, that information should

17  be presented to the jury."[81]  Moreover, the court declined to stay the case because—

18

19

20     [78] *Speakware, Inc. v. Microsoft Corp.*, Case No. SA CV 18-1293-DOC (DFMx)
    (CD Cal. June 21, 2019)(Davidson Decl. Ex. 4).  *See also Interwoven. Inc. v.*
21  *Vertical Computer Sys., Inc.*, 2012 WL 761692, at *4 (N.D. Cal. Mar. 8, 2012)
    (denying stay, noting that discovery was well underway, but that "[m]ore
22  importantly, the parties have fully briefed the issue of claim construction, attended a
    Markman hearing, and received a claim construction order"); *APP Pharm., LLC v.*
23  *Ameridose LLC,* 2011 WL 816622, at *2 (D.N.J. Mar. 8, 2011) ("The Court having
    invested significant resources in becoming familiar with the patents, relevant art, the
24  parties' drug products, claim construction and the like, it would be a waste of
    judicial resources to put off litigating the instant matter for the length of
25  time  necessary to conclude the reexamination process.").

26     [79] *Tinnus Enters., LLC v. Telebrands, Inc.,* 2017 U.S. Dist. LEXIS 110691, Case
    No. 6:16-CV-00033-RWS (E.D. Tex. April 5, 2017).

27     [80] *Id.*
       [81] *Id.* at 13.
28

1  as here—the court had "already considered the issues before the PTAB and reached

2  (or preliminarily reached) opposite conclusions."[82]

3       This Court similarly invested enormous time and resources in making rulings

4  in this case to bring this litigation to a close.  Fact discovery has already closed.

5  Opening expert reports have been served, and rebuttal expert reports will be

6  exchanged by the end of the week.  The Court has indicated at two status

7  conferences now that it is inclined to consider DMF's summary judgment motion to

8  resolve the dispute in this case.  It would take one year from institution for each of

9  ELCO's IPR's to be decided.  Then, if even one infringed claim survives, the Court

10  and parties would have to refamiliarize themselves with the case.

11       To avoid wasting judicial resources expended in this case, and avoid further

12  waste of resources by the Court having to refamiliarize itself with the subject matter

13  of the case in a year or longer, the Court should permit DMF to move forward with a

14  summary judgment motion and, if necessary trial.

15

16  Dated: November 25, 2019                    Respectfully submitted,

17                                              by: /s/ David W. Long

18                                              David W. Long (admitted *pro hac vice*)
                                                ERGONIQ LLC

19
                                                Ben M. Davidson (Cal. Bar 181464)
20                                              DAVIDSON LAW GROUP, *ALC*
                                                *Attorneys for Plaintiff DMF, Inc.*
21

22

23

24

25

26

27

28     [82] *Id.* at 13-14.