UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**          (IN CHAMBERS) **[REDACTED]** -

DEFENDANTS' EX PARTE APPLICATION TO STAY ACTION PENDING *INTER PARTES* REVIEW
(Dkt. [ 325 ], filed November 22, 2019)

DEFENDANTS' MOTION TO CONSOLIDATE CASES
(Dkt. [ 301], filed November 6, 2019)

## I.      INTRODUCTION AND BACKGROUND

Presently before the Court are defendants AMP Plus, Inc.'s and Elco Lighting, Inc.'s (collectively, "ELCO") *ex parte* application to stay this action, dkt. 325 ("Stay Mot."), as well as ELCO's motion to consolidate cases, dkt. 301 ("Consolidation Mot."). Plaintiff DMF, Inc. ("DMF") opposes both ELCO's motion to stay and ELCO's motion to consolidate cases. Dkt. 326 ("Stay Opp."), 304 ("Consolidation Opp."). ELCO filed a reply in support of its motion to consolidate on November 18, 2019. Dkt. 319 ("Consolidation Reply").

The Court held a hearing on December 2, 2019. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

### A.      The Utility Patent Case

DMF, Inc. filed this action ("the Utility Patent Case") against ELCO on August 15, 2018. Dkt. 1 ("Compl."). DMF designs, manufactures, and distributes residential and commercial downlighting, commonly referred to as "recessed lighting," and ELCO makes, sells, and imports lighting products. Id. ¶¶ 1–3. DMF alleges that ELCO's products infringe DMF's "Unified Driver and Light Source Assembly for Recessed Lighting," U.S. Patent No. 9,964,266 ("the '266 Patent"). See generally id. DMF asserts claims for: (1) patent infringement; (2) trademark infringement; and (3) unfair competition. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

Recessed lighting systems are typically installed within a hole cut into, and extending above, a ceiling. Compl. ¶ 14. To comply with fire resistance codes and regulations, traditional recessed lighting systems may require installation of a firebox that encloses the lighting system. Id. Many conventional recessed lighting systems manage temperature using a heat sink attached on top of a separate housing that contains the light source and other components, and these systems may also include both a "can" for housing the fixture's lighting portion, as well as a separate "junction box" that connects the wires from the lighting fixture to the building's electrical system. Id. ¶¶ 12–13.

In contrast, the '266 Patent embodies DMF's invention of a recessed lighting system that uses light emitting diode ("LED") technology which "could fit in traditional 'cans' or other lighting fixtures, but also was small enough to fit into standard junction boxes without using a separate firebox, 'can' or lighting fixture." Compl. ¶ 16. In particular, the invention features "a twist-and-lock connection so that trims of different sizes and designs easily could be attached by hand without tools." Id. ¶ 18. Thus, DMF's recessed lighting system consolidates a driver and light source module into a single casting.

The United States Patent and Trademark Office ("the PTO") published the '266 Patent on May 8, 2018, naming DMF's Michael D. Danesh ("Danesh") as the inventor. Compl. ¶ 23. The thirty claims covered by the '266 Patent have an effective priority filing date of July 5, 2013. Id. ¶ 24. Danesh assigned ownership in the '266 Patent to DMF on May 8, 2018, and DMF "owns all rights, title and interest in and to the '266 Patent, including all rights to sue and recover for past and future infringement." Id. ¶¶ 26–27.

According to DMF, "ELCO was facing an uncertain future as the industry moved away from the traditional lighting systems that ELCO sold and toward LED-based lighting systems like DMF sold." Compl. ¶ 40. DMF alleges that, as a result, ELCO began manufacturing "knock-off products" that copy DMF's products which feature technology covered by the '266 Patent. Id. ¶¶ 47–48. On August 3, 2018, DMF sent a cease and desist letter to ELCO, notifying ELCO that ELCO's products infringed the '266 Patent. Id. ¶ 54. DMF subsequently filed this action.

### 1.    The Court Issues a Preliminary Injunction

On March 7, 2019, the Court issued a preliminary injunction enjoining ELCO from making, using, selling, or offering to sell products that DMF alleges infringe on the '266 Patent. Dkt. 148 ("Preliminary Injunction Order"). The Court determined that "DMF has shown that it is more likely than not that it will prevail on infringement with respect to both the original version and the modified versions of ELCO's ELL LED Modules."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

Preliminary Injunction Order at 13. The Court concluded that DMF satisfied its burden of demonstrating irreparable harm in the absence of a preliminary injunction by presenting evidence of "decreased market share and lost customer relationships, price erosion, lost reputation as an innovator of premium specification-grade lighting, jeopardized relationships with sales representatives, and a jeopardized ability to recoup their investment in developing [products]." Id. at 21.

In opposing DMF's request for a preliminary injunction, ELCO challenged the validity of the '266 Patent on the grounds that: "(1) Claim 1 of the '266 Patent is anticipated by the Kim Patent, U.S. Patent No. 9,222,661 . . . and the Imtra product; (2) DMF's asserted claims are rendered obvious by a combination of other patents and products; and (3) DMF's asserted claims are impermissibly indefinite." Preliminary Injunction Order at 13. The Court rejected each of ELCO's contentions.

First, the Court determined that "the Kim reference does not disclose a **heat conducting unified casting** that significantly dissipates heat, but rather discloses a non-heat conducting housing paired with a heat-conducting heat sink." Preliminary Injunction Order at 15 (emphasis in original). With respect to the Imtra product, the Court concluded that unlike DMF's products, "the Imtra product is designed to receive low-voltage, direct current from a boat, and is not designed to be connected to the higher, main voltage of a residential or commercial building." Id. at 16.

Second, the Court determined that "ELCO's assertion of obviousness fails for multiple reasons." Preliminary Injunction Order at 17. The Court reasoned that ELCO's expert "is not an expert of ordinary skill in the art" because "[a]lthough [ELCO's] expert holds a PhD in mechanical engineering, he does not appear to have any experience in designing recessed lighting devices or its components." Id. The Court also concluded that industry praise for DMF's products demonstrated those products' nonobviousness. Id. at 18.

Finally, the Court considered and rejected ELCO's contention that "Claim 1 of the '266 Patent is invalid on the grounds of indefiniteness because it impermissibly includes a method step in what is otherwise an apparatus claim[.]" Preliminary Injunction Order at 20. The Court distinguished authority cited by ELCO as inapplicable caselaw that "does not apply to limitations that . . . do[] not require any user activity." Id. Because infringement of Claim 1 of the '266 Patent would not require any user activity, the Court did not find persuasive ELCO's argument that "it is unclear whether a compact recess lighting system having all of the foregoing apparatus elements would, by itself, infringe

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|----------|--------------------------|------|-------------------|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

claim 1 or whether it would infringe only if its rear face and sidewalls later, during operation, in fact significantly dissipate heat generated by the light source module during operation of the light source." Preliminary Injunction Order at 21 (internal quotation marks and emphasis omitted).

ELCO filed an interlocutory appeal of the Court's preliminary injunction order to the United States Court of Appeals for the Federal Circuit on April 2, 2019. Dkt. 165. On August 23, 2019, pursuant to ELCO's unopposed motion to voluntarily dismiss its appeal, the Federal Circuit dismissed ELCO's appeal. Dkt. 280. The parties agree that the Court's preliminary injunction remains in effect.

### 2.      The Court's Claim Construction Order

DMF filed a joint claim construction chart on June 21, 2019. Dkt. 227. The parties filed claim construction briefs throughout July 2019. Dkt. 227, 237, 239, 243, 255, 256. The Court held a claims construction hearing on July 29, 2019, dkt. 259, and issued its claim construction order on August 2, 2019, dkt. 266 ("Claim Construction Order").

Two of the claims covered by the '266 Patent, claims 1 and 26, formed the bases for the Court's claim construction order. Claim Construction Order at 1. The Court noted that "[c]laim construction begins with an examination of the intrinsic evidence of record, which includes the patent claims, the specification, and, if in evidence, the prosecution history." Id. at 4 (citing Phillips v. AWH Corp., 415 F.3d 1303, 1316–17 (Fed. Cir. 2005) (en banc)). The Court construed various terms, including *inter alia* "standard junction box" and "driver." Claim Construction Order at 26–29.

#### i.      "Standard Junction Box" Construction

The term "standard junction box" appears in Claim 1 of the '266 Patent. Claim Construction Order at 24. The pertinent portion of Claim 1 recites:

> a unified casting . . . wherein the unified casting includes a plurality of elements positioned proximate to the open front face so as to align with corresponding tabs of a standard junction box and thereby facilitate holding the unified casting up against the standard junction box when the unified casting is installed in the standard junction box . . .

Claim Construction Order at 25. The parties disputed whether, with respect to the phrase "standard junction box,": (1) the word "standard" limits the claim to junction boxes having an industry-specified size; and (2) the junction box must perform the function of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL       'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

accommodating wire splices to building main power. Id. The Court determined "that, in the context of the '266 Patent, the term 'standard' means 'industry-specified.'" Claim Construction Order at 26. With respect to the phrase "building main power," DMF contended that "a junction box serves the purpose of separating wiring splices to building main voltage from the surrounding ceiling or crawl space." Id. In contrast, ELCO argued that "nothing in the claim or specification provides that the wires entering the junction box must come from 'building main power[.]'" Id. Looking to the '266 Patent's file history, the Court found that "a person of ordinarily skill in the art would understand that a 'standard junction box' in the context of the '266 Patent is a junction box used in residential and commercial buildings." Id. at 27. The Court therefore concluded that "junction box" means "a shell or enclosure for accommodating wire splices to building main power and separating them from other items inside a ceiling or crawl space." Id.

### ii.      "Driver" Construction

The term "driver" appears in Claim 1 of the '266 Patent. Construction Order at 28. The pertinent portion of Claim 1 recites:

> a driver for powering the light source module to emit light, the driver including an electronic device to at least one of supply and regulate electrical energy to the light source module[.]

Id. The parties likewise disputed the proper construction of the term "driver." According to DMF, "'drivers' in the context of recessed LED lights used in residential or commercial buildings are understood to be devices that receive building main voltage and convert that into the voltage required by the LED light." Id. In contrast, ELCO argued that the term "driver" is not so limited so as to only refer to "LED drivers [that] may be connected to building main voltage." Id. at 29. The Court concluded that the term "driver" does not require construction, but "agree[d] with DMF that a person of ordinary skill in the art would understand that a driver in the context of the '266 Patent is intended to serve the function of supplying and regulating electrical energy from *building main power* to the light source module." Id. (emphasis added).

### 3.      The Court Denies ELCO's Motion to Stay Without Prejudice

On May 17, 2019, ELCO filed a petition for *inter partes* review of the '266 Patent. Dkt. 244-2 ("the IPR Petition"). In particular, the IPR Petition requests the review of Claims 1, 2, 4–11, 13–17, 19, 21–22, 25–26, and 28–30 regarding the '266 Patent. Id. at 1. On July 9, 2019, ELCO requested that the Court stay further proceedings in this action

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

pending the Patent Trial and Appeal Board's ("the PTAB") determination of whether to grant the IPR Petition. Dkt. 244. On July 12, 2019, the Court denied without prejudice ELCO's motion to stay. Dkt. 249. The Court noted that the Court "will not entertain any motions to stay the case until the PTAB has granted [ELCO's] IPR petition." Id. at 1. The Court concluded, however, that ELCO could renew the motion to stay in the event that the PTAB granted the IPR Petition. Id.

**4.     The Court Sets Dates, Including a March 31, 2020 Trial Date**

The Court held a further scheduling conference on June 17, 2019, setting a trial date of March 31, 2020. Dkt. 226. On August 21, 2019, pursuant to a joint stipulation between the parties, the Court modified its June 17, 2019 order in part, setting the following dates:

| | |
|---|---|
| Factual Discovery Cut-off: | November 4, 2019; |
| Last Day to File Motions: | January 27, 2020; |
| Exchange of Expert Reports: | November 15, 2019; |
| Exchange of Rebuttal Reports: | November 29, 2019; |
| Expert Discovery Cut-off: | December 23, 2019; |
| Pretrial Conference: | March 16, 2020; |
| Hearing on Motions in Limine: | March 16, 2020; and |
| Jury Trial: | March 31, 2020. |

Dkt. 278, 279. The Court subsequently extended the fact discovery cut-off to November 12, 2019, dkt. 295, and continued the deadline to serve rebuttal expert reports to December 6, 2019, dkt. 328.

**5.     The PTAB Grants *Inter Partes* Review**

The PTAB granted the IPR Petition on November 21, 2019, agreeing to review Claims 1, 2, 4–11, 13–17, 19, 21–22, 25–26, and 28–30 regarding the '266 Patent. Dkt. 325-2 ("PTAB Order"). In determining whether to grant the IPR Petition, the PTAB "expressly construe[d] the claims only to the extent necessary to determine whether to institute *inter partes* review." Id. at 7 (internal citation omitted). Accordingly, the PTAB reviewed the Court's claims construction order, including the Court's construction of the terms "standard junction box" and "driver." Id. at 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL    'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

The PTAB disagreed with the Court's construction of "standard junction box" and "driver." PTAB Order at 8–21. The PTAB construed "'standard junction box' to mean 'an enclosure of industry-specified size for housing electrical connections.' The term is not limited to accommodating wire splices *to building main power*.'" Id. at 15 (emphasis in original). The PTAB expressly considered the Court's construction of "driver," concluding that "[r]espectfully, we find the [Court's] construction limiting a driver to a device supplying and regulating electrical energy *from building main power* to the light source module too narrow[.]" PTAB Order at 18 (emphasis in original).

The PTAB also considered the likelihood of success of the IPR Petition's challenge to the '266 Patent on anticipation grounds. With respect to anticipation, ELCO "argue[d] that the integrated driver electronics disclosed in Imtra 2011 meet the limitation of 'a driver for powering the light source module to emit light.'" PTAB Order at 24 (internal citation omitted). In opposing the IPR Petition, DMF argued that "except for Imtra Cyprus and Sardinia products, every Imtra product receives low-voltage DC power from *the battery of a boat*." Id. (emphasis added). The PTAB, however, did not find persuasive DMF's argument that Imtra LED drivers "are different structures than the 'driver' of the '266 Patent" because: (1) although many Imtra products receive power from a boat battery, rather than from building main power, DMF "acknowledge[d] at least that [some] Imtra LED drivers receive low-voltage DC power"; and (2) "numerous models of Imtra's LED fixtures satisfy the 'driver' limitation, as the claimed 'driver' is not limited to one that receives building main voltage." Id. at 25.

Finally, the PTAB declined to exercise its discretion to deny the IPR Petition based on the progress of the Utility Patent Case. PTAB Order at 33. The PTAB expressly acknowledged that trial in the Utility Patent Case is set to commence on March 31, 2020, id. at 33 n.13, but construed the Court's denial of ELCO's motion to stay without prejudice to renewal "as signaling . . . a willingness to revisit the issue of a stay following [the PTAB's] decision on institution." PTAB Order at 33–34. According to the PTAB, "[i]t is, therefore, a possibility that the March 31, 2020, trial date in the District Court may not hold." PTAB Order at 34. Oral argument before the PTAB is scheduled to take place on August 20, 2020. Dkt. 325-3 at 10.

## B.    The Design Patent Case

DMF filed another action against ELCO on May 23, 2019. See DMF, Inc. v. AMP Plus Inc. et al., 2:19-cv-4519-CAS(GJSx) ("the Design Patent Case"), Dkt. 1. In the Design Patent Case, DMF alleges that ELCO has infringed others of DMF's patents

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

including U.S. Patent No. D847414 ("the D'414 Patent") and U.S. Patent No. D847415 ("the D'415 Patent"). Design Patent Case, Dkt. 13 ("FAC"). The D'414 Patent covers "[t]he ornamental design for a lighting module," while the D'415 Patent covers "[t]he ornamental design for a unified casting light module[.]" Design Patent Case, Dkt. 13-1, 13-2.

The Court held a scheduling conference in the Design Patent Case on July 22, 2019. Dkt. 31. The Court set the following dates:

| | |
|---|---|
| Factual Discovery Cut-off: | June 30, 2020; |
| Last Day to File Motions: | August 21, 2020; |
| Exchange of Expert Reports: | June 15, 2020; |
| Exchange of Rebuttal Reports: | July 15, 2020; |
| Exchange of Reply Reports: | August 5, 2020; |
| Expert Discovery Cut-off: | August 14, 2020; |
| Pretrial Conference: | October 26, 2020; |
| Hearing on Motions in Limine: | October 26, 2020; and |
| Jury Trial: | November 12, 2020. |

Id.

## II.    LEGAL STANDARDS

### A.    Motion to Stay Pending *Inter Partes* Review

The Leahy-Smith America Invents Act ("the AIA") "replaced the former *inter partes* reexamination proceeding with an *inter partes* review process." PersonalWeb Techs., LLC v. Apple Inc., 69 F. Supp. 3d 1022, 1024 (N.D. Cal. 2014). *Inter partes* review ("IPR") allows a party, other than the patentee, to bring an adversarial proceeding in the PTO to "cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under 35 U.S.C. §§ 102 or 103 and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). Three technically-trained Administrative Patent Judges of the PTAB conduct the IPR. 35 U.S.C. § 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|----------|-------------------------|------|-------------------|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

The PTO will grant an IPR request if the party seeking review "shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). "[I]f if an IPR is instituted, the PTAB 'must address every claim the petitioner has challenged.'" Wi-LAN Inc. v. LG Elecs., Inc., No. 18-cv-01577-H-AGS, 2019 WL 5698259, at *7 (S.D. Cal. Nov. 4, 2019) (citing SAS Inst., Inc. v. Iancu, 138 S. Ct. 1348, 1354 (2018)). If the PTO grants a request for IPR, the PTAB must issue a final determination "not later than 1 year" after the petition is granted, but the one-year period may be extended by 6 months based on a showing of good cause. 35 U.S.C. § 316(a)(11).

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (citing Landis v. North American Co., 299 U.S. 248, 254 (1936)). In considering whether to stay an action pending IPR, courts typically consider three factors: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." Universal Elecs., Inc. v. Universal Remote Control, Inc., 943 F. Supp. 2d 1028, 1030–31 (C.D. Cal. 2013). In conducting this inquiry, "the totality of the circumstances governs." Id. at 1031. Many courts have "recognized a liberal policy in favor of granting motions to stay pending IPR." Zomm, LLC v. Apple Inc., 391 F. Supp. 3d 946, 956 (N.D. Cal. 2019) (internal citation and quotation marks omitted). "To be sure, a court is under no obligation to delay its own proceedings by yielding to ongoing PTAB patent reexaminations—even if the reexaminations are relevant to the infringement claims before the Court." SpeakWare, Inc. v. Microsoft Corp., No. 8:18-cv-01293-DOC-DFM, 2019 WL 1878350, at *2 (C.D. Cal. Feb. 21, 2019) (internal citation and quotation marks omitted). Accordingly, "whether to stay is always within the court's discretion." Zomm, 391 F. Supp. 3d at 956.

**B.     Motion to Consolidate**

Federal Rule of Civil Procedure 42(a) permits the Court to consolidate actions involving a common question of law or fact. Fed. R. Civ. P. 42(a). Consolidation is proper when it serves the purposes of judicial economy and convenience. "The district court has broad discretion under this rule to consolidate cases pending in the same district." Investors Research Co. v. United States District Court for the Central District of California, 877 F.2d 777 (9th Cir. 1989). "In determining whether to consolidate, a court weighs the interest in judicial convenience against the potential for delay, confusion, and prejudice caused by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

consolidation." Ferguson Corinthian Colleges Inc., No. 11-cv-0127-DOC, 2011 WL 1519352, at *2 (C.D. Cal. Apr. 15, 2011) (quotation marks omitted); see also Huene v. United States, 743 F.2d 703, 704 (9th Cir. 1984) ("The district court, in exercising its broad discretion to order consolidation of actions presenting a common issue of law or fact under Rule 42(a), weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause"). "[T]ypically, consolidation is favored." Ho Keung Tse v. Apple, Inc., No. 12-cv-02653-SBA, 2013 WL 451639, at *3 (N.D. Cal. Feb. 5, 2013). "The party moving for consolidation bears the burden of proving that consolidation is desirable." Benkle v. Ford Motor Co., No. 8:16-cv-01569-DOC-JCX, 2017 WL 8220707, at *2 (C.D. Cal. Apr. 28, 2017) (internal citation omitted).

## III.   DISCUSSION

### A.   ELCO's Motion to Stay Utility Patent Case Pending IPR

ELCO argues that "[a]n immediate stay of the entire action is warranted" because "each of the relevant factors courts generally consider in deciding stay motions weighs heavily in favor of granting a stay." Stay Mot. at 2. The Court addresses each factor in turn.

#### 1.   Stage of Proceedings in the Utility Patent Case

According to ELCO, the PTAB's order instituting the IPR of the '266 Patent favors the Court's staying the Utility Patent case because "[t]his case is not in its final stages." Stay Mot. at 8. That is because "expert discovery ends in December 2019; motions for summary judgment are not due to be filed until near the end of January 2020; and the pre-trial conference and trial are not until March 2020." Id.

The stage of the proceedings factor considers "whether discovery is complete and whether a trial has been set." Universal Electronics, 943 F. Supp. 2d at 1031. "The Court's expenditure of resources is an important factor in evaluating the stage of the proceedings." Id. "When cases are in the initial stages of litigation and there has been little or no discovery, policy favors granting a motion to stay pending IPR." Carl Zeiss A.G. v. Nikon Corp., No. 2:17-cv-07083-RGK-MRW, 2018 WL 5081479, at *2 (C.D. Cal. Oct. 16, 2018). In contrast, a stay is not appropriate where "the parties have fully briefed the issue of claim construction, attended a Markman hearing, and received a claim construction order." Interwoven, Inc. v. Vertical Computer Sys., Inc., No. 10-cv-04645-RS, 2012 WL 761692, at *4 (N.D. Cal. Mar. 8, 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|----------|--------------------------|------|--------------------|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

Here, the Court has already set trial for March 31, 2020, dkt. 226, a date that is fast approaching.  Moreover, the parties have fully briefed the issue of claim construction, attended a <u>Markman</u> hearing, and received a claim construction order.  Dkt. 259, 266.  Discovery is well underway: fact discovery closed on November 12, 2019, while expert discovery is scheduled to close in less than a month, on December 23, 2019.  Dkt. 279, 295.  Accordingly, the Court concludes that the advanced stage of these proceedings weighs against a stay of the Utility Patent Case pending the IPR.  <u>Cf. Wonderland Nursery Goods Co. v. Baby Trend, Inc.</u>, No. 5:14-cv-01153-VAP-SP, 2015 WL 1809309, at *3 (C.D. Cal. Apr. 20, 2015) (granting stay pending IPR where "fact discovery is not yet complete, expert discovery has not yet begun, and a trial date has not yet been set."); <u>Limestone v. Micron Tech.</u>, No. 8:15-cv-00278-DOC-KES, 2016 WL 3598109, at *3 (C.D. Cal. Jan. 12, 2016) (granting stay pending IPR where "[d]iscovery is still in its early stages (and in fact has not yet begun for some Defendants), the parties have not briefed the Court on claim construction, and the Court has not set a trial date.").

### 2.     Whether Stay Would Simplify Issues

ELCO contends that a stay pending the IPR is appropriate because "[i]f the PTAB invalidates the subject patent, there will be no need for further proceedings in this case." Stay Mot. at 1.  According to ELCO, "[e]ven if the PTAB invalidates *some* claims of the '266 [P]atent, such a ruling will narrow the scope of this case, thus still saving valuable resources."  <u>Id.</u> (emphasis added).  DMF argues, however, that a stay "will complicate—not simplify—issues[.]"  Stay Opp. at 21.

"The second factor examines whether a stay will simplify the issues in question and trial of the case."  <u>Evolutionary Intelligence LLC v. Yelp Inc</u>, No. 13-cv-03587-DMR, 2013 WL 6672451, at *5 (N.D. Cal. Dec. 18, 2013).  "Waiting for the outcome of the IPR could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the court with expert opinion of the PTO and clarifying the scope of the claims."  <u>FastVDO LLC v. AT&T Mobility LLC</u>, No. 3:16-cv-00385-H-WVG, 2017 WL 2323003, at *4 (S.D. Cal. Jan. 23, 2017) (internal punctuation and citation omitted).  "This is particularly true when a party has requested PTO review of each of the patents-in-suit[.]"  <u>Universal Electronics</u>, 943 F. Supp. 2d at 1032.

The Court notes that the Claims at issue in the IPR include each and every Claim that DMF asserts in the Utility Patent Case.  And, in granting the IPR Petition to reexamine the '266 Patent, the PTAB concluded "that the record demonstrates a reasonable likelihood that [ELCO] will prevail with respect to *at least one of the claims* challenged in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

Petition[.]" PTAB Order at 34 (emphasis added). But the fact that the PTAB has decided to institute an IPR as to each of the Claims at issue in this case, does not mean, as ELCO suggests, "that ELCO **is likely to prevail**" on its challenges to all of the Claims. Stay Mot. at 4 (emphasis in original). That is because if the PTAB decides to institute an IPR on at least *one* ground raised in an IPR petition, the PTAB must institute trial on *all* grounds raised in the Petition. See PGS Geophysical AS v. Iancu, 891 F.3d 1354, 1360 (Fed. Cir. 2018) (finding that the AIA "require[s] a simple yes-or-no institution choice respecting a petition, embracing all challenges included in the petition"). Moreover, as DMF points out, the operative complaint in the Utility Patent Case asserts "trademark and unfair competition claims arising under the Lanham Act and California law," which the IPR will not fully resolve. Stay Opp. at 22; see also Cognex Corp. v. Nat'l Instruments Corp., No. CIV.A. 00-442-JJF, 2001 WL 34368283, at *2 (D. Del. June 29, 2001) (denying stay pending reexamination proceeding because plaintiff's "complaint alleges a variety of claims which are not linked to the patent infringement claim, including claims of copyright and *trademark infringement and unfair competition*, all of which will require a trial.") (emphasis added). On the other hand, "estoppel will prevent [ELCO] from raising in this Court invalidity grounds that were or could reasonably have been raised during the IPR." Wonderland, 2015 WL 1809309, at *3; see also 35 U.S.C. § 315(e)(2).

The fact that the PTAB, in its order instituting IPR, reached a different preliminary determination regarding the meaning of the claim terms "standard junction box" and "driver" deserves consideration. Importantly, the PTAB's decision is preliminary and unappealable. See Cuozzo Speed Techs., LLC v. Lee, 136 S. Ct. 2131, 2137 (2016) ("[the] initial decision whether to institute an inter partes review is final and nonappealable.") (internal citation and quotation marks omitted); see also Michelle L. Evans, 152 Am. Jur. Trials 349: Litigation of Inter Partes Review Proceedings in Patent Law, § 9. Claim Construction (Originally published in 2017) (citing B/E Aerospace, Inc. v. MAG Aerospace Industries, LLC, 2016 WL 1082726 at *3 (U.S. Pat. Tr. & App. Bd. 2016)) ("[t]hese findings are *preliminary* and are *subject to further review* in the [PTAB]'s final decision." (emphases added)). For these reasons, it also is not binding on this Court. Despite these facts, the Court has independently reviewed its claim construction, including in light of the PTAB's competing analysis. Having reviewed the record, including both intrinsic and extrinsic evidence, the Court respectfully disagrees with the PTAB's constructions of the terms "standard junction box" and "driver" and reaffirms its previous construction of these terms as requiring some relationship to building main power. See Claim Construction Order at 24–29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

Importantly, "[c]laims must be read in view of the specification, of which they are a part." Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). The '266 Patent specification repeatedly emphasizes the importance of the disclosed lighting assemblies being able to comply "with all building and safety codes/regulations." See '266 Patent at Abstract ("Based on this configuration, the lighting system provides a compact design . . . to reduce the overall cost of the lighting system while still complying with all building and safety codes/regulations."); see also id. at 3:3–6 ("The size of the cavity **12** may be pursuant to popular industry specifications for junction boxes and in compliance with all applicable building and safety codes/regulations."), 6:7–11 ("By shielding the driver **4** from the outside environment, the reflector **6** reduces the risk of fire or other dangers and ensures the recessed lighting system **1** complies with building and safety codes/regulations."); 7:15–25 ("Based on this configuration, the compact recessed lighting system **1** provides a more compact design . . . to reduce the overall cost of the recessed lighting system **1** while still complying with all building and safety codes/regulations."); see also Claim Construction Order at 27 (noting same).

Consistent with these statements in the patent itself, during patent prosecution, the applicant, again characterized the claims as being relevant to the field of "residential and commercial lighting." After an in-person interview with the Patent Examiner, the patent applicant provided an interview summary, including stating the following:

To begin the January 24, 2018 interview at the USPTO, Inventor Michael Danesh gave a presentation on the technical subject matter underlying the claims, *including a description of the state-of-the-art in residential and commercial lighting* at the time of his inventions. Inventor Danesh described to the Examiners his recognition of various challenges arising from applicable building codes and fire-related safety standards for recessed lighting (particularly in multiple dwelling units or "multifamily construction"), which in part provided the basis for Inventor Danesh's innovative lighting solutions. Given this context, Inventor Danesh then demonstrated his award-winning lighting products embodied by the claims and provided product samples to the Examiners to more closely scrutinize.

\* \* \*

Next, Inventor Danesh and Mr. Teja turned the Examiners' attention to the role of a *standard-sized junction box* in the context of Inventor Danesh's innovations as embodied in the claims . . . . The junction box itself has an approved Underwriters Laboratories (UL) fire rating (e.g., at least 2 hours), such that it meets *applicable*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

*building codes and fire-resistant safety standards*. Inventor Danesh reiterated to the Examiners that such an assembly of a standard sized junction box containing the heat conducting unified casting with the LED module and driver, as shown in Fig. 3 of the present application, significantly facilitates installation of LED lighting in built environments by reducing the time and labor costs typically associated with ensuring that recessed lighting adheres to *applicable building codes and fire safety standards*. Inventor Danesh explained that his assembly obviates the need for conventional sheet metal recessed fixtures that have both a "can" in which a lighting component is placed, and a separate junction box for accommodating wire splices to building power; instead, in Inventor Danesh's assembly, only one "housing" is required for both the lighting components and wire splicing to *building power*.

\* \* \*

In the single-housing solution provided by Inventor Danesh's innovative assembly, building wiring carrying the AC "mains" voltage may be coupled to the driver inside the unified casting via wire nuts or connectors inside the junction box, as illustrated in Fig. 1 of the present application. In the context of a built environment including multiple lighting fixtures, the wiring for multiple junction boxes containing respective unified castings may be daisy chained together and thereby meet both *applicable building and electrical codes and fire safety standards* without requiring the labor-intensive construction of multiple fire-boxes.

Dkt. 69, Exhibit 4 ('266 Patent File History), FH266PAT 1053–1056 (emphases added); see also id. at FH266PAT 1060 (distinguishing prior art on the basis that it did not mention "anything whatsoever about building codes or fire safety standards; [the prior art reference] does not even use the words 'wall,' 'ceiling,' 'building,' or 'fire.'"); Claim Construction Order at 27, 28 (noting same excerpts of file wrapper). Whether they are considered statements that constitute prosecution history disclaimers or simply statements consistent with the patent specification itself, these assertions are unequivocal in placing the claimed invention of the '266 Patent in the context of buildings, including "building power."

The PTAB's decision to reject these statements out of hand as "attorney argument," see PTAB Order at 14, is not supported by its cited case, Estee Lauder Inc. v. L'Oreal, S.A., 129 F.3d 588, 595 (Fed. Cir. 1997). In Estee Lauder, patent owner Estee Lauder attempted to argue in an interference proceeding that test results and knowledge obtained by two individuals that were not named as inventors on the patent in dispute (an Estee Lauder employee and the head of an independent laboratory) should "inure to the benefit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

of the inventors and prove reduction to practice prior to the critical date." Id. The Federal Circuit observed that the patent owner "cite[d] no evidence that either [non-inventor individual] was in a position to judge the success of the test results; it relie[d] only on the arguments of counsel." Id. The case makes no mention of the proper inquiry for considering statements made in the prosecution history by an attorney representative for a patent applicant. It does not reference the prosecution history for a patent at all. And indeed, the PTAB's reliance on the case in the context of an analysis of the prosecution history is inconsistent with the long-held requirement that statements by an applicant (including by way of its attorney representatives) in the prosecution history are considered part of the patent intrinsic record as binding information the public is entitled to rely on in understanding a patent's scope. See Iridescent Networks, Inc. v. AT&T Mobility, LLC, 933 F.3d 1345, 1350 (Fed. Cir. 2019) ("The meaning of a term must be considered in the context of all the intrinsic evidence, including the claims, specification, and prosecution history. The prosecution history, like the specification, provides evidence of how the U.S. Patent and Trademark Office and the inventor understood the patent.") (internal citations and quotation marks omitted); see also Biogen Idec, Inc. v. GlaxoSmithKline LLC, 713 F.3d 1090, 1095 (Fed. Cir. 2013) ("Prosecution history disclaimer . . . promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution.") (internal citation and quotation marks omitted); accord Phillips, 415 F.3d at 1317.

Based particularly on the statements in the prosecution history, the claim differentiation presumption cited by the PTAB is also overcome. Specifically, in its order instituting IPR proceedings, the PTAB applied the doctrine of claim differentiation to find that, because three of the claims of the '266 Patent refer explicitly to a "building," the rest of the claims should be presumed broader in scope. See PTAB Order at 11 ("Under the doctrine of claim differentiation, a presumption is raised the claim 1, which recites a standard junction box, does not require installation or placement in a building."). But as noted, the PTAB's analysis did not give the same weight to the patent prosecution history that the Court finds appropriate to apply here. Indeed, the references in some, but not all, of the claims to a "building," rather than a "structure," and specifically only in those claims that describe the relationship of the claimed device to external components, is not inconsistent with the other intrinsic evidence cited here.

Accordingly, the intrinsic record alone is sufficient to support the Court's constructions of these claim terms. However, as discussed in the Court's claim construction order, the factual evidence submitted by DMF's expert, James Benya, further confirms this outcome. See Claim Construction Order at 27. Given the intrinsic record,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

the fact that some of Benya's statements are made in the context of commercial and
residential buildings makes them no less compelling to understanding the relationship of,
for instance, the claimed "standard junction box" to building main power.

Having considered its previous construction order in light of the PTAB's preliminary
construction, the Court respectfully concludes that the PTAB's preliminary order does not
provide the Court with a compelling basis to depart from the Court's previous construction
of these terms, and a stay would not simplify the issues.

###          3.          Prejudice to DMF

ELCO asserts that a stay is warranted because DMF will not be injured by a
temporary stay since: (1) DMF has already secured a preliminary injunction preventing
ELCO from selling its allegedly infringing products; and (2) ELCO has not engaged in
dilatory tactics.  Stay Mot. at 13.

With respect to the third factor, the Court considers "whether a stay would unduly
prejudice or present a clear tactical disadvantage to the nonmoving party."  Universal
Electronics, 943 F. Supp. 2d at 1033.  "Delay in litigation by itself does not establish undue
prejudice."  Carl Zeiss, 2018 WL 5081479, at *3.  "When the parties are business
competitors, however, and the plaintiff may lose customers if the case does not proceed,
this may result in prejudice." Carl Zeiss, 2018 WL 5081479, at *3.  "[C]ourts also consider
evidence of dilatory motives or tactics, such as when a party unduly delays in seeking
reexamination of a patent.  Such tactics include seeking reexamination on the eve of trial
or after protracted discovery."  Asetek Holdings, Inc. v. Cooler Master Co., No. 13-cv-
00457-JST, 2014 WL 1350813, at *4 (N.D. Cal. Apr. 3, 2014) (internal citations and
quotation marks omitted).

Here, ELCO filed the IPR Petition on May 17, 2019, *prior* to the parties' submission
of claims construction briefs and the Court's Markman hearing. See generally IPR Petition.
Accordingly, the Court cannot say that ELCO has been dilatory in seeking the IPR.  Neither
party argues that "[e]vidence, witness availability, and memory concerning the pertinent
timeframe will likely become more stale and difficult to retrieve as time passes."
Interwoven, 2012 WL 761692, at *3.  Several courts have held that "[t]he parties' status as
direct competitors also weighs against a stay because it increases the likelihood of undue
prejudice."  Interwoven, 2012 WL 761692, at *3; accord Otto Bock HealthCare LP v.
Ossur hf, No. 8:13-cv-00891-CJC-AN, 2013 WL 12313020, at *3 (C.D. Cal. Dec. 16,
2013) ("prejudice to the patentee is heightened when parties to litigation are direct
competitors; in such cases, *courts presume that a stay will prejudice the non-movant.*")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

(emphasis added) (internal citation and punctuation omitted). <u>But see</u> <u>Wonderland</u>, 2015
WL 1809309, at *4 ("the prejudice factor is not easily resolved by application of a *per se*
rule regarding competitors. It instead necessitates examining the circumstances of the case
to determine if monetary damages are sufficient to compensate for harm incurred during a
potential stay.").

During the hearing, counsel for DMF acknowledged that the Court's preliminary
injunction remains in force and has had the effect of halting the sale of ELCO's alleged
infringing products. It would appear then, that a stay of further proceedings pending the
IPR would not significantly prejudice DMF with respect to its patent infringement claim.
The Court notes, however, that DMF also asserts claims for trademark infringement and
unfair competition. <u>See generally</u> Compl. And, DMF has previously adduced evidence,
in the form of a letter from ELCO's President, that ELCO has instructed its sales
representatives that **[REDACTED]**. DMF previously asserted that this letter has been
"obtained in the marketplace[.]" Dkt. 28-27, ¶ 67. Counsel for DMF argued, during the
hearing, that this representation by ELCO, and others like it, places clout over DMF's status
"as an innovator," causing DMF reputational harm that would be further exacerbated by a
stay of these proceedings pending the IPR.

In light of this evidence, including the letter from ELCO's President, the Court finds
DMF's contentions regarding the possibility of prolonged reputational harm sufficient, at
this juncture, to counsel against a stay pending the IPR because a stay would also delay
resolution of DMF's unfair competition claims. <u>Cf.</u> <u>Avago Techs. Fiber IP (Singapore)</u>
<u>Pte. Ltd. v. IPtronics Inc.</u>, No. 10-cv-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal. July
28, 2011) (determining, in case where plaintiff opposed stay pending *inter partes* review,
that plaintiff's assertions in opposition brief that plaintiff is "suffering harm to its reputation
as being the industry leader and to the goodwill that [plaintiff] should be entitled to realize
by branding itself as an innovative company" were "unsupported" but nonetheless
declining to grant stay because "even ordinary competition can justify denial of a stay when
that competition is based on an alleged infringement and has effects that would be difficult
to reverse after the fact."). In light of ELCO's and DMF's status as direct competitors, the
Court concludes that this factor slightly favors a stay.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

     **4.**     **Other Considerations Counsel Against Stay**

"In addition to the three factors outlined above, the Court also examines the totality of the circumstances when determining whether to grant a stay." Carl Zeiss, 2018 WL 5081479, at *4 (internal citation omitted). "Another consideration is the Court's ability to control its docket to ensure that cases are managed in the interest of justice." Universal Electronics, 943 F. Supp. 2d at 1035.

Here, the Court notes that the deadline to file dispositive motions is January 27, 2020, while trial is set to begin on March 31, 2020. In contrast, oral argument in the IPR is set to occur on August 20, 2020. Moreover, the PTAB has until at least November 21, 2020, one year from its grant of the IPR Petition, and perhaps an additional six months, to issue a decision.[1] See Chrimar Sys. Inc v. Ruckus Wireless, Inc., No. 16-cv-00186-SI, 2016 WL 5403595, at *2 (N.D. Cal. Sept. 26, 2016) ("The PTAB must complete the IPR within twelve months of its institution, unless there is good cause for an extension of no more than six months.") (citing 35 U.S.C. § 316(a)(11)). ELCO has a legitimate interest in seeking the PTAB's adjudication of ELCO's IPR Petition. But "[i]f litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner." Comcast Cable Commc'ns Corp., LLC v. Finisar Corp., No. C 06-04206 WHA, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007).

Accordingly, the Court "is concerned that allowing the progress of its docket to depend on the status of proceedings elsewhere can interfere with its obligation 'to secure the just, speedy, and inexpensive determination of every action.'" Universal Electronics, 943 F. Supp. 2d at 1035 (citing Fed. R. Civ. P. 1). Indeed, "[c]ourts are not required to stay judicial proceedings pending re-examination of a patent." Aten Int'l Co., Ltd v. Emine Tech. Co., No. 8:09-cv-00843-AG-MLG, 2010 WL 1462110, at *6 (C.D. Cal. Apr. 12, 2010). Because the totality of the circumstances weighs against a stay, the Court declines to order a stay here and therefore **DENIES** ELCO's *ex parte* application for a stay.

---

[1]     During the hearing, the parties appeared to agree that any IPR decision from the PTAB is not immediately binding on the Court until all possible appeals are exhausted or the time to appeal expires. Given the January 27, 2020 deadline to file dispositive motions, the Court noted the possibility that an appeal from an order granting a dispositive motion might reach the Federal Circuit prior to an appeal from the PTAB's final IPR decision.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL       'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

**B.     ELCO's Motion to Consolidate Utility Patent and Design Patent Cases**

ELCO seeks to consolidate the Utility Patent and Design Patent Cases for all purposes, including trial.  Consolidation Mot. at 1.  According to ELCO: "[b]oth Actions involve the same parties, related patents, and largely the same accused products"; "[t]he damages issues overlap"; and "[c]onsolidation would serve the interests of judicial efficiency and economy, while causing no prejudice to either party."  Id.  DMF opposes consolidation on the basis that it "would impose otherwise avoidable delay, jury confusion and prejudice[.]"  Consolidation Opp. at 11.

In determining whether consolidation is warranted, "[t]he threshold issue is whether the two proceedings involve a common party and common issues of fact or law."  Garcia v. Capistrano Unified Sch. Dist., No. 8:16-cv-02111-DOC-ADS, 2018 WL 6017009, at *12 (C.D. Cal. Mar. 30, 2018) (internal citation omitted).  "However, "the mere existence of common issues, a prerequisite to consolidation, does not require consolidation."  Torman v. Capital All. Grp., No. 14-cv-02915-BAS-WVG, 2015 WL 5827404, at *2 (S.D. Cal. Oct. 5, 2015) (internal citation and punctuation omitted).  "To determine whether to consolidate, a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation."  Knox v. Yingli Green Energy Holding Co. Ltd., 136 F. Supp. 3d 1159, 1162 (C.D. Cal. 2015) (internal citation omitted).

As a threshold matter, both the Utility Patent Case and the Design Patent Case involve common parties.  Indeed, the plaintiff, DMF, and the defendants, AMP Plus, Inc. and Elco Lighting, are the same in both actions.  The parties appear to disagree, however, regarding the degree of similarity of issues of fact or law common between these cases.  Both actions involve allegations that ELCO's "ELL LED Modules" infringe DMF's patents.  See, e.g., Compl. ¶ 113; Design Patent Action, Dkt. 1 ¶ 37.  According to DMF, however, "[the] Utility Patent Case concerns only **Residential** ELL Modules sold **prior to** March 7, 2019 and the Design Patent Case concerns only **Commercial** ELL Modules sold **after** April 30, 2019."[2]  Consolidation Opp. at 9 (emphases in original).  Moreover, the cases involve different patents: the Utility Patent Case involves only the '266 Patent, while the Design Patent Case concerns the D'414 Patent and the D'415 Patent.  See Cummins-Allison Corp. v. Glory Ltd., No. 2-03-cv-358TJ, 2004 WL 1635534, at *3 (E.D. Tex. May 26, 2004) (denying motion to transfer and consolidate different patent suits involving the

---

[2]     In reply, ELCO acknowledges "unequivocally . . . that only the Residential ELL Modules are accused in the Utility Patent Case[.]"  Consolidation Reply at 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

same parties because "[a]lthough the patents are related and might involve the interpretation of identical claim terms, the patents are different[.]"). The Court therefore concludes that, at the very least, the Utility Patent Case and the Design Patent Case involve different products, patents, and time periods, weighing against consolidation.[3]

Even if the Court were inclined to find that the Utility Patent Case and Design Patent Case presented common issues, the possibility of delay outweighs any judicial convenience achieved through consolidation. Indeed, the cases are at different stages of litigation. In the Utility Patent Case, fact discovery has already closed, expert discovery is scheduled to close on December 25, 2019, dispositive motions are to be filed by January 27, 2020, and trial is set to commence on March 31, 2020. In contrast, in the Design Patent Case, fact discovery is scheduled to close on June 30, 2020, expert discovery is scheduled to close on August 14, 2020, dispositive motions are to be filed by August 21, 2020, and trial is set to begin on November 12, 2020.[4] To be sure, "the fact that the cases are at different discovery stages is not fatal to the consolidation motion." Benkle, 2017 WL 8220707, at *2 (internal citation and punctuation omitted). And, to minimize the delay that consolidation would present to the Utility Patent Case, in which trial is set for March 31, 2020, ELCO "suggest[s] that both cases be set for trial in May 2020, resulting in only a two-month delay of the Utility Patent Case and accelerating trial for the Design Patent Case by six months." Consolidation Mot. at 1. Given the early stages of the Design Patent Case, however, and in light of the Court's ruling declining to stay the Utility Patent Case, setting a combined trial for May 2020, a six-month advance of the trial date currently set in the Design Patent Case, weighs against consolidation because it risks "prejudice as a result of undue pressure to constrict applicable pretrial deadlines as a means of forcing the [Design Patent Case] to

---

[3]      ELCO contends that consolidation is appropriate to prevent the risk of duplicative recovery because "a patentee cannot recover **both** infringer profits and a reasonable royalty by asserting infringement of both a design patent and a utility patent by a single product." Consolidation Mot. at 5. DMF argues that "[d]ouble recovery plainly cannot occur" because of the different patents, products, and time periods involved. Consolidation Opp. at 8. The Court need not resolve this question at this juncture.

[4]      According to DMF, "ELCO has not served any discovery in the Design Patent Case. DMF served one simple set of document requests in the Design Patent Case and ELCO has yet to produce responsive documents." Consolidation Opp. at 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

catch up to the [Utility Patent Case]." <u>Diehl v. Money Source, Inc.</u>, No. 17-cv-0125-WS-B, 2018 WL 1370613, at *3 (S.D. Ala. Mar. 16, 2018).

The possibility of juror confusion likewise militates against consolidation. One patent, the '266 Patent, with 30 Claims is at issue in the Utility Patent Case. <u>See generally</u> Compl. Consolidation with the Design Patent Case would require the jury to consider an additional two patents, the D'414 Patent and the D'415 Patent, further compounding the possibility of confusion. <u>See Syngenta Seeds, Inc. v. Monsanto Co.</u>, No. C.A. 02-1331-SLR, 2004 WL 2002208, at *2 (D. Del. Aug. 27, 2004) (denying motion to consolidate cases involving the same parties because "[a]dding another patent to the plaintiff's claims will only increase the case's complexity and make it that much harder for a jury to come to a resolution."). Moreover, not only do the Utility Patent Case and the Design Patent Case concern different patents, they involve different *types* of patents: design patents and utility patents. <u>See A-1 Elecs. Inc. v. Pang Chang</u>, No. 2:02-cv-8579-DSF-CW, 2004 WL 7334928, at *2 (C.D. Cal. Mar. 1, 2004) ("[A] design patent protects the way an article looks. In contrast, a utility patent protects the way an article is used and works.") (citing 35 U.S.C. §§ 101, 171). And, the analysis for design patent infringement differs from that of utility patent infringement. <u>See Good Sportsman Mktg. LLC v. Li & Fung Ltd.</u>, No. 6:07-cv-395, 2010 WL 2640385, at *1 (E.D. Tex. June 29, 2010) ("A design patent is fundamentally different from a utility patent, . . . the respective tests for infringement are different[.]") (internal citations omitted).

<u>Spigen Korea Co. v. Ultraproof, Inc.</u>, does not compel a different result. No. 2:16-cv-09185-DOC-DFM, 2017 WL 5508664, at *1 (C.D. Cal. Oct. 20, 2017). In that case, another court granted defendants' motion to consolidate one case involving design patents with another case involving utility patents. <u>Id.</u> at *3. There, the court determined that "consolidation will not delay resolution of the cases given that both cases are in the pre-discovery or early discovery stages of litigation." Spigen, 2017 WL 5508664, at *1. Although the court concluded that the fact that the cases involved different patents, types of patents, and products "does not pose a significant risk of confusion," the court noted that its "power to separate the claims before trial should allay any fear of confusion. If, at the close of discovery, it appears that single trial on the merits of the two infringement claims would be so confusing as to outweigh the benefits of consolidation, then the [c]ourt can order separate trials." <u>Id.</u>

Here, unlike in <u>Spigen</u>, the Utility Patent Case and Design Patent Case are not both "in the pre-discovery or early discovery stages of litigation." <u>Spigen</u>, 2017 WL 5508664, at *3. In contrast, the deadline to file dispositive motions in the Utility Patent Case is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|----------|--------------------------|------|-------------------|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

January 27, 2020, less than two months away, and trial is set for March 31, 2020. As the court noted in Spigen, "[u]ltimately, the decision whether to consolidate rests in the Court's sound discretion." Consolidation would: (1) delay resolution of the Utility Patent Case, the case ready for disposition, should the Court decline to stay pending the IPR; and (2) delay resolution of the Design Patent Case should the Court order a stay pending the IPR. Because, in either event, consolidation would cause delay, the Court declines to exercise its discretion to consolidate the Utility Patent Case with the Design Patent Case. See Antoninetti v. Chipotle Mexican Grill, Inc., No. 06-cv-2671-J-WMC, 2007 WL 2669531, at *2 (S.D. Cal. Sept. 7, 2007) ("Federal courts have declined to consolidate cases involving common questions of law or fact where the cases were at different stages of preparedness for trial and where consolidation would delay the case ready of disposition."). In light of the different legal standards that govern claims for infringement of utility patents and design patents, the likelihood of juror confusion further counsels against consolidation.

Finally, ELCO argues that consolidation with the Design Patent Case, in which fact-discovery is still ongoing, is warranted because a "slight extension of the discovery schedule will allow the parties to complete discovery in both actions." Consolidation Mot. at 7. ELCO asserts that it "will likely file a motion for additional time to depose DMF's Rule 30(b)(6) representative[.]" Id. Moreover, ELCO contends that it "recently became aware of potentially significant witnesses located in Hong Kong" and that "[a]n extension of the discovery schedule will permit [ELCO] to secure testimony from these witnesses either voluntarily or through the Hague Convention." Id. at 8–9. To the extent that ELCO seeks to re-open discovery in the Utility Patent Case, ELCO is free to seek that relief in accordance with the Federal Rules of Civil Procedure and the standards governing the extension of discovery. The Court declines to consolidate the Utility Patent Case with the Design Patent case on that basis, however.

For all these reasons, the Court concludes that consolidation is not warranted. Accordingly, the Court **DENIES** ELCO's motion to consolidate the Utility Patent Case and the Design Patent Case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:18-cv-07090-CAS(GJSx) | Date | December 13, 2019 |
|---|---|---|---|
| Title | DMF, INC. v. AMP PLUS, INC. ET AL. | | |

## IV.   CONCLUSION

In accordance with the foregoing, the **DENIES** ELCO's *ex parte* application to stay pending *inter partes* review.  The Court also **DENIES** ELCO's motion to consolidate the Utility Patent Case with the Design Patent Case.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |