1   Ben M. Davidson (State Bar No. 181464)
    ben@dlgla.com
2   DAVIDSON LAW GROUP, ALC
    4500 Park Granada Blvd, Suite 202
3   Calabasas, California  91302
    Office: (818) 918-4622
4   Fax: (310) 473-2941

5   David W. Long (admitted *pro hac vice*)
    ERGONIQ LLC
6   8200 Greensboro Dr. Suite 900
    McLean, VA  22102
7   Office: (202) 847-6853

8   *Attorneys for Plaintiff DMF, Inc.*

9

10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  DMF, Inc., a California corporation, | Civil Action No. 2:18-cv-07090 CAS (GJXx) |
| 13       Plaintiff, | **Plaintiff DMF's Motion for Partial Summary Judgment** |
| 14          v. | Date:  March 2, 2020 |
| 15  AMP Plus, Inc. d/b/a ELCO Lighting, a California corporation; and | Time: 10:00 a.m. Ctrm:  350 W. First. Street, Room 8D |
| 16  ELCO Lighting Inc., a California corporation, | Hon. Christina A. Snyder |
| 17       Defendants. | **REDACTED - CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER** |

18

19

20

21

22

23

24

25

26

27

28

# Table of Contents

I.    Introduction...................................................................1

II.   Legal Standards ...........................................................1

III.  ELCO Infringed The '266 Patent ................................3

IV.  The '266 Patent Claims Are Not Invalid ....................6

    A.   Invalidity Standard .........................................6

          1.   Anticipation..........................................6

          2.   Obviousness ........................................7

    B.   Kim Reference................................................ 11

    C.   LMH2 Reference........................................... 12

    D.   Gifford .......................................................... 13

    E.   ELCO's Invalidity Grounds ......................... 13

V.   ELCO's Unclean Hands Defense Fails As A Matter Of Law................. 17

    A.   Procedural History........................................ 18

    B.   Unclean Hands Standard ............................... 18

    C.   There Was No *Unconscionable Act* ............................ 20

    D.   DMF's Marketing Phrases Have No "Immediate And Necessary
Relation" To How It Obtained Or Enforced The '266 Patent. ..... 23

    E.   ELCO's Allegations Provide No Defense To Its Trademark
Infringement And Unfair Competition.......................... 24

1
2
3

# Table of Authorities

**Cases**

*2die4kourt v. Hillair Capital Mgmt., LLC*,
   No. SACV 16-01304 JVS(DFMx),
   2016 U.S. Dist. LEXIS 118211 (C.D. Cal. Aug. 23, 2016) ................................ 24

*Abbott Labs. v. Adelphia Supply United States*,
   No. 15-CV-5826 (CBA) (LB),
   2019 U.S. Dist. LEXIS 194268 (E.D.N.Y. Sep. 27, 2019) ................................ 24

*Abromson v. Am. Pac. Corp.*,
   114 F.3d 898 (9th Cir. 1997) ............................................................................. 2

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .......................................................................................... 2

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 323 (1986) ............................................................................. 1, 2

*CIBA-Geigy Corp. v. Bolar Pharm. Co.*,
   747 F.2d 844 (3d Cir. 1984) ............................................................................. 24

*Cochran Firm, P.C. v. Cochran Firm L.A. LLP*,
   641 Fed. Appx. 749 (9th Cir. 2016) (unpublished) ......................................... 24

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
   826 F.2d 837 (9th Cir. 1987) ........................................................................... 25

*Gilead Scis., Inc. v. Merck & Co.*,
   888 F.3d 1231 (Fed. Cir. 2018) ....................................................................... 19

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
   322 U.S. 238 (1944) .......................................................................................... 19

*In re Gabapentin Patent Litig.*,
   648 F. Supp. 2d 641 (D.N.J. 2009) .................................................................. 23

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .......................................................................................... 2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .......................................................................................... 2

*Perfumebay.com Inc. v. eBay Inc.*,
   506 F.3d 1165 (9th Cir. 2007) ......................................................................... 24

*Precision Instruments Manufacturing Co. v. Automotive Maintenance Machinery Co.*,
   324 U.S. 806 (1945) .......................................................................................... 19

*S. Cal. Darts Ass'n v. Zaffina*,
   762 F.3d 921 (9th Cir. 2014) ........................................................................... 24

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987) ........................................................................... 2

*Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.*,
   121 F.3d 1332 (9th Cir. 1997) ......................................................................... 2

**Rules**
Fed. R. Civ. P. 56(a) ........................................................................................... 1

## I.     Introduction

The Court should grant summary judgment finding infringement and validity of DMF's U.S. Patent No. 9,964,266 ("the '266 Patent").  The Court already has essentially resolved the infringement issues in this case by ruling on Defendants' ("ELCO's") numerous claim construction arguments, clearing the way for a determination of infringement based on undisputed facts regarding the structure and operation of ELCO's ELL Modules.  The Court also should grant summary judgment that the asserted patent claims are not invalid.  ELCO argues that the patent claims are "anticipated" but lacks a single prior art reference disclosing each claim limitation.  ELCO relies on an expert's conclusory opinions, which ignored the teaching of the prior art references and suggested a modification of the prior art that would have resulted in a risk of electrocution—the opposite of what the prior art intended.  Finally, the Court should grant summary judgment on ELCO's "unclean hands" defense because DMF did not engage in any unconscionable act to obtain or enforce its patent.  ELCO's defense is based on DMF's short-hand reference to a UL-standard that was approved by UL, and that ELCO itself also used on an identical product.

## II.     Legal Standards

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.[2]

---

[1] Fed. R. Civ. P. 56(a).

[2] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.[3] The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."[4]  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5]

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.[6]  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."[7]  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.[8]

---

[3] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *see also* Fed. R. Civ. P. 56(c), (e).

[4] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990); *see also Celotex*, 477 U.S. at 324.

[5] *Celotex* at 322; *see also Abromson v. Am. Pac. Corp*., 114 F.3d 898, 902 (9th Cir. 1997).

[6] *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631, n.3 (9th Cir. 1987).

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co*., 121 F.3d 1332, 1335 (9th Cir. 1997).

[8] *See Matsushita*, 475 U.S. at 587.

## III.   ELCO Infringed The '266 Patent

An infringement analysis has two steps.[9]   First, the court construes the asserted claims.[10]   Second, the court determines whether the accused product meets each element of the claim as construed.[11]

Here, as to the first step, the Court construed the claims on August 2, 2019, after receiving briefs and evidence from the parties and conducting a *Markman* hearing on July 29, 2019.[12]   As to step two, "[a]n accused product infringes a claim if it embodies each claim element or its equivalent."[13]   The patentee must prove infringement by a preponderance of the evidence.[14]

"The addition of features does not avoid infringement, if all the elements of the patent claims have been adopted."[15]   That is because "any other reasoning would allow an infringer to avoid infringement merely by adding additional elements to an infringing device."[16]

In this case, DMF asserts that three versions of ELCO's ELL Modules (Version 1, 2 and 3) infringe the following claims of the '266 Patent:

- Independent Claim 1 and its dependent Claims 2, 4-8 and 13-16.
- Claims 19 and 21 that depend from Independent Claim 17
- Claim 25 that depends from Independent Claim 22.
- Independent Claim 26 and its dependent Claims 28-30.

---

[9] *Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 930 F.3d 1325, 1336 (Fed. Cir. 2019)(citing *Clare v. Chrysler Grp. LLC*, 819 F.3d 1323, 1326 (Fed. Cir. 2016)).

[10] *Indivior*, 930 F.3d. at 1336.

[11] *Indivior* at 1336.

[12] Dkt. 266.

[13] *TEK Glob., S.R.L. v. Sealant Sys. Int'l*, 920 F.3d 777, 784 (Fed. Cir. 2019).

[14] *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011).

[15] *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 945 (Fed. Cir. 1990).

[16] *Suntiger, Inc. v. Sci. Research Funding Grp.*, 189 F.3d 1327, 1336 (Fed. Cir. 1999).

1       Below, from left to right, are images of accused Version 1, Version 2 (which

2   is Version 1 with a metal cap on top) and Version 3 (which has a casting extended in

3   a conical shape like the cap on Version 2):[17]

  

    The accused ELCO ELL Modules are copies of DMF's DRD2 Module that

practices the invention claimed in the '266 Patent.  Below is an image from the

Complaint (Dkt. 1) that compares the '266 Patent Figure 1, DMR DRD2 Module and

ELCO Version 1 ELL Module:[18]



1    Shown below are images of one-half of DMF's DRD2 Module next to one-

2    half of Version 1 of the ELCO ELL Module:[19]



12   Below are images of one-half of a Version 2 and one-half of a Version 3 ELCO ELL

13   Module next to each other, where the internal view provided at the bottom further

14   illustrates the similarity with Version 1 (the left side shows the Version 1 module

15   with an aluminum cylinder and black conical cap placed on top to make the Version

16   2):[20]

 

24   Because the ELCO ELL Modules were copied from DMF's patent DRD2

25   product, there is little dispute that the ELCO's product infringe the '266 Patent.[21]

---

[19] SUF 5.
[20] SUF5SUF 7.
[21] SUF 171-197.

The Court's claim construction ruling, by design, resolved the primary infringement disputes concerning all three versions of the ELCO ELL Modules—e.g., "closed rear face", "significantly dissipate heat" and "substantially heat conducting."

The Statement of Undisputed Facts ("SUF") submitted currently herewith, therefore, show in SUF 1  through SUF 93 that there is no genuine dispute of material fact that each limitation of the asserted patent claims are met by all three versions of ELCO's ELL Modules (Version 1, 2 and 3) in view of the Court's claim construction ruling.

## IV.   The '266 Patent Claims Are Not Invalid

ELCO's prior art invalidity challenges are premised on three references that the Court considered in the preliminary injunction motion and found to have little merit:

- Imtra low-voltage boat lights.
- Kim reference with a two-part housing that is identical to the Woo Reference expressly considered and the asserted claims allowed over during prosecution of the '266 Patent
- LMH2 reference that is a low-voltage device having an external driver and heat sink.

The Court's claim construction ruling, by design, resolved the primary validity diputes—e.g., "driver", "standard junction box" and "unified casting".  Accordingly, SUF 94 through 167 show there is no genuine issue of material fact that the asserted patent claims are not invalid.

### A.   Invalidity Standard

Under 35 U.S.C. § 282, patents are presumed to be valid.  Overcoming this presumption requires clear and convincing evidence.[22]

#### 1.   Anticipation

A party may show that a patent claim is invalid is by showing that the patent claim was anticipated by alleged prior art.[23]  A party asserting that a patent claim

---

[22] *Microsoft Corp. v. i4i Ltd.*, 131 S. Ct. 2238, 2243, 180  L. Ed. 2d 131 (2011).
[23] 35 U.S.C. §102.

was anticipated must show that a single prior art reference disclosed every claim limitation arranged or combined in the same way as recited in the patent claim.[24]

The requirement that the prior art elements themselves be "arranged as in the claim" means that claims cannot be "treated . . . as mere catalogs of separate parts, in disregard of the part-to-part relationships set forth in the claims and that give the claims their meaning."[25]

### 2. Obviousness

A party may show that a patent claim is invalid is by showing that the patent claim would have been obvious in view of alleged prior art.[26]  A party asserting that a patent claim would have been obvious in light of prior art must show that the differences between the patent claim and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the patent claim to a person having ordinary skill in the art to which the claimed invention pertains.[27]

Obviousness is a question of law with underlying factual findings relating to the scope and content of the prior art; differences between the prior art and the claims at issue; the level of ordinary skill in the pertinent art; the presence or absence of a motivation to combine or modify with a reasonable expectation of success; and any objective indicia of non-obviousness.[28]

A party asserting that a patent claim would have been obvious—ELCO here—must show that a person of ordinary skill at the time of the invention would have

---

[24] *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332-33 (Fed. Cir. 2010); *Connell v. Sears, Roebuck & Co*., 722 F.2d 1542, 1548 (Fed. Cir. 1983).

[25] *Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co*., 730 F.2d 1452, 1459 (Fed. Cir. 1984).

[26] 35 U.S.C. § 103(a).

[27] *Id*.; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406, 127 S. Ct. 1727, 1734 (2007).

[28] *Person Pharm. LLC v. Alvogen Malta Operations LTD.*, 945 F.3d 1184 (Fed. Cir. 2019); *KSR*, 550 U.S. at 406.

selected, combined prior art elements in different references in the normal course of
research and development to yield the claimed invention."[29]  To render a
claim obvious, prior art cannot be "vague" and must collectively, although not
explicitly, guide an artisan of ordinary skill towards a particular solution.[30]

  In pursuing obviousness grounds, the party must not use hindsight where the
challenged patent is being used as a template to guide the party to pick-and-choose
references to combine.[31]  The reason for combining different prior art references is a
critical component of an obviousness analysis, requiring a party challenging the
validity of a patent claim as obvious to provide an explicit analysis of the prior art
motivation to combine references.[32]

  Objective evidence of nonobviousness such as industry praise or copying is a
fundamental part of the overall obviousness analysis that should be considered.[33]
Such evidence plays an important role as a guard against prohibited hindsight and
may often be the most probative and cogent evidence in the record.[34]

  Objective evidence of nonobviousness includes whether others in the industry
have copied the claimed invention and whether the claimed invention has received

---

[29] *Unigene Labs., Inc. v. Apotex, Inc*., 655 F.3d 1352, 1360-61 (Fed. Cir.
2011)(citing *KSR*, 550 U.S. at 421).

[30] *Id.*

[31] *KSR*, 550 U.S. at 421 ("A factfinder should be aware . . . of the distortion
caused by hindsight bias and must be cautious of arguments reliant upon *ex
post* reasoning."); *Graham*, 383 U.S. at 36 (cautioning that courts must not "'slip[]
into use of hindsight'"); *In re Fritch*, 972 F.2d 1260, 1266 (Fed. Cir. 1992) ("It is
impermissible to use the claimed invention as an instruction manual or 'template' to
piece together the teachings of the prior art so that the claimed invention is
rendered obvious.").

[32] *KSR*, 550 at 398 (analysis of reason to combine the known elements in the
fashion claimed by the patent should be made explicit); *see also Innogenetics v.
Abbott Labs*, 512 F.3d 1363, 1373-74 (Fed Cir. 2008)( "Knowledge of a problem
and motivation to solve it" are insufficient to show "motivation to combine
particular references to reach the particular claimed method.")

[33] *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1378 (Fed. Cir. 2012).

[34]*Id.*

1
2
3
4

industry praise.[35]  Evidence that the industry praised a claimed invention or a product
which embodies the patent claims weighs against an assertion that the same claim
would have been obvious because industry participants are not likely
to praise an obvious advance over the known art.[36]

5
6
7
8
9
10
11
12
13
14

Objective considerations such as industry praise and copying help turn back
the clock and place the claims in the context that led to their invention because
technical advance often occurs through incremental steps that, in retrospect, may
seem deceptively simple.[37] Often the inventive contribution lies in defining the
problem in a new revelatory way.[38]  The Federal Circuit requires consideration of
these objective indicia because they "provide objective evidence of how the patented
device is viewed in the marketplace, by those directly interested in the
product."[39]There should be a nexus between the claimed invention and objective
evidence of nonobviousness.[40]  There is a presumption of nexus for objective
considerations when the objective evidence is tied to a specific product and that

15
16
17
18
19
20
21
22
23
24
25
26
27
28

[35] *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1311 (Fed. Cir. 2010)( "Copying may indeed
be another form of flattering praise for inventive features. In the absence of any
record evidence attributing these secondary considerations to causes other than the
claimed invention, [patentee] may rely on this added support for non-obviousness."

[36]  *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1334 (Fed. Cir. 2016).

[37] *Mintz*, 679 F.3d at 1378.

[38] *Id.* at 1377.

[39] *Mintz*, 679 F.3d at 1378-79 (citing *Demaco Corp. v. F. Von Langsdorff
Licensing Ltd*., 851 F.2d 1387, 1391 (Fed. Cir. 1988)); *see also Spectralytics, Inc. v.
Cordis Corp*., 649 F.3d 1336, 1344 (Fed. Cir. 2011) ("The objective considerations
reflect the contemporary view of the invention by competitors and the
marketplace."); *Continental Can Co. USA, Inc. v. Monsanto Co*., 948 F.2d 1264,
1273 (Fed. Cir. 1991) ("The significance of a new structure is often better measured
in the marketplace than in the courtroom."); *Interconnect Planning Corp. v. Feil*,
774 F.2d 1132, 1143 [***1902]  (Fed. Cir. 1985) ("Recognizing the difficulty of
casting one's mind back to the state of technology at the time the invention was
made, courts have long recognized the usefulness of evidence of the
contemporaneous attitude toward the asserted invention. A retrospective view of the
invention is best gleaned from those who were there at the time.")

[40] *WBIP*, 829 F.3d at 1329.

product "is the invention disclosed and claimed in the patent."[41]

A. **Imtra**

ELCO relies on two Imtra catalogs of marine boat lights and a physical Imtra

Hatteras product as alleged prior art to the asserted patent claims:

- Imtra Marine Lighting Product Catalog ("Imtra 2011" Ex. 265 and 265-C)[42]
- Imtra Marine Lighting Product Catalog for Spring 2007 ("Imtra 2007 Ex. 317)[43]
- Imtra Hatteras physical product[44]

Below are images from the Imtra 2011 catalog:[45]



Sardinia 120 VAC Family       Ventura Low-Voltage DC Family

Portland Low-Voltage DC Family     Hatteras Low-Voltage DC Family

---

[41] *Id.* at 1329 (quoting *J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997)); see also *Crocs,* 598 F.3d at 1310-11.

[42] SUF 101-117.

[43] SUF 119-120.

[44] SUF 94-100.

[45] SUF 101.

1
2
3
4
5
6
7
8

None of the Imtra products was designed to mate with or be mounted to tabs of a standard junction box, so they lack the "plurality of elements" limitation required by all asserted patent claims.[46]  As a result, the Imtra products cannot anticipate these claims.  Below is an image provided by ELCO's expert Dr. Bretschneider of an Imtra Hatteras product placed within the only standard junction box he identified with the tabs of the junction box and diameter of the Imtra Hatteras circled yellow showing Imtra Hatteras does not come close to having a "plurality of elements" to align with the tabs of the standard junction box:[47]

9
10
11
12
13
14
15
16
17



18
19
20

All of the Imtra products (except the Sardinia 120 VAC Family) are low-voltage devices that receive low-voltage DC, rather than building mains voltage.[48] So they additionally lack the "driver" required by all asserted claims.

21

**B.    Kim Reference**

22
23
24

The Kim Reference is identical to the Woo Refence that two Patent Office Examiner's found did not invalidate the asserted '266 Patent claims.[49]  Below is an image of Kim and Woo showing a non-heat conducting housing (orange) with a heat

25
26
27
28

[46] SUF94-117. SUF 96-98; SUF 106, 110.
[47] SUF 98.
[48] SUF 95, 99, 108-109, 111-112
[49] SUF 145-151.

conducting heat sink (red) that does not meet the "unified casting" limitation required in all asserted patent claims:



**Woo Reference**                              **Kim Reference**

## C.    LMH2 Reference

The LMH2 Reference is a low-voltage light source with an external driver and does not meet the "driver" limitation required in all asserted patent claims.[50]  It requires an external heat sink and does not meet the "unified casting" limitation required by all asserted claims.[51]  Further, the LMH2 light source has three equally

---

[50] SUF 160, 163.

[51] SUF 161, 164, 167.

spaced holes along its perimeter that do not align with tabs of a standard junction box and, thus, does not have the "plurality of elements" limitation required by all claims.[52]  Below is an image of the LMH2 light source and external driver:



### D.   Gifford

Gifford has a safety adaptor apparatus 100 that is placed at the opening of a junction box to isolate the dangerous building mains voltage inside the junction box above the safety adaptor apparatus from the room below.[53]  The safety adaptor apparatus is to safely attach surface mounted light fixtures to the adaptor.  Below is an image of Gifford:

### E.   ELCO's Invalidity Grounds

ELCO raises several invalidity grounds based on anticipation or obviousness. ELCO's anticipation arguments fail as a matter of law because ELCO has not identified a single prior art reference that meets the limitations of any claim arranged or combined as claimed.[54]

In addition, ELCO's obviousness arguments are based on a conclusory report from its expert, Eric Bretschneider, whose report did not explain how prior art references would be combined or what problems summarized above, the motivation would have been for these combinations.

---

[52] SUF 162, 165-166.

[53] SUF 127-130.

[54] *See* generally SUF 94-167

Dr. Bretschneider's opinions regarding a motivation to combine references fail to create a triable fact issue regarding obviousness.  One example of this is Dr. Bretschneider's opinion that a motivation to combine exists to modify the Kim reference and install it in a junction box because the "growing demand for energy efficient lighting devices would motivate a POSITA to modify Kim for installation in a junction box for use in a variety of in-demand installations and applications."[55] This generic argument is similar to an expert opinion that the Federal Circuit found insufficient in *ActiveVideo,* where the expert opined:

> The motivation to combine would be because you wanted to build something better. You wanted a system that was more efficient, cheaper, or you wanted a system that had more features, makes it more attractive to your customers, because by combining these two things you could do something new that hadn't been able to do before.[56]

Such generic opinions bear no relation to any specific combination of prior art elements and fail to explain why a person of ordinary skill in the art would have combined elements from specific references in the way the claimed invention does.[57]

To the extent that Dr. Bretschneider provided any detail regarding a combination of references, it was to explain why he proposed modifying the Imtra low voltage boat light with the teachings of the Gifford patent.[58] Dr. Bretschneider admitted during his deposition that by combining Gifford with Imtra, his "modified Imtra would be connected directly to the junction box with no structure in between."[59]  And he agreed that "when you install the …modified Imtra product, when you're attaching it or removing it, the high voltage electrical power inside the

---

[55] Davidson Ex. 491 at 80, ¶167.

[56] *ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 694 F.3d 1312, 1327-28 (Fed. Cir. 2012).

[57] *Id.*

[58] Davidson Ex. 491 at 78-79.

[59] Davidson Ex. 311 (January 21, 2020 Bretschneider Tr.) at 164.

junction box would be exposed to the person changing out that light fixture."[60]

There is no genuine dispute that the objective of Gifford and its disclosure of an adaptor plate is to prevent the very risk of electrical shock that would exist with Dr. Bretschneider's modified Imtra, which he claims to have based on the teachings of Gifford.[61]  Dr. Bretschneider also testified that the actual goal of lighting designers is not just to reduce, but to eliminate the risk of electric shock.[62]  Contrary to the teachings of Gifford itself, however, Dr. Bretschneider has used Gifford to remove the plate that serves to reduce the risk of shock, to propose a hindsight reconstruction of the patented invention.

Dr. Bretshneider also formed his opinion without considering the significant objective evidence of non-obviousness, including industry praise and copying by ELCO.  Awards that DMF has received because of the DRD2 include the IES Progress Report award in 2016, in which the Illuminating Engineering Society (IES) selected DMF's recessed lighting system based on "an impartial judging process used by the committee to evaluate each submission on its uniqueness, innovation and significance of the lighting industry."[63]  DMF's OneFrame system with the DRD2 inserted into a hanger junction box was selected based on benefits of the '266 Patent invention because, "[w]ith this unique design there's no need for costly fire-boxing, eliminating the need to involve other trades for installation, reducing construction time, materials and cost."[64]  That award recognized one of the benefits that the applicant explained to the patent examiners who issued the '266 Patent, i.e., the inventor's "assembly mitigates the labor-intensive construction of separate fire-

---

[60] Davidson Ex. 311 at 164.

[61] SUF128.

[62] Davidson Ex. 311 at 252.

[63] SUF168-170.

[64] *Id.*

boxes (i.e., wood frames with one or more layers of fire-rated drywall) for each

recessed lighting fixture ...."[65]

ELCO recognized the value of the invention as well.  It ███████████
████████████████████████████████████████████████████████████
██████████████████████████████"[66] ████████████████████████████
████████████████████████████████████████████████████████████

███████████████████████.[67]  The copying was so complete that ECO's Product

Manager could only identify a few trivial differences between the products and

admitted that ████████████████████████████████████████████████

████████████████████████.[68]  ELCO's blatant copying is manifest based on a

comparison of the products' outside appearance and internal arrangement of

components.[69]

ELCO's copying was noted by the Court in its preliminary injunction order,

which included a comparison of the '266 Patent's preferred embodiment, DMF's

DRD2 Module, and ELCO's ELL Module.[70]  ELCO's expert, however, did not

mention or consider objective evidence of nonobviousness when he submitted his

report on invalidity, including industry praise for DMF's DRD2 product that

practices the patented invention and ELCO's copying of the product.[71]  Instead of

considering this evidence to guide against hindsight analysis, Dr. Bretschneider

embraced hindsight by impermissibly using the patent as a roadmap to identify

---

[65] *Id.*
[66] SUF176.
[67] SUF187.
[68] SUF188..
[69] SUF195; Benya Dec., p. 80.
[70] Dkt. 147 at 4.
[71] Benya Decl., ¶365.

pieces of prior art and repurposing them to do what the inventor had done.[72]  Having

failed to consider real-world evidence that is "often be the most probative and cogent

evidence in the record"[73] Dr. Bretschneider's opinions on the issue of obviousness

are unhelpful and unreliable.

The accompanying Statement of Undisputed Facts show that there is no

genuine dispute of material fact that the asserted patent claims are not obvious based

on the asserted prior art and the opinions of ELCO's expert.  *See* SUF 119-167.:

- Ground 1: Anticipation By Imtra Hatteras (SUF 94-100)
- Ground 2: Anticipation by Imtra 2011 (SUF 101-117)
- Ground 3: Obviousness Based on Imtra Hatteras and Imtra 2007 (SUF 119-123)
- Ground 4: Obviousness Based on Imtra 2011 and Imtra 2007 (SUF 124-126)
- Ground 5: Obviousness Based on Imtra 2011, Imtra 2007 and Gifford (SUF 127-143)
- Ground 6: Obviousness Based on Imtra 2011, Imtra 2007, Imtra Hatteras and Gifford (SUF 144)
- Ground 7: Obviousness Based on Kim and Gifford (SUF 145-152)
- Ground 9: Obviousness Based on Kim, Gifford and Chang (SUF 153)
- Ground 10: Obviousness Based on Imtra 2011, Hatteras and Kim (SUF 154-158)
- Ground 11: Obviousness Based on LMH2, Gifford and Imtra (SUF 159-167)

## V.   ELCO's Unclean Hands Defense Fails As A Matter Of Law

ELCO's unclean hands defense is based on a pedantic disagreement about the

right way to describe junction boxes certified by the non-governmental private

company Underwriters Laboratory ("UL").  ELCO alleges that:

> DMF falsely represented that its junction boxes to be used with the
> DRD2 [LED] module were fire rated up to 2 hours under UL Std. 514A,
> and the junction boxes constituted recessed lights, which require
> certification under UL Std. 1598.[74]

---

[72] Davidson Ex. 491, ¶139 ("A [person of ordinary skill in the art] would thus understand that Gifford's adaptor apparatus is equivalent to the casting of the '266 patent.")

[73] *Id.*

[74] Dkt. 235 (Third Amended Answer) at 16:1-4.

ELCO's unclean defense fails based on undisputed facts because:  (1) UL told DMF to use the 2-hr fire rated phrase; (2) *ELCO* used the same phrase to market its knockoff because building codes allowed it; (4) other companies used the same phrase; and (5) DMF junction boxes are "recessed lights" and even certified as such.

Moreover, ELCO's allegations don't support unclean hands because they have no "immediate and necessary relation" to how DMF obtained or enforced its patent.

### A.  Procedural History

ELCO first raised its unclean hands defense in opposing DMF's preliminary injunction motion.[75]  The Court found ELCO's argument "misplaced as it bears no relevance to ELCO's alleged infringement of the '266 Patent."[76]  Later, in response to DMF's motion to dismiss,[77] the Court found that "the sufficiency of defendants' unclean hands defense is better decided on a motion for summary judgment."[78]

### B.  Unclean Hands Standard

Unclean hands is an equitable defense requiring clear and convincing evidence that plaintiff engaged in "unconscionable" conduct that had an "immediate and necessary relation" to the equity that plaintiff seeks.[79]  The defense stems from three Supreme Court cases concerning egregious misconduct in procuring or enforcing a patent.  In *Keystone*, the patentee fabricated and suppressed evidence regarding the validity of its patent—it paid a witness to sign a false affidavit to defeat an invalidity defense using a "cover-up" that led to an injunction being granted before "the corrupt transaction between the patentee and the prior user" was discovered.[80]

---

[75] Dkt. 53-2 at 15-16.  ELCO raised a different unclean hands defense in its original Answer (Dkt. 15 at p. 17) but dismissed it to avoid a motion to dismiss.  *See* Declaration of Ben M. Davidson, Exhibit 481.

[76] Dkt. 147 at 27.

[77] Dkt. 160 at 16-17; Dkt. 168 at 4.

[78] Dkt. 183 at 2.

[79] *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245.

[80] *Keystone*, 290 U.S. at 243.

1

2

3

4

5

6

7

*Hazel-Atlas* similarly involved the patentee falsifying and suppressing evidence on patent validity.[81]  Faced with "insurmountable Patent Office opposition," the patentee's attorneys ghost wrote an article describing the invention as a technological advancement, had a famous expert sign and publish the article in his own name, and submitted the fabricated article to the Patent Office, which issued the patent. Later, when it asserted the patent in an infringement action, the patentee concealed the expert's false authorship and paid him $8,000 to cover up the fraud.[82]

8

9

10

11

12

*Precision Instruments* likewise involved a patentee suppressing evidence of perjury concerning patent validity before the Patent Office.  The perjury involved false dates proving inventorship and false testimony in an interference proceeding that led to the patent issuing.  A company that bought the patent knowing it was "tainted with perjury" was barred by its unclean hands from enforcing the patent.[83]

13

14

15

16

17

18

19

20

21

The egregious conduct and close nexus to the patent right in *Keystone*, *Hazeltine*, and *Precision Instruments* continue to represent what is required to show unclean hands.  For example, the Federal Circuit recently upheld an unclean hands defense because a company patented its competitor's invention after learning about the competitor's files in violation of a "firewall" agreement.[84]  This misconduct fit the requirement that the "'misconduct' of a party seeking relief 'has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation,' *i.e.,* 'for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court.'"[85]

22

23

Misconduct in the abstract, unrelated to the claim to which it is asserted, does not constitute unclean hands because the issue is not whether "the plaintiff's hands

24

25

26

27

28

[81] *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 240-41 (1944).
[82] *Id*.  at 240-41.
[83] *Precision Instr. Mfg v. Automotive Maintenance Mach.*, 324 U.S. 806 (1945).
[84] *Gilead Scis., Inc. v. Merck & Co*., 888 F.3d 1231, 1239 (Fed. Cir. 2018) (quoting *Keystone*, 290 U.S. at 245).
[85] *Id.*

are dirty, but that he dirtied them in acquiring the right he now seeks to assert, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant."[86]  As held in *Keystone*, "courts of equity do not make the quality of suitors the test; [t]hey apply the maxim requiring clean hands only where some **unconscionable act** of one coming for relief has immediate and necessary relation to the equity that he seeks **in respect of the matter in litigation**."[87]

### C.    There Was No *Unconscionable Act*

ELCO cannot establish that DMF engaged in any unconscionable, deceptive advertising because ELCO *itself* used the phrase "certified UL514A up to 2 hr fire rating" when it copied DMF's product.  ELCO *admitted* in its Second Amended Answer that Exhibit 19 of the Complaint is ELCO marketing material promoting the ELCO junction box—a product that ELCO had copied from DMF (DMF and ELCO's junction boxes are shown in the Complaint images below):[88]



**DMF Hanger Junction Box**          **ELCO Hanger Junction Box**
**(from DMF's marketing materials)**   **(from ELCO's marketing materials)**

That ELCO marketing material used the same phrase "**Metallic outlet box certified UL514A up to 2 hour fire rating**"[89] that DMF used for its UL514A-certified box.

---

[86] *Id.*

[87] *Keystone*, 290 U.S. at 245 (emphasis added).

[88] Complaint (Dkt. 1) at ¶¶82, 83, Exs. 19 and 20; Second Amended Answer (Dkt. 160) at ¶83. *Id.  See also* SUF198-SUF223; SUF246; SUF247.

[89] SUF202; SUF203; SUF206; SUF207. SUF203..

This was industry short-hand for a product that *maintains* a ceiling's fire-rating.[90]
Fire-rated ceilings are made of material that slows down how fast a fire can pass
through a ceiling to the room above it.  If a hole is cut into a fire-rated ceiling, a fire
in the room below can spread through that hole.  Metallic boxes commonly called
"fire-rated" allow an **already fire-rated ceiling** to maintain its rating.[91]

ELCO cannot distinguish its own use of the UL514A standard from DMF's
because it withheld documents on the issue.[92]  The parties jointly filed a motion on
ELCO's "object[ion] to producing information regarding its understanding that its
metallic junction box housings complied with UL Standards 514A and 1598 [and
on] ELCO's position … that its own use and understanding of these standards is not
relevant to ELCO's unclean hands defense based on these same UL Standards."[93]
Magistrate Judge Standish ordered ELCO to produce these documents,[94] explaining,
"[y]ou can't accuse somebody of having 'unclean hands'  and expect to be able to
insulate yourself from discovery."[95]  But ELCO did just that.  Despite the Order,
ELCO failed to produce the requested documents.[96]  Under Rule 37, ELCO should
not be permitted to distinguish its own understanding of the phrase from DMF's.[97]

Even the limited discovery that DMF was able to take established that DMF
used its UL certification appropriately.

---

[90] SUF209; SUF244..
[91] Danesh Decl., ¶¶8-9.
[92] Davidson Decl., ¶¶76-78.
[93] Davidson Decl., Ex. 482 (joint email motion to Magistrate Judge Standish).
[94] Dkt. 286 ("information sought related to 'UL Standards' is relevant and also must be provided.")
[95] Davidson Decl., Ex. 483 (10/16/2019 hearing transcript at 6-7).
[96] Davidson Decl., ¶¶76-78.
[97] Fed.R.Civ.P. 37(b)(a)(2) (permitting Court to issue order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence.")

1

2

3

4

5

6 [101]

7       These undisputed facts are consistent with the testimony of DMF's Chief

8  Operating Officer:  (1) UL certified DMF's product under its 514A standard; (2) that

9  514A standard came with UL guidance permitting **"USE IN FIRE-RATED**

10 **ASSEMBLIES"** in **"walls with ratings not exceeding 2h[ours]"**; and (3) UL itself

11 approved DMF's marketing language in June 2016.[102]  DMF continued using this

12 language for two years, when, shortly before the filing of this lawsuit, UL changed

13 its fire rating guidance, after which DMF clarified that "Metallic outlet boxes with

14 metallic or nonmetallic cover plates may be used in floor-ceiling and roof-ceiling

15 assemblies with ratings not exceeding 2 hours."[103]

16

17                                                   . [104]  That is,

18 contrary to ELCO's admitted theory, DMF did not mislead the industry into

19 believing "that its OneFrame system could be installed *in any ceiling*"[105] or "even

20

21

22       [98] SUF210.

23       [99] SUF211.

24       [100] SUF211.

25       [101] SUF208. Danesh Decl., ¶¶5, 10-20.

       [102] SUF328; Danesh Dec. ¶4.

26       [103]Danesh Dec. ¶20.

27       [104]*Id.*.

       [105] Dkt. 53-2 at 3:2-5 (preliminary injunction opposition); Dtk. 170-2, Ex. 1, p. 4
28 (email to ELCO's counsel confirming ELCO's theory of deceptive conduct).

one made out of card board."[106]  In addition, contrary to ELCO's allegation, DMF did not retire its junction box in response to ELCO's preliminary injunction opposition.[107]

ELCO is also wrong in alleging that DMF had no right to call its junction boxes "recessed lights" because it lacked "certification under UL Std. 1598." These junction boxes are recessed lights because they are recessed behind a ceiling and, , though not necessary, are certified by UL under its 1598 standard.[108]

In sum, the record here does not come close to supporting that DMF committed an unconscionable act akin to procuring its patent by bribing witnesses to lie, suppressing patent validity information, or falsifying affidavits.

### D.    DMF's Marketing Phrases Have No "Immediate And Necessary Relation" To How It Obtained Or Enforced The '266 Patent.

ELCO's allegations also fail as a matter of law because they lack an "immediate and necessary" relation to the equity that it seeks in respect of the matter in litigation.  Unclean hands in patent cases typically arise only where there has been serious misconduct related to procurement or enforcement of the patent.[109] Allegations about deceptive marketing by the patentee lack the required close nexus to how the patent was obtained.  In *Gabapentin*,[110] for example, defendants alleged unclean hands based on the patentee's scheme to "aggressively and illegally promote [the drug] Neurontin for a variety of unapproved uses, without seeking FDA approval, in order to inflate market share and profits."  Up to 94% of the patentee's

---

[106] Davidson Decl., Ex. A (meet and confer letter) at 4; Dkt. 53-2 (preliminary injunction opposition) at 15 (""DMF essentially represented that its OneFrame system could be installed *in any ceiling*, when in fact those components must be installed in a fire-rated ceiling to pass fire resistance requirements.")(emphasis added).

[107] SUF 226.

[108] SUF 245.

[109] *In re Gabapentin Patent Litig.*, 648 F. Supp. 2d 641, 650-51 (D.N.J. 2009) (collecting and summarizing cases).

[110] *Id.*

sales were from illegal, off-label uses, creating an illegally acquired market share that the patentee continued to exploit.[111]  Even assuming as true the serious *criminal* allegations, the court struck the defense because that misconduct did not give rise to or affect the patent rights that the patent owner was seeking to enforce.  Similarly, in *CIBA-Geigy*, mislabeling of a drug and sales of adulterated drug batches were too attenuated from plaintiff's trademark claims to support an unclean hands defense.[112]

Here, as in these cases, unclean hands is not a valid defense because the phrases used by DMF has no nexus to how it obtained or enforced its patent.

### E.    ELCO's Allegations Provide No Defense To Its Trademark Infringement And Unfair Competition

The Court also should dismiss ELCO's unexplained pursuit of unclean hands as a defense to trademark and unfair competition.  DMF alleges that ELCO created a likelihood of confusion by copying DMF's trims sold under the OneLED and OneFrame marks and selling them under the name UNO.[113]  ELCO has not even alleged let alone shown that DMF obtained its marks through fraud or that it used them to deceive consumers. This is fatal to ELCO's defense because the Ninth Circuit has significantly narrowed the unclean hands defense[114] and requires proof that the "plaintiff used the trademark to deceive consumers."[115]  Where, as here, the alleged misconduct did not have an "immediate and necessary relation" to the manner in which the plaintiff acquired its rights, the defense is unavailable.[116]  Thus,

---

[111] *Id*. at 648-49.

[112] *CIBA-Geigy Corp. v. Bolar Pharm. Co.*, 747 F.2d 844, 855 (3d Cir. 1984).

[113] Dkt. 1 at 42-49.

[114] *2die4kourt v. Hillair Capital Mgmt., LLC*, No. SACV 16-01304 JVS(DFMx), 2016 U.S. Dist. LEXIS 118211, at *25 (C.D. Cal. Aug. 23, 2016)(citing *See Cochran Firm, P.C. v. Cochran Firm L.A. LLP*, 641 Fed. Appx. 749, 751 (9th Cir. 2016) (unpublished)).

[115] *Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1177 (9th Cir. 2007).

[116] *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 932-33 (9th Cir. 2014).  *See also Abbott Labs. v. Adelphia Supply United States*, No. 15-CV-5826 (CBA) (LB), 2019 U.S. Dist. LEXIS 194268, at *64 (E.D.N.Y. Sep. 27, 2019)("In trademark infringement suits, courts typically require that the unconscionable conduct relate to the plaintiff's acquisition of the trademark rights at issue.")

in *Fuddruckers*, the Ninth Circuit held that a hamburger chain could protect its trade dress from infringement notwithstanding its alleged deceptive advertising of its hamburgers as "ground steak" because that was not a material element of the hamburger chain's trade dress and was not "fraud or deceit *as to the controversy in issue*."[117]  Likewise, here, alleged inaccuracies in describing a junction box do not make DMF's trademark claims unenforceable.

Dated: February 3, 2020                    Respectfully submitted,

                                           by: /s/ David W. Long
                                           David W. Long (admitted *pro hac vice*)
                                           ERGONIQ LLC

                                           Ben M. Davidson (Cal. Bar 181464)
                                           DAVIDSON LAW GROUP, *ALC*
                                           *Attorneys for Plaintiff DMF, Inc.*

---

[117] *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987)(emphasis added).