O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DMF, Inc., | No. 2:18-cv-07090-CAS-GJSx |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| – v. – | **ORDER RE MOTION TO STRIKE (DKT. 722)** |
| AMP Plus, Inc. d/b/a ELCO Lighting, and ELCO Lighting Inc., | |
| Defendants. | |

## I.      INTRODUCTION

The issue of willfulness was tried to the Court on October 24 and October 25, 2023. Attorneys Ben M. Davidson of Davidson Law Group and David Long of Ergoniq appeared on behalf of plaintiff DMF, Inc. ("DMF"). Attorneys Guy Ruttenberg and Kevin Neal of Ruttenberg IP Law appeared on behalf of defendants AMP Plus, Inc. d/b/a ELCO LIGHTING and ELCO Lighting, Inc ("ELCO"). For purposes of the trial, based on stipulation of the parties, the Court assumed infringement and validity. Thus, the sole issue tried before the Court is whether ELCO's infringement of DMF's patent was willful. Based on the evidence and testimony presented at trial, the Court makes the

following findings of fact and conclusions of law. To the extent any finding of fact is better characterized as a conclusion of law, or vice versa, it shall be so characterized.

## II.   JURISDICTION AND VENUE

1.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because these claims arise under the federal patent laws. 35 U.S.C. §§ 271, 281; 28 U.S.C. § 1338(a).

2.   The Court has personal jurisdiction over the parties and venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 1400(b), because Defendant resides in this District and maintains a regular and established place of business in this district.

## III.   FINDINGS OF FACT

### A.   Background

3.   DMF filed an action for patent infringement, among other claims, against ELCO on August 15, 2018. Dkt. 1. DMF alleges that ELCO infringes U.S. Patent No. 9,964,266 (the "'266 Patent"), which discloses a "Unified Driver and Light Source Assembly For Recessed Lighting." Id. at 1. The '266 Patent claims priority to a provisional patent application filed on July 6, 2013. Id. ¶ 20. The '266 Patent issued on May 8, 2018. Id. ¶ 23. DMF states that the LED Module claimed in '266 Patent was designed with "a low-profile heat conducting casting that could both house LED components and significantly dissipate heat from the LED light source, rather than stacking a conventional heatsink on top of a separate component housing." Id. ¶ 16. Further, the claimed LED Module "could fit in traditional 'cans' or other lighting fixtures, but also was small enough to fit into standard junction boxes without using a separate firebox, 'can' or lighting fixture." Id. DMF's flagship products, which practice the '266 Patent, are the DRD2 LED Module products. Id. ¶ 28.

4.   In March 2019, the Court issued a preliminary injunction enjoining ELCO from making, using, selling, or offering to sell "both the original version and the

modified versions of ELCO's ELL LED Modules." Dkt. 147 at 13. The parties agree that the Court's preliminary injunction remains in effect. Dkt. 341 at 4.

5.      In May 2019, ELCO filed an IPR petition seeking review of the '266 Patent before the PTAB. See Dkt. 244-2. The PTAB instituted the IPR in November 2019. Dkt. 325-2. In November 2020, the PTAB found Claim 17 unpatentable and Claims 1, 2, 4–11, 13–16, 19, 21, 22, 25, 26, and 28–30 not unpatentable. Id. The Federal Circuit affirmed the PTAB's decision except for vacating and remanding the decision that ELCO had not shown that Claim 22 was unpatentable. See AMP Plus, Inc. v. DMF, Inc., No. 2021-1595, 2022 WL 16844516, at *12 (Fed. Cir. Nov. 10, 2022). On remand, the PTAB held that ELCO failed to prove that Claim 22 was unpatentable. See AMP Plus, Inc. v. DMF, Inc., No. IPR2019-01094, 2023 WL 6811241 (P.T.A.B. Mar. 27, 2023). DMF has appealed that decision.

6.      Related to the issue presented at the bench trial, on June 20, 2023, ELCO filed a motion for judgment on the pleadings to dismiss DMF's willful infringement claim. Dkt. 614. On August 11, 2023, this Court denied ELCO's motion. Dkt. 651.

7.      Based on the importance of the willfulness issue to the parties, and considering that the Court, not the jury, makes an ultimate determination regarding the relevance of willfulness (e.g., enhanced damages, exceptional case), the parties agreed that a more efficient use of resources was to try willfulness to the Court, assuming for purposes of trial only infringement and validity. The Court agreed to preside over a willfulness bench trial so the parties could consider the resulting findings of fact and conclusions of law in renewing settlement discussions. See Dkt. 675. Thus, the parties stipulated to a bench trial before the Court on the issue of willfulness. Dkts. 687, 688.

8.      On October 24, 2023, the matter came before this Court for a two-day bench trial concerning willfulness. The parties called as witnesses Chip Israel, Benjamin Ardestani, Brandon Cohen, Steve Cohen, James Benya, and Michael Danesh. Dkt. 696;

see also Dkt. 712 (Benya Declaration).[1] Additionally, the Court received deposition testimony of Richard Nguyen, James Keenley, and Michael Danesh in his capacity as a 30(b)(6) witness. Dkt. 696; see also Dkts. 707, 713, 714, 715, 725.

9.      After trial, DMF lodged deposition transcripts relating to assertions of privilege by Eric Kelly, who was not called at trial. See Dkt. 726. ELCO also filed requests for judicial notice. Dkts. 705, 712.[2]

10.     After trial, the parties filed closing briefs and responsive closing briefs. See Dkts. 720, 721, 727, 728.

11.     The witnesses who were called at trial, the depositions of the foregoing witnesses, and the exhibits that were offered, admitted into evidence, and considered by the Court are identified in the witness and exhibit lists filed on October 20 and October 23, 2023. Dkts. 696, 701, 704; see also Dkt. 719 (list of exhibits and witnesses at trial), Dkt. 724 (request for admission of trial exhibits).[3] The parties also filed the demonstratives used at trial. Dkts. 710, 730.

---

[1] The Court **GRANTS** ELCO's request to take judicial notice of the Benya Declaration. Dkt. 712. The Benya Declaration from the IPR is consistent with his expert report in this case. Considering that the Court allowed DMF to present two experts who purported to discuss copying, to the extent these issues are relevant to willfulness as discussed fully in this order, the Court considers the Benya Declaration.

[2] The Court will provide via separate minute order its time calculations, including for the deposition designations that were read after trial. As previously stated, the total time for the bench trial will be subtracted from the parties' overall trial time of 8-10 hours per side should the parties be unable to settle the remaining aspects of the case. No party will be permitted to make a request to reconsider this ruling as the time limits were made clear to the parties before, during, and after trial.

[3] The Court **GRANTS** DMF's request for admission of trial exhibits. Dkt. 724. As stated, "We will keep the record open until you agree upon exhibits or I rule on exhibits, but just assume that I'm going to allow the exhibits to be received subject to your objections to be consistent throughout." TR2 189:25-190:8, 248:23-249:2. The Court notes that ELCO made a similar request within a request for judicial notice. Dkt. 705 at 2.

3

### B.    Willfulness Theory and Timeframe

12.    DMF bases its willfulness claim on the allegations that ELCO copied and sold knock-off versions of DMF's DRD2 LED Module products before this suit was filed. Compl. ¶¶ 47-48. DMF also alleges that ELCO copied DMF's DRD2 products to create ELCO products such as ELCO's Model Nos. ELL08xx and ELL11xx ("the ELCO ELL LED Modules"), ELCO's ELL Module using a twist-and-lock mechanism ("ELCO Trim"), or Model No. ELJ4S ("ELCO Hanger Junction Box"). Id. ¶¶ 58, 79, 83, 89. DMF alleges that ELCO copied the DRD2 products via: tradeshow exhibits; DMF's website, the published patent application, and the '266 Patent itself. Id. ¶¶ 49-53.

13.    DMF avers that this infringement was willful because (1) ELCO was aware of the '266 Patent by at least the date it received DMF's cease-and-desist letter on August 3, 2018, and ought to have been aware of the '266 Patent since its issuance on May 8, 2018; and (2) ELCO copied DMF's DRD2 LED Module knowing that DMF was seeking patent protection on the technology based on ELCO's own patent application activity, prior art searches by ELCO, or prior art identified by the USPTO to ELCO. Id. ¶¶ 134-39. Based on its willfulness allegations, DMF is seeking treble damages under 35 U.S.C. § 284. Id. ¶ 139.

14.    In view of this theory, the Court provides a timeline as a background reference to illustrate the events surrounding when the patent application was filed, when the patent issued, when DMF provided notice, and when ELCO began selling the accused products.

- February 9, 2014: applicant files patent application. Tr. Ex. 1 (noting priority date).
- July 15, 2015: PTO rejects claims. Tr. Ex. 635 at 37.
- January 20, 2016: applicant amends Claims 1-13, cancels Claims 14-15, and adds Claims 16-31. Id. at 68.
- April 27, 2016: PTO issues final rejection. Id. at 73.

- July 26, 2016: applicant amends Claim 10-13, withdraws other claims, and requests continuing examination. Id. at 92.
- April 17, 2017: applicant amends all claims. Id. at 133.
- July 26, 2017: PTO issues final rejection. Id. at 142.
- August 18, 2017: ELCO introduces its product to market.
- October 4, 2017: applicant requests interview with examiner. Id. at 172.
- October 26, 2017: applicant amends/cancels claims and adds new claims. Id. at 188.
- November 9, 2017: applicant requests reconsideration based on amendments. Id. at 194.
- November 16, 2017: examiner rejects proposed amendments. Id. at 190.
- December 6, 2017: applicant submits after-final consideration request. Id. at 225.
- December 29, 2017: applicant and examiner conduct interview. Id. at 277.
- January 5, 2018: examiner rejects amendments. Id. at 225.
- January 16, 2018: applicant files second request for continued examination. Id. at 230.
- January 24 & 26, 2018: applicant and examiner conduct interviews. Id. at 252.
- February 6, 2018: applicant files supplemental amendments. Id. at 258.
- March 6, 2018: examiner proposes new amendments. Id. at 280.
- March 26, 2018: notice of allowance issues. Id. at 272.
- May 8, 2018: patent issues. Id. at 288.
- August 3, 2018: DMF sends ELCO C&D letter. Tr. Ex. 159.
- August 10, 2018: ELCO confirms receipt of C&D letter. Tr. Ex. 789.
- August 15, 2018: DMF files suit. Dkt. 1.

### C.    Legal Standard

15.    To prove willful infringement, a plaintiff must show by a preponderance of the evidence that an infringer has engaged in conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrong, flagrant, or... characteristic of a pirate." Halo Elecs., Inc. v. Pulse Elecs., Inc., 579 U.S. 93, 103-104 (2016).

16.    Willfulness "must necessarily be grounded exclusively in the accused infringer's prefiling conduct." Soteria Encryption, LLC v. Lenovo United States, Inc., No. CV 16-7958-GW(JPRx), 2017 WL 3449058, at *3 (C.D. Cal. Feb. 27, 2017) (emphasis added); see also Finjan, Inc. v. Cisco Sys. Inc., No. 17-CV-00072-BLF, 2017 WL 2462423, at *4 (N.D. Cal. June 7, 2017) (lack of pre-suit "knowledge of the patents is fatal to [a] willfulness claim") (collecting similar cases).

16.    Knowledge of the asserted patent is required for a finding of willfulness. Bayer Healthcare LLC v. Baxalta Inc., 989 F.3d 964, 988 (Fed. Cir. 2021); see also VLSI Tech. LLC v. Intel Corp., No. CV 18-966-CFC, 2019 WL 1349468, at *1 (D. Del. Mar. 26, 2019) (willfulness requires "that [the accused infringer] knew about the asserted patents and that [the accused infringer] knew or should have known that its conduct amounted to infringement of those patents.").

17.    Further, "[t]o establish willfulness, a patentee must show that the accused infringer had a specific intent to infringe at the time of the challenged conduct." BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org., 28 F.4th 1247, 1274 (Fed. Cir. 2022) (citation omitted)).

18.    Whether an alleged infringer willfully infringed a patent turns on an analysis of the totality of circumstances. Liquid Dyns. Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1225 (Fed. Cir. 2006).

19.    While there is no "rigid formula" for analyzing willfulness, the Read factors, which are normally used to analyze whether to award enhanced damages, provide a useful framework for considering whether infringement rises to the level of

willfulness. <u>Apple Inc. v. Samsung Elecs. Co., Ltd.</u>, 258 F. Supp. 3d 1013, 1030 (N.D. Cal. June 23, 2017) (citing <u>Read Corp v. Portec, Inc.</u>, 970 F.2d 816, 827 (Fed. Cir. 1992)); <u>see also Finjan, Inc. v. Blue Coat Syss., Inc.</u>, 2016 WL 3880774, at *16 (N.D. Cal. July 18, 2016) (using <u>Read</u> factors to guide willfulness analysis).

20.     The <u>Read</u> factors consider: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of the defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct. <u>Read</u>, 970 F.2d at 827.

21.     In conducting this analysis, the Court considers that conduct amounting to willfulness is reserved for egregious infringement behavior. <u>Halo</u>, 579 U.S. at 103.

### D.     Objections to Evidence and Testimony

22.     Before, during, and after trial, the parties have raised voluminous objections to testimony and evidence proposed and presented. During trial, the Court generally received all of the evidence and reserved its rulings on admissibility until issuing its findings. Because the objections are voluminous, the Court declines to rule on them one-by-one. Instead, where the Court expressly relies on evidence to which a party has objected, that objection is overruled. The Court has provided explanations for select rulings where it is helpful to understand a finding. For the most part, it is unnecessary to provide individual rulings on objections because many objections relate to irrelevant evidence. The Court does not exclude that evidence, but instead gives it little weight. It is also unnecessary because, unless otherwise expressly noted, admitting evidence to which an objection was pending is not outcome determinative of any finding of fact in this order.

23.     The Court provides a ruling on the overall objection to exclude Benya's expert testimony as irrelevant and under Rule 37(c). Although DMF's examination of Benya far exceeded that allowed by the Third Order, Dkt. 662 at 6-7, the Court will admit that testimony nonetheless as it relates to copying only. That is, the Court assumed infringement for the purposes of this bench trial and does not consider Benya's testimony to have any weight insofar as it relates to infringement.

### E.     Findings of Fact Relevant to Copying

24.     In 2014, ELCO became aware of DMF's DRD2 product. TR1 88:10-12. In 2015, ELCO obtained a sample of the DRD2 product for review. Id. at 88:23-89:3. ELCO's engineering team sent samples of the DRD2 to manufacturers to see if the manufacturers could make a product like the DRD2 for ELCO. Id. at 89:4-18. In an email to its overseas manufacturer, ELCO described wanting to copy the DRD2 "exactly." TR2 88:13-17. Before sending the DRD2 to its manufacturer, ELCO removed DMF's name from the products. TR1 91:15-19. In manufacturing its own version of the DRD2 product, ELCO called it the ELCO DRD2. Id. at 93:3-7. However, ELCO changed the product name as the unit was being developed. Id. at 119:3-7.

25.     There is no question that ELCO copied DFM's DRD2 product. During trial, the Court heard testimony regarding whether and to what extent the ELCO modules are copies of the DRD2. DMF's lighting expert, Israel, testified that the DMF and ELCO modules were "identical" and "interchangeable" when installed. Id. at 36:15-22, 47:8-14. A former ELCO engineer, Nguyen, could not tell the difference between the two modules when presented with them at deposition. Nguyen Tr. at 208-214.[4] However, current ELCO engineer, Ardestani, described multiple differences between ELL module and DRD2, including different LEDs, changing of potting, an aluminum rather than plastic reflector, lack of grounding wire, different housing units, higher energy

---

[4] ELCO's objection, Nguyen Tr. 210:8-13, is overruled. The follow-up questions demonstrate that the witness was able to view the sides of the products. See TR1 83:6-11.

efficiency, and a higher lumen output. TR1 119:15-120:17, 121:24-124:12. Overall, the testimony supports a finding that ELCO copied DMF's DRD2 product when it decided to produce its own similar product.

### E. Facts Relevant to Pre-Suit Notice State of Mind

26.    In connection with their product development process, starting in December 2015, multiple ELCO employees – including Ardestani and Brandon Cohen – searched for patents covering the DRD2 module. Id. at 109:11-110:3, 170:6-24. ELCO employees did not find the pending application. On August 18, 2017, ELCO began selling its product.

27.    On May 8, 2018, after multiple rounds of office actions and a final rejection, the '266 Patent issued.[5] Id. at 197:23-198:4; see also Tr. Ex. 1.

28.    On August 3, 2018, DMF sent a cease-and-desist letter to ELCO. Tr. Ex. 159.

29.    On August 10, 2018, ELCO sent an email acknowledging receipt of the letter and stating they would retain legal counsel to respond. Tr. Ex. 1249.

30.    On August 18, 2018, DMF sued ELCO. Dkt. 1.

30.    ELCO changed its design "immediately" upon receiving the cease-and-desist letter and stopped selling what it believed DMF identified as an infringing version. TR2 47:22-48:1. However, ELCO continued to sell-off the initial version through September 2018. Id. at 73:20-74:4.[6]

---

[5] The Court overrules DMF's objection to the file history. See TR2 197:14-17. The Court can properly take judicial notice of the file history. See, e.g., Uniloc USA, Inc. v. ADP, LLC, Fed. Appx., 2019 WL 2245938, *5 n.3 (Fed. Cir. 2019); Fed. R. Evid. 201. The Court notes that DMF also relies on the file history. See, e.g., Dkt. 720 at 1 & n.6. This ruling notwithstanding, the Court gives the file history little weight in its willfulness analysis because there is no evidence ELCO relied on it and it does not establish ELCO's state of mind, which is the key question for willfulness. Instead, it helps establish a timeline of when notice and infringement could have begun.

[6] ELCO's objection concerning sales of ELL modules is **OVERRULED**. TR2 102:8-13. Although this document was apparently not on the exhibit list, TR2 102:14-15, the

31.     ELCO executive Brandon Cohen testified credibly that ELCO believed the '266 Patent was invalid over prior art because it "it really described a lot of [prior art] items [he] was familiar with." TR1 188:18-20, 189:18-190:5, 193:19-23; TR2 38:5-20.

32.     ELCO believed that the patent was more similar to the prior art IMTRA product than the ELCO product. TR2 39:17-19; see also Tr. Ex. 1211 (non-privileged communication conveying invalidity beliefs to suppliers). Cohen provided prior art references to counsel and ELCO sent this invalidity contention to DMF on September 21, 2018. TR1 211:15-19, 213:16-20; TR2 31:15-19; Tr. Ex. 164.[7]

## III.     CONCLUSIONS OF LAW

33.     DMF bears the burden of proving willfulness by a preponderance of evidence. Halo, 579 U.S. at 107. Assuming ELCO's infringement of the '266 Patent for purposes of this Order, the Court finds and concludes that DMF has not met its burden in proving that ELCO's infringement was willful.

34.     As an initial matter, ELCO cannot be liable for any willful infringement before the '266 Patent issued. Gustafson, Inc. v. Intersyss. Indus. Prods., Inc., 897 F.2d 508, 510 (Fed. Cir. 1990) ("It is obvious that a party cannot be held liable for 'infringement,' and thus not for 'willful' infringement, of a nonexistent patent").

35.     However, "pre-patent conduct may also be used to support a finding of willfulness." Minnesota Min. and Mfg. v. Johnson & Johnson, 976 F.2d 1559, 1582 (Fed. Cir. 1992). In particular, "[p]re-patent copying of the invention ... is relevant to the

---

witness was able to understand the document concerning the September 5, 2018 shipping date. TR2 103:10-24.

[7] The Court **SUSTAINS-IN-PART** DMF's objection to Ex. 164 and the discussion surrounding that correspondence. TR1 191:14-20. The Court sustains the objection to the extent the exhibit could be viewed as allowing ELCO to point to "[t]he existence of such a defense [to] insulate[] the infringer from enhanced damages, even if he did not act on the basis of the defense or was even aware of it." Halo Elecs., Inc. v. Pulse Elecs., Inc., 579 U.S. 93 (2016). The Court cites Ex. 164 only to provide chronological background and to show Cohen's actions, not to allow ELCO to rely on a later-developed litigation-inspired defense in defense of willfulness.

defendant's state of mind after issuance," and "the fact finder may look at ... pre-issuance copying ... to determine what the accused infringer's state of mind was after issuance and notice of the patent." <u>Pelican Int'l v. Hobie Cat</u>, 2023 WL 2127994, *16-17 (S.D. Cal. Feb. 10, 2023); <u>see also</u> <u>Sonos, Inc. v. D&M Holdings, Inc.</u>, No. 14-1339, 2017 WL 56332204, *3-4 (D. Del. Nov. 21, 2017) (collecting cases of pre-patent conduct and copying supporting willfulness)).

36.    Although pre-patent conduct may be relevant, the Supreme Court has cautioned that it is lawful to copy an unpatented product "slavishly down to the minutest detail." <u>Bonito Boats, Inc. v. Thunder Craft Boats, Inc.</u>, 489 U.S. 141, 157 (1989) (invalidating law restricting "ability to exploit an unpatented design"). Thus, it is the accused infringer's state of mind during copying that is relevant, not simply the act of copying.

37.    The Court will use the <u>Read</u> factors as a helpful guide in its willfulness analysis.

<u>Factor 1</u>:

38.    The first <u>Read</u> factor - ELCO's copying of the patented invention – supports a finding of willfulness. ELCO sent information on the DRD2 to its overseas manufacturer so they could copy it. TR1 135:15-17. ELCO developed its own ELL modules based on this copy, even calling the project the ELCO DRD2 in its early stages. TR1 at 93:3-7.

39.    This supports a finding of willfulness, but the weight of this factor is somewhat diminished because the copying occurred several years before the patent issued. <u>Nox Med. Ehf v. Natus Neurology Inc.</u>, No. CV 15-709-RGA, 2018 WL 4062626, at *4 (D. Del. Aug. 27, 2018), <u>on reconsideration</u>, No. 1:15-CV-00709-RGA, 2018 WL 6427686 (D. Del. Dec. 7, 2018) ("That Defendant's deliberate copying pre-dates the patent does not negate this finding, but does reduce its weight."). DMF did not present evidence linking ELCO's copying years before the patent issued to ELCO's

11

knowledge of the patent (e.g., no evidence suggested that, upon receiving the C&D letter, ELCO acted in such a way that it knew its earlier copies infringed and knew it's continued conduct would be infringing).

40.    Moreover, as ELCO continued to develop its ELL modules, the features started to diverge from the DRD2 module. These differences included different LEDs, changed potting, an aluminum rather than plastic reflector, a lack of grounding wire, different housing units, higher energy efficiency, and a higher lumen output. TR1 119:15-120:17; 121:24-124:12. Although infringement is assumed for purposes of this trial, and the Court does not opine on the impact of these changes, ELCO's decision to make changes may be relevant to its state of mind.

41.    On balance, the changed features do not outweigh the copying that occurred during initial product design, and for the purposes of this order the changes do not defeat infringement. As a result, ELCO's copying of the patent supports a finding of willful infringement.

Factor 2:

42.    The second Read factor – whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed – weighs against a finding of willfulness.  The evidence at trial shows that ELCO learned of the '266 Patent on August 3, 2018, when DMF sent the C&D letter. DMF has not proven that ELCO learned of the patent (or the application) on an earlier date.

43.    The Court heard testimony that multiple ELCO employees conducted searches for patents on the DRD2 module. TR1 109:11-110:3, 170:6-24. The Court finds this testimony credible and does not find that ELCO learned of the patent (or underlying application) before DMF sent the cease-and-desist letter.

44.    Although the parties presented competing testimony on whether any relevant DMF products were marked "patent pending" (e.g., "twist and lock" feature

versus DRD2 module), the Court finds that, given DMF's inconsistent and uncertain marking practices, the quality and quantity of ELCO's patent searches does not support bad faith, even where the searches might have been done more precisely. See TR1 188:8-10; TR2 203:12-25; Ex. 1090A. The Court observes that, even after DMF obtained the '266 Patent, it did not mark the DRD2 product as patented until after this lawsuit was filed. TR2 207:15-208:4.

45.     During the short period between when ELCO learned of the '266 Patent and when DMF filed suit (i.e., 12 days), the Court finds that ELCO's quick determination that the patent was invalid over prior art was not made in bad faith. See TR1 188:18-20; TR2 37:12-38:20, 39:2-10.

46.     This timeline undermines DMF's suggestion that ELCO cannot rely on an invalidity defense because ELCO waived reliance on advice of counsel at trial.[8] Although ELCO undoubtedly formed its belief that the patent was invalid in conjunction with conversations with counsel, the Court acknowledges this belief for purposes of showing ELCO's pre-suit state of mind, not for the truth of the matter asserted (i.e., whether counsel's advice was right). The point is not the specific details ELCO learned from counsel, but rather that, immediately after receiving the letter, ELCO took it seriously and responded.

47.     DMF's C&D letter demanded a response within 7 days, and even after ELCO responded within that timeframe (acknowledging receipt and stating it would obtain counsel to analyze the letter), DMF sued ELCO 8 days later anyway. These events undermine the suggestion that any analysis and beliefs formed by ELCO during this short timeframe had to be bulletproof to avoid a finding of bad faith. Even if ELCO

---

[8] Throughout the trial, the Court cautioned the parties to avoid questioning that would invade advice of counsel or privileged conversations. See, e.g., TR2 211:20-23.

turned out to be wrong (in part) concerning invalidity,[9] DMF gave ELCO very little time to analyze the claims before filing suit.[10]

48.     ELCO could have addressed the issues of infringement, invalidity, and any number of other issues in more detail had DMF not sued ELCO 12 days later, but given the facts presented, the relevant pre-suit notice period of 12 days does not demand perfection.

49.     That Brandon Cohen could not remember details from 2018 or could not speak in terms of patent law as a lay witness does not undermine the series of events that occurred in the short window between the letter and the Complaint.

50.     When willfulness is based on a cease-and-desist letter, the letter should provide sufficient time to respond before suit is filed. Sonos, Inc. v. Google LLC, 591 F. Supp. 3d 638, 644 (N.D. Cal. 2022). Moreover, there is no "universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit." Gustafson, 897 F.2d at 511. Instead, willfulness is found only when an infringer

---

[9] The Court notes that issuance of the patent was quite uncertain in view of multiple rejections; and after this litigation was filed, the PTAB invalidated Claim 17. Although neither point is relevant to prove ELCO's then-existing state of mind (because there is no evidence ELCO knew of the application and rejections, and PTAB proceedings occurred much later than the relevant pre-suit notice period), these facts may support the conclusion that ELCO did not act in a reckless manner when it decided to not immediately stop selling its products upon receiving the C&D letter. The Court relies on ELCO's actions, however, not these external developments.

[10] The Court notes that ELCO sent a more fulsome response on September 21, 2018. Tr. Ex. 164. This response is outside the pre-suit notice period. But since it was sent so close in time to when the suit was filed, it may be illustrative of ELCO's then-existing state of mind at the approximate time. Even if the Court ignores this response entirely, either because it was sent after the suit was filed or because it relies on advice of counsel, the Court would find that nothing in the record supports a finding of willful conduct during the pre-suit notice period from August 3, 2018 to August 18, 2018. Thus, this factor weighs against a finding of willfulness.

14

proceeds with "no doubts about [the] validity" or infringement of the patent. <u>Halo</u>, 579 U.S. at 104.

51.     DMF bookended the relevant pre-suit notice timeframe by deciding when to send the letter and when to file suit. DMF is bound by that choice in this analysis.

<u>Third Factor</u>:

52.     The third <u>Read</u> factor – the infringer's behavior as a party to the litigation – is neutral because it does not provide any insight into ELCO's pre-suit state of mind concerning willfulness. Even if the Court considered it, no evidence presented at trial suggests that ELCO engaged in litigation misconduct supporting willfulness.

<u>Fourth Factor</u>:

53.     The fourth <u>Read</u> factor – defendant's size and financial condition – is neutral because it does not provide any insight into ELCO's pre-suit state of mind as to willfulness.[11] Even if the Court considered it, no evidence was presented at trial suggesting that ELCO's size and financial condition has any relevance.

<u>Fifth Factor</u>:

54.     The fifth <u>Read</u> factor – closeness of the case – cannot be analyzed given the posture of the bench trial. It would be difficult to weigh the closeness of the case without making findings on the merits regarding infringement and validity, which have been assumed for the purposes of this trial.

55.     At best, in an overarching sense, this factor is neutral. Each party has had some successes in its favor. DMF was granted a preliminary injunction, which required a showing of likelihood of success on the merits of its infringement claim, including for the redesigned products. Dkt. 147; <u>see</u> <u>Am. Trucking Ass'n, Inc. v. City of Los Angeles</u>,

---

[11] This factor is more relevant in the enhanced damages context after willfulness is found. For example, if the Court found willfulness and ELCO's ability to function would be severely impaired by enhanced damages, this factor may way against such an award. <u>See</u> <u>EagleView Techs., Inc. v. Xactware Sols., Inc.</u>, 522 F.Supp.3d 40, 51 (D.N.J. Feb. 16, 2021).

559 F.3d 1046, 1052 (9th Cir. 2009). However, ELCO succeeded at invalidating one of the claims of the '266 Patent before the PTAB. Dkt. 325-2. Thus, to the extent the Court may consider this <u>Read</u> factor to inform willfulness, it is neutral.

Sixth Factor:

56.     The sixth <u>Read</u> factor – the duration of defendant's misconduct – weighs against willfulness. As stated, the '266 Patent issued on May 8, 2018. Tr. Ex. 1. DMF sent the cease-and-desist letter to ELCO on August 3, 2018. Tr. Ex. 159. The parties offered some competing evidence as to the precise day ELCO received the letter, but the earliest date is August 3, 2018. TR1, 15:23-16:4. The Court adopts this date, but finds no evidence that ELCO knew of the patent before then. TR2 203:18-22.

57.     Although ELCO continued selling its ELL Modules until at a minimum September 5, 2018, and the redesigned models until the preliminary injunction issued in March 2019, the willfulness allegations in this case are based on pre-suit conduct and nothing in the 12-day pre-suit notice period suggests willfulness.[12] TR2 103:10-24; <u>see also</u> <u>States Induss., Inc. v. A.O. Smith Corp.</u>, 751 F.2d 1226, 1236.

Seventh Factor:

58.     The seventh <u>Read</u> factor – remedial action by the defendant – weighs slightly against willfulness. ELCO took remedial action after receiving the cease-and-desist letter from DMF by "immediately" changing its design based on the specific infringement allegations and proposed claim construction in the letter. TR1 at 127:19-128:1; TR2 47:22-48:1; Tr. Ex. 1279 at 2.

59.     On balance, ELCO's pre-suit notice conduct suggests an intent to remediate any infringement, not exacerbate it or act in bad faith. Even if the Court considers post-suit conduct and assumes ELCO was wrong that its redesigns do not infringe, the

---

[12] The Complaint alleges willfulness based on pre-suit conduct only. DMF did not amend its allegations or disclose a new theory as to post-suit conduct bolstering the alleged pre-suit conduct. <u>See</u> Dkt. 1; Dkt. 703-3; Tr. Ex. 1615 at 22-23. In any event, the evidence presented at trial does not support a finding of post-suit willfulness.

Court's order stopped the infringement, rendering the infringement period fairly short. Dkt. 147 at 13.

Eighth Factor:

60.     The eighth <u>Read</u> factor – motivation to harm – weighs slightly in favor of willfulness. DMF presented evidence that ELCO was motivated to copy the DRD2 module to keep from going out of business, and presented evidence that the future of ELCO's LED light fixture business was uncertain. TR1 87; TR2 85:8-20; Tr. Ex. 213.

61.     This evidence supports an inference that ELCO could have preferred taking a risk of infringement to save its business. <u>See</u> <u>Polar Eng., Inc. v. Campbell Co.</u>, 237 F. Supp. 3d 956, 993-994 (C.D. Cal. Feb. 27, 2017). Although DMF presented significant evidence that ELCO copied, the circumstantial evidence suggesting that DMF might have gone out of business is less persuasive so this factor is not weighed heavily.

62.     DMF contends that ELCO copied the DRD2 technology "knowing the high risk it would be patented." Dkt. 720 at 1. Setting aside the fact that DMF has not proven that ELCO knew or should have known of the patent application, DMF provides no authority for the proposition that willfulness encompasses something that might be patented in the future.

63.     For example, DMF relies on <u>K-Tec v. Vita-Mix</u>, 696 F.3d 1364, 1378 (Fed. Cir. 2012), but in that case, the Federal Circuit considered copying of products protected by issued patents that the accused infringer knew about during prosecution, not products that were copied years before a patent issued. Unlike in this case, in <u>K-Tec</u>, the patentee notified the accused infringer that the relevant patent "would soon issue" and that the accused product "would infringe that patent." <u>Id.</u> at 1370. The <u>K-Tec</u> record demonstrated that "[t]he day after the patent issued," the accused infringer's CEO "knew" about it. <u>Id.</u> Thus, "K–TEC presented substantial evidence that Vita–Mix knew of the objectively high risk of infringing K–TEC's valid patents but decided to proceed anyway." <u>Id.</u> at 1378.

64.     As stated, "[p]re-patent copying of the invention ... is relevant to the defendant's state of mind after issuance," and "the fact finder may look at ... pre-issuance copying ... to determine what the accused infringer's state of mind was after issuance and notice of the patent." <u>Pelican Int'l</u>, 2023 WL 2127994, at *16-17; <u>see also</u>, <u>supra</u>, ¶¶ 34-36 (summarizing relevant case law). The Court has applied this rule in considering the implications of ELCO's pre-patent copying in this case.  <u>See, e.g.</u>, <u>supra</u>, ¶ 38 (pre-patent copying supports willfulness), ¶ 60 (pre-patent copying relating to motivation to harm). The Court declines to extend the authority relating to pre-patent copying in the manner suggested by DMF.

Ninth Factor:

65.     The ninth <u>Read</u> factor – attempt to conceal – weighs slightly in favor of willfulness. Before sending DRD2 samples to its overseas manufacturer, ELCO removed DMF's name from the products, suggesting it was trying to conceal its copying. TR1 91:15-19. Even though ELCO was unaware of the patent application at this time, and indeed the patent did not issue until years later, removing the name suggests that ELCO attempted to distance itself from the fact that it copied the product.

66.     This raises an inference that ELCO believed it should not be copying, which could have informed its state of mind upon learning of the '266 Patent on August 3, 2018.

67.     Because ELCO's decision to remove DMF's name occurred years before the patent issued, however, and ELCO had only 12 days to analyze the specific allegations in the cease-and-desist letter (including conducting an invalidity analysis), this factor carries minimal weight.

Balancing of Factors and Totality Analysis:

68.     After considering the above, non-exclusive factors in the context of the totality of the circumstances presented at trial, the Court finds that DMF has not proven by a preponderance of the evidence that ELCO engaged in conduct that was "willful,

wanton, malicious, bad-faith, deliberate, consciously wrong, flagrant, or... characteristic of a pirate." <u>Halo</u>, 579 U.S. at 103-104.

69.     Although ELCO copied the unpatented DRD2 module early on in developing its own module, ELCO searched for patents during that timeframe and found none because none had issued.

70.     The Court finds that ELCO's witnesses testified credibly that they believed in good faith during the relevant pre-suit notice period of 12 days, which was curtailed by DMF, that the '266 Patent was invalid. Alternatively, at a minimum, the Court finds that ELCO did not engage in conduct indicative of willfulness during that timeframe.

71.     Further, the minimal duration of continued infringing conduct, of both the original and redesigned modules, lessens the impact of the decision to engage in pre-patent copying.

72.     As the Court observed in its order on ELCO's Rule 12(c) motion, "[t]he purpose of enhanced damages is to punish and deter bad actors from egregious conduct, not to provide a financial incentive for opportunistic plaintiffs to spring suits for patent infringement on innocent actors who have no knowledge of the existence of the asserted patents." <u>ZapFraud, Inc. v. Barracuda Networks, Inc.</u>, 528 F. Supp. 3d 247, 251 (D. Del. 2021).  Indeed, allowing ambush infringement claims to support willfulness would undermine "the worthwhile practice [of] send[ing] a cease-and-desist letter before suit." <u>Sonos, Inc. v. Google LLC</u>, 591 F. Supp. 3d 638, 646 (N.D. Cal. 2022).

73.     Applying these principals, the Court finds that the 12-day notice period afforded in this case was akin to a token ambush letter followed by filing suit. The trial record does not support a finding of willfulness under the totality of the circumstances.

## IV.   MOTION TO STRIKE

ELCO moves to strike DMF's lodging of deposition designations of James Keenly on the grounds that the designations are "entirely new after trial or not plausibly 'fairness designations." Dkt. 722 at 1; <u>see also</u> <u>id.</u> at 6 (cataloguing designations). ELCO states

that DMF previously disavowed calling Keenley as a witness, and argues that it would be "obviously improper and highly prejudicial" to allow DMF to submit new evidence after trial. Id. at 6; see also Dkt. 732 (Reply).

DMF responds that its designations properly respond to ELCO's non-compliant Keenley designations. Dkt. 729 at 1. The Court permitted DMF to make fairness designations, and the Court did not limit those passages to excerpts from DMF's former Keenley designations. Id. DMF also argues that ELCO was required to move to strike within its closing brief, and in any event, ELCO did not properly note its objections in the margins of the deposition designations. Id. at 3. DMF argues that its counter-designations are proper fairness designations under Rule 32(a)(6). Id. at 3-4.

The Court finds that DMF's counter-designations for Keenley may properly be received. Although DMF did not submit them until after trial, this issue arose on the first day of trial and given the short duration of trial, it is unsurprising that DMF filed them after the conclusion of trial. The Court finds that the designations are proper under the rule of completeness, and that including them will not prejudice ELCO. ELCO does not identify any prejudice, nor does ELCO propose any additional designations in view of DMF's counter-designations. Accordingly, ELCO's motion to strike is **DENIED**.

## V.   CONCLUSION

In accordance with the foregoing, the Court orders as follows:

1.      Judgment in favor of ELCO on DMF's willfulness claim is appropriate.

2.      The Court enters its findings of fact and conclusions of law as stated herein. Within 7 days, ELCO shall file a proposed Judgment as to willfulness. Within 7 days of filing the proposed Judgment, DMF shall file any objections thereto. Upon entry of Judgment concerning willfulness, Federal Rule of Civil Procedure 52(b) will apply.

3.      The Court **DENIES** ELCO's motion to strike (Dkt. 722).

4.      Within 14 days of this order, the parties shall file a Joint Report setting forth their respective and/or collective positions concerning a proposed timeline for their

renewed settlement discussions and any other necessary case management dates. The Court defers setting a trial date until the settlement process has concluded and will do so only if it is determined that a trial on one or more issues remains necessary.

IT IS SO ORDERED.

Dated: December 11, 2023

Christina A. Snyder
UNITED STATES DISTRICT JUDGE