UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | | Date | April 25, 2024 |
|---|---|---|---|---|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:            Attorneys Present for Defendants:

Not Present            Not Present

**Proceedings:**   (IN CHAMBERS) - PLAINTIFF DMF'S MOTION TO ALTER OR AMEND JUDGMENT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL (Dkt. 750, filed on JANUARY 30, 2024)

## I.   INTRODUCTION AND BACKGROUND

On August 15, 2018, plaintiff DMF, Inc. ("DMF") filed this action against defendants AMP Plus, Inc. and ELCO Lighting Inc. ("ELCO"). Dkt. 1. DMF brought claims for infringement of U.S. Patent No. 9,964,266 (the "'266 Patent"); for infringement of the trademarks protected by U.S. Reg. Nos. 5,032,463 and 5,503,155; for trademark infringement in violation of California law; and for unfair competition in violation of Cal. Bus. & Prof. Code § 17200. Id. The '266 Patent covers a recessed lighting system that purports to provide a compact design at low cost that still complies with all building and safety codes/regulations. '266 Patent at Abstract.

On July 1, 2019, ELCO filed the operative version of its counterclaims. Dkt. 235. Those counterclaims seek a declaration that the '266 Patent is invalid, a declaration that ELCO's products do not infringe that patent, and a declaration that it does not infringe any trademark rights DMF may have. Dkt. 235 at 19-31.

The issue of willfulness of any infringement of the '266 Patent was tried to the Court on October 24 and October 25, 2023. Dkt. 739 at 1. For purposes of that trial, the Court assumed infringement and validity based on a stipulation of the parties. Id. The Court entered judgment in favor of ELCO on DMF's willfulness claim. Id. at 21. The Court also made findings of fact and conclusions of law in support of this ruling. Id. at 2-20 ¶¶ 3-73.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|---|---|---|---|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

Those findings of fact and conclusions of law reviewed the background of this case in detail. That review is incorporated here by this reference.

On January 30, 2024, DMF filed the instant motion, which seeks a judgment in its favor on its willfulness claim or, in the alternative, a new trial on the issue of willfulness. See Dkts. 750, 750-1. On March 12, 2024, ELCO filed its opposition to DMF's motion. Dkt. 756. On March 25, 2024, DMF filed its reply. Dkt. 759.

On April 15, 2024, the Court held a hearing on DMF's post-trial motion. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   LEGAL STANDARD

The instant motion relies on Fed. R. Civ. P. 52(b), 59(a), and 59(e).

Under Fed. R. Civ. P. 52(b), "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." "Motions made pursuant to Rule 52(b) 'are designed to correct findings of fact which are central to the ultimate decision.'" DCR Mktg. Inc. v. U.S. All. Grp., Inc., No. 819CV01897JVSDFMX, 2023 WL 3152292, at *1 (C.D. Cal. Mar. 9, 2023) (quoting ATS Prods. Inc. v. Ghiorso, No. C10-4880, 2012 WL 1067547, at *1 (N.D. Cal. Mar. 28, 2012)). Rule 52(b) "is not intended as a vehicle for securing a rehearing on the merits." Id. (quoting Heikkila v. Barber, 164 F. Supp. 587, 592 (N.D. Cal. 1958)). "Rule 52(b) motions are appropriately granted in order to correct manifest errors of law or fact or to address newly discovered evidence or controlling case law." Pan v. Tom Ming Chou, No. SACV1501528JVSKESX, 2019 WL 1877445, at *3 (C.D. Cal. Feb. 6, 2019), aff'd sub nom. Pan v. Chou, 848 F. App'x 232 (9th Cir. 2021). "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." Id. (quoting Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011)).

Fed. R. Civ. P. 59(e) permits "[a] motion to alter or amend a judgment [to] be filed no later than 28 days after the entry of the judgment." "However, absent 'other, highly unusual circumstances,' reconsideration pursuant to Rule 59(e) [is appropriate] only where the court is presented with newly discovered evidence, the court committed clear error or the initial decision was manifestly unjust, or there is an intervening change in controlling law." DCR, 2023 WL 3152292, at *2 (quoting Sch. Dist. No. 1J, Multnomah

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title    | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

Cnty. v. AcandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993)).  "Relief under Rule 59(e) is 'an extraordinary remedy which should be used sparingly.'"  Nguyen v. Regents of Univ. of Cal., No. SACV1700423JVSKESX, 2019 WL 3017678, at *1 (C.D. Cal. Mar. 25, 2019) (quoting Allstate, 634 F.3d at 1111).

Rule 59 also provides that a district court may grant a motion for a new trial based "on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1).  Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," district courts are "bound by those grounds that have been historically recognized." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003).  Those grounds include but are not limited to: (1) a verdict that is contrary to the weight of the evidence; (2) a verdict that is based on false or perjured evidence; (3) damages that are excessive; or (4) to prevent a miscarriage of justice.  Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007).  Pursuant to Rule 61, "[u]nless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial." Fed. R. Civ. P. 61.  Accordingly, an erroneous evidentiary ruling may warrant a new trial, but only if it "substantially prejudiced a party." Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1328 (9th Cir. 1995) (quotations omitted).

## III.   DISCUSSION

DMF asserts that the judgment must be amended for several reasons.  Each is addressed below.

### A. Egregiousness

DMF argues that the Court erred by applying an "egregiousness" standard more appropriate for the enhanced damages analysis rather than for the issue of willfulness.  DMF also challenges the propriety of the Court's decision to use the Read factors to organize its analysis of willfulness.  ELCO responds that the Court applied the correct standard, including as to the Read factors, that any error was invited error, and that DMF has not proven willfulness under any standard.

#### 1.   Standard for Willful Infringement

"To prevail on its claim for willful infringement, [a plaintiff is] required to prove, by a preponderance of the evidence, that [the defendant] knew of the [asserted] patent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                        **'O'**

| Case No. | 2:18-CV-07090 CAS (GJSx) | Date | April 25, 2024 |
|---|---|---|---|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

and then engaged in 'deliberate or intentional infringement.'" Ironburg Inventions Ltd. v. Valve Corp., 64 F.4th 1274, 1296 (Fed. Cir. 2023) (quoting SRI Int'l, Inc. v. Cisco Sys., Inc. ("SRI III"), 14 F.4th 1323, 1330 (Fed. Cir. 2021)); see Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc., 946 F.3d 1367, 1378 (Fed. Cir. 2020) ("Under Halo, the concept of "willfulness" requires [the trier of fact] to find no more than deliberate or intentional infringement."); see also Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC, 879 F.3d 1332, 1353 (Fed. Cir. 2018) (noting that, after Halo, willfulness focuses on "[t]he subjective willfulness of a patent infringer, intentional or knowing") (emphasis added); Georgetown Rail Equip. Co. v. Holland L.P., 867 F.3d 1229, 1244 (Fed. Cir. 2017) (same); Stryker Corp. v. Zimmer, Inc., 837 F.3d 1268, 1279 (Fed. Cir. 2016) (same); WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1340 (Fed. Cir. 2016).

"The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." Eko Brands, 946 F.3d at 1378 (quoting Halo Elecs., Inc. v. Pulse Elecs., Inc., 579 U.S. 93, 105 (2016)). "Questions of whether an accused patent infringer's conduct was 'egregious behavior' or 'worthy of punishment' are therefore not appropriate" for consideration when analyzing willfulness. Id. In the same vein, the Federal Circuit has indicated that whether conduct is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate" "refers to 'conduct warranting enhanced damages,' not conduct warranting a finding of willfulness." SRI Int'l, Inc. v. Cisco Sys., Inc. ("SRI III"), 14 F.4th 1323, 1330 (Fed. Cir. 2021) (quoting Halo, 579 U.S. at 103-04).

Nevertheless, "[t]o establish willfulness, the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct." Bayer Healthcare LLC v. Baxalta Inc., 989 F.3d 964, 987 (Fed. Cir. 2021); accord BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org., 28 F.4th 1247, 1274 (Fed. Cir. 2022).

ELCO cites Bayer because it affirmed an order granting judgment as a matter of law of no willful infringement because the "conduct [did not] [ri]se to the level of wanton, malicious, and bad-faith behavior required for willful infringement." Id. at 988 (emphasis added). ELCO also cites district-court cases applying the "wanton, malicious, and bad faith" standard in the context of willfulness even after SRI III was decided. See, e.g., HOYA Corp. v. Alcon Inc., No. 3:20-CV-3629-M, 2024 WL 310706, at *16 (N.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|---|---|---|---|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

Tex. Jan. 26, 2024); Galderma Lab'ys, L.P. v. Medinter US LLC, No.
118CV01892JDWCJB, 2023 WL 8827174, at *4 (D. Del. Dec. 21, 2023); DSM IP
Assets, B.V. v. Honeywell Int'l, Inc., No. CV 23-675-WCB, 2023 WL 7214672, at *9
(D. Del. Nov. 2, 2023); Abbott Lab'ys v. Grifols Diagnostic Sols. Inc., No. 19 C 6587,
2023 WL 6160182, at *22 (N.D. Ill. Sept. 20, 2023); Playvuu, Inc. v. Snap, Inc., No. CV
22-6019-GW-PDX, 2022 WL 18359097, at *7 (C.D. Cal. Nov. 15, 2022).

For its part, DMF also cites a number of district-court cases postdating SRI III that
reject the "wanton, malicious, and bad faith" standard. See, e.g., Textile Computer Sys.,
Inc. v. Broadway Nat'l Bank, 620 F. Supp. 3d 557, 568 (W.D. Tex. 2022); Sec. First
Innovations, LLC v. Google LLC, No. 2:23-CV-97, 2023 WL 7726389, at *10 (E.D. Va.
Nov. 15, 2023); Kaisha v. Rorze Corp., No. 5:22-CV-04947-EJD, 2023 WL 5209720, at
*3 (N.D. Cal. Aug. 14, 2023); Neonode Smartphone LLC v. Samsung Elecs. Co., No.
6:20-CV-00507-ADA, 2023 WL 5426743, at *2 (W.D. Tex. June 27, 2023); Akamai
Techs., Inc. v. MediaPointe, Inc., No. 222CV06233MCSAFM, 2023 WL 4155394, at *2
(C.D. Cal. Jan. 4, 2023); Microsoft Corp. v. MediaPointe, Inc., No.
222CV01009MCSMRW, 2022 WL 19263332, at *2 (C.D. Cal. Dec. 15, 2022);
SpaceTime3D, Inc. v. Apple Inc., No. 6-22-CV-00149-ADA, 2022 WL 16858515, at *2
(W.D. Tex. Nov. 10, 2022).

ELCO argues that SRI III was not an en banc decision and therefore cannot
contradict prior Federal Circuit case law. DMF responds that the statement in Bayer
regarding willful infringement was dictum, not the holding of that case. The Court
cannot agree that the relevant statement in Bayer was dictum. The Bayer court was
evaluating the sufficiency of the evidence on willful infringement, and the Federal Circuit
said it was applying the "wanton, malicious, bad faith" standard.

However, the Court ultimately agrees with DMF that the holding of SRI III is
binding because it clarified, rather than overturned, previous cases. The willfulness and
enhanced-damages inquiries are inherently linked because enhanced damages usually
require a prior finding of willfulness. The difference between "deliberate and
intentional" and "wanton, malicious, and bad faith" is small so the analyses naturally
overlap.[1]  Read as SRI III instructs, Bayer and other similar cases were applying the

---

[1] Among other things, this conclusion is supported by the Federal Circuit's decision in Eko Brands. There, the district court's
jury instructions included the phrases "especially worthy of punishment" and "reserved for egregious behavior." 946 F.3d at
1379. Although the Federal Circuit held that the instruction was erroneous, it affirmed the willfulness finding because the
instruction "provided the jury an adequate test for willfulness" because the instruction "also clarifie[d] that willful

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

enhanced-damages standard together with willfulness rather than addressing willfulness alone.  Indeed, SRI III expressly stated that it sought to "clarify that it was not our intent to create a heightened requirement for willful infringement[.]"  15 F.4th at 1330.  It did not overturn Bayer or any other case.

In its findings of fact and conclusions of law, the Court made the following statements:

- "To prove willful infringement, a plaintiff must show by a preponderance of the evidence that an infringer has engaged in conduct that is 'willful, wanton, malicious, bad-faith, deliberate, consciously wrong, flagrant, or . . . characteristic of a pirate."  Docket No. 739 at 7 ¶ 15 (quoting Halo, 579 U.S. at 103-04).
- "In conducting this analysis, the Court considers that conduct amounting to willfulness is reserved for egregious infringement behavior."  Id. at 8 ¶ 21 (quoting Halo, 579 U.S. at 103).
- "[W]illfulness is found only when an infringer proceeds with 'no doubts about [the] validity' or infringement of the patent."  Id. at 15-16 ¶ 50 (quoting Halo, 579 U.S. at 104).
- "After considering the above, non-exclusive factors in the context of the totality of the circumstances presented at trial, the Court finds that DMF has not proven by a preponderance of the evidence that ELCO engaged in conduct that was 'willful, wanton, malicious, bad-faith, deliberate, consciously wrong, flagrant, or . . . characteristic of a pirate."  Id. at 19-20 ¶ 68 (quoting Halo, 579 U.S. at 103-04).
- "[T]he purpose of enhanced damages is to punish and deter bad actors from egregious conduct, not to provide a financial incentive for opportunistic plaintiffs to spring suits for patent infringement on innocent actors who have no knowledge of the existence of the asserted patents."  Id. at 20 ¶ 72

---

infringement can simply be 'deliberate' infringement" and the jury was advised that it could consider whether the defendant "intentionally copied a product of [the plaintiff] that [wa]s covered by the [asserted] patent" and "whether or not [the defendant] reasonably believed it did not infringe or that the patent was invalid." Id. So too here.  In its findings of fact and conclusions of law, the Court found that DMF did not prove ELCO "engaged in conduct that was 'willful, wanton, malicious, bad-faith, deliberate, consciously wrong, flagrant, or . . . characteristic of a pirate." Docket No. 739 at 19-20 ¶ 68 (emphasis added).  As in Eko Brands, "deliberate" was one of the terms used.  Also, the Court's findings of fact and conclusions of law covered issues of copying and the reasonableness of ELCO's belief that the '266 Patent was invalid and/or not infringed, in connection with the first and second Read factors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

(quoting ZapFraud, Inc. v. Barracuda Networks, Inc., 528 F. Supp. 3d 247, 251 (D. Del. 2021)).

The Court agrees with DMF that the statements in paragraphs 15, 21, and 68 reflected the incorrect legal standard from Bayer, rather than the standard from SRI III. The last sentence of paragraph 50 does too. The relevant language from Halo was describing "the 'wanton and malicious pirate' who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business." 579 U.S. at 104. Thus, this principle is linked to those addressed elsewhere in this section. However, although a defendant may willfully infringe even if it has some doubt about validity or infringement, the Court notes that, if the defendant believes it is not liable for infringement, deliberate or intentional infringement will naturally be hard to show.

However, the statement in paragraph 72 was not erroneous. Paragraph 72 referenced egregiousness and enhanced damages, but it did not apply an "egregiousness" standard or any other part of the enhanced-damages analysis. Indeed, paragraph 72 was expressly limited to the enhanced-damages analysis. Paragraph 72 thus served a different purpose: it provided context explaining why a token ambush letter followed rapidly by a lawsuit does not support either willfulness or enhanced damages.

DMF also objects to paragraph 33, which simply states that DMF bears the burden of proof by a preponderance of the evidence and that DMF has not proven that ELCO's infringement (if any) was willful. This was not error; there is no connection between this paragraph and the issues raised by SRI III. Similarly, DMF objects to paragraph 73, which evaluates the facts and states that "[t]he trial record does not support a finding of willfulness under the totality of the circumstances." This paragraph does not contain an erroneous statement of the law.

DMF argues that it should prevail as long as ELCO "should have known" that it infringed the '266 Patent, based on Arctic Cat Inc. v. Bombardier Recreational Prod. Inc., 876 F.3d 1350, 1371 (Fed. Cir. 2017). There, the Federal Circuit affirmed jury instructions that the plaintiff "must prove by clear and convincing evidence that [the defendant] actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent." Id. The Federal Circuit held that this was proper because Halo did not overturn the second prong of the pre-Halo Seagate test, which asks whether "the defendant acted despite a risk of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

infringement that was either known or so obvious that it should have been known to the accused infringer." Id. First, the jury instruction in Arctic Cat did not apply a pure "should have known" standard: it also required an obvious, unjustifiably high risk. The language in Arctic Cat seems to capture something more than negligence. Second, even if it is not reversible error to instruct a jury with the language used in Arctic Cat, the litany of Federal Circuit cases cited at the beginning of this subsection all use the phrases "deliberate or intentional" or "intentional or knowing," the latter of which comes directly from Halo. The Court is not persuaded that the Federal Circuit has encouraged district courts to use the language from Arctic Cat. Third, if there is a true conflict between Arctic Cat and the other Federal Circuit cases, the Court would still use the language from SRI III, because it is more consistent with Halo and because the cases applying language similar to SRI III are both more numerous and more recent. See Bos. Sci. Corp. v. Nevro Corp., 560 F. Supp. 3d 837, 842 n.2 (D. Del. 2021) (refusing to use the language from Arctic Cat for similar reasons). Finally, the result of the trial would have been the same even under the Arctic Cat instructions.

        2.    Invited Error

"[A] party [will] invite[] an alleged error either by asking the trial court to make a ruling, the result of which the same party later challenged on appeal, or by failing to present cognizable arguments or evidence in favor of its position to the trial court." Harris Corp. v. Ericsson Inc., 417 F.3d 1241, 1258 (Fed. Cir. 2005). Also, "a party will be judicially estopped from asserting a position on appeal that is inconsistent with a position it advocated at trial and persuaded the trial court to adopt." Interactive Gift Exp., Inc. v. Compuserve Inc., 256 F.3d 1323, 1346 (Fed. Cir. 2001). Here, ELCO cites three instances when DMF allegedly advocated for a legal standard inconsistent with its present position.

As to DMF's proposed Final Pretrial Conference Order, ELCO's position is unpersuasive. There, DMF contended it would establish both willfulness and its entitlement to enhanced damages, but DMF never indicated that the two standards were the same or that egregiousness was a part of the willfulness analysis. Docket No. 493-1 at 13; see also Docket No. 461 at 14-15. Although ELCO is correct that DMF has not contended that it is entitled to enhanced damages for any reason other than willful infringement, DMF did not advocate for a Bayer-type standard here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

ELCO's position is also unpersuasive as to DMF's post-trial briefing. ELCO criticizes DMF for repeatedly using the phrases "good faith" and "bad faith" in analyzing willfulness. See Docket No. 720 at 12, 16-18. However, in many of these instances, DMF was describing ELCO's arguments rather than its own position. Moreover, the defendant's good faith belief in its position—or lack thereof—is relevant to understanding whether deliberate or intentional infringement occurred. Thus, DMF's statements in its post-trial brief are not irreconcilable with its current position.

However, ELCO is right about DMF's opposition to ELCO's Rule 12(c) motion. There, in a section entitled "Willfulness Standard," DMF noted that "enhanced damages for willful infringement should be applied to 'egregious cases of misconduct beyond typical infringement.'" Docket No. 627 at 20. In this passage, DMF made the error it now complains of: it conflated the willfulness and enhanced-damages inquiries and indicated that egregiousness is a part of the willfulness analysis. DMF's present position, which denies that willful infringement requires a showing of egregious misconduct, cannot be reconciled with its Rule 12(c) opposition. Ultimately, the Court agreed with DMF and denied ELCO's Rule 12(c) motion. The Court recited a legal standard consistent with DMF's initial position, both in ruling on ELCO's Rule 12(c) motion and in drawing conclusions of law after the bench trial in this matter. See Docket No. 651 at 4; Docket No. 739 at 8 ¶ 21. DMF has never previously objected to those rulings, and DMF cannot fairly change its position now.

3.    Materiality

Moreover, even if DMF were deemed not to have invited the error of which it now complains, the result of the bench trial would have been the same under either a Bayer-type or SRI III-type standard. The distinction between "deliberate and intentional" behavior and "wanton, malicious, and bad faith" behavior may be determinative in some cases, but this is not one of them. ELCO proffered credible testimony that it believed the '266 Patent was invalid, and the contrary evidence proffered by DMF was not credible or less credible. See, e.g., Docket No. 739 at 20 ¶ 70. And if ELCO did not believe it infringed a valid patent, it did not engage in either deliberate and intentional behavior or behavior that was wanton, malicious, or in bad faith. Likewise, ELCO proffered credible testimony that it did not know about the '266 Patent prior to August 3, 2018, and again, the evidence DMF relied on was not credible or less credible. See, e.g., id. at 17 ¶ 56. If ELCO did not know about the '266 Patent prior to this date, then it could not have engaged in willful infringement before that date. For similar reasons, DMF's evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|---|---|---|---|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

that ELCO copied DMF's products and attempted to conceal its copying is of little probative value because it occurred before ELCO became aware of the '266 Patent. Although the Court recited the incorrect legal standard, none of the Court's underlying reasoning was dependent upon the difference between the standards now advocated by DMF and ELCO. Thus, DMF has not shown it is entitled to judgment in its favor on willfulness or to a new trial.

4. The Read Factors

DMF challenges the Court's use of the Read factors to structure its analysis of the willfulness issue. In its findings of fact and conclusions of law, the Court stated that, although the Read factors "are normally used to analyze whether to award enhanced damages," they "provide a useful framework for considering whether infringement rises to the level of willfulness." Docket No. 739 at 7-8 ¶ 19. Thus, the Court used the Read factors purely as an organizational and rhetorical device. The Court also avoided conflating the enhanced-damages and willfulness analyses. In addition, the Court adjusted the Read factors to suit the willfulness inquiry. As the Court noted, the third and fourth factors—the defendant's behavior as a party to the litigation and its size and financial condition—may be relevant to enhanced damages but do "not provide any insight into ELCO's pre-suit state of mind concerning willfulness." Id. at 16 ¶ 52 (third factor); see id. at 16 ¶ 53 (fourth factor). The Court drew a similar conclusion with respect to the fifth factor, which could not "be analyzed given the posture of the bench trial." Id. at 16 ¶ 54. Nor was the Court's analysis limited to the Read factors. The Court expressly noted that it was treating the Read factors as "non-exclusive" and considering "the totality of the circumstances presented at trial." Id. at 19-20 ¶ 68. For example, the Court made various findings of fact relevant to ELCO's state of mind outside the framework of the Read factors. Id. at 10-11 ¶¶ 26-32. For all of these reasons, the use of the Read factors was not error. This disposes of DMF's challenges to paragraphs 19, 20, 37, 52, and 53.

DMF also objects to paragraphs 44, 45, 47, 59, 70, and to the consideration of the second Read factor more generally, which address whether ELCO, after learning of the '266 Patent, investigated its scope and formed a good-faith belief that it was invalid or not infringed. Although bad faith is not required for a finding of willfulness, it was appropriate to evaluate this factor. If a defendant believes in good faith that the asserted patent is invalid or not infringed, that strongly supports a conclusion that the defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

did not deliberately or intentionally infringe that patent. In other words, good faith may not preclude a finding of willfulness, but good faith is still relevant to willfulness.

DMF objects to paragraphs 54 and 55, which concerned the fifth <u>Read</u> factor, the closeness of the case. However, as already mentioned, this is one of the factors that the Court did not find supported either side's position because of the nature of the bench trial and because it did not go to ELCO's state of mind. Thus, there is no connection between the Court's evaluation of this factor and DMF's critique of the Court's use of the <u>Read</u> factors.

DMF next turns to paragraphs 56 and 57, which addressed the sixth <u>Read</u> factor, the duration of the defendant's misconduct. This is circumstantial evidence of whether the defendant deliberately or intentionally infringed the patent. For example, a defendant that has inadvertently infringed is much more likely to stop infringing after receiving a cease and desist letter than a defendant with specific intent to infringe. Like the second <u>Read</u> factor, this factor is not identical to the standard from <u>SRI III</u> and does not control the willfulness analysis. But because it is still relevant to willfulness, it was appropriate to consider it.

### B. DMF's Proposed Additional Factual Findings

For each of the issues DMF raises in this section, DMF's position is that the Court's findings of fact and conclusions of law "omit[] evidence and testimony at trial" and are "silent as to several important facts . . . ." <u>See</u> Docket No. 750-2 at 12. DMF contends that these facts "establish that ELCO knew or should have known its sales of ELL products risked infringing DMF's patent claim . . . ." <u>See id.</u> at 15. Given the volume of evidence presented and issues raised by the parties, it was not possible to address every fact, even those that one party might have viewed as important. <u>See</u> Docket Nos. 720, 721, 727, 728. DMF never argues that any of the issues here reflect newly discovered evidence, a change in the law, manifest error, or any of the bases for relief under Fed. R. Civ. P. 52 or 59. Indeed, DMF's argument seems directed at obtaining a "second bite at the apple" for arguments it raised or could have raised at the trial. This is sufficient reason to reject each of the arguments made in this section. However, as the Court explains below, it did not err in evaluating any of this evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

1.      File History Related to "Plurality of Elements"

DMF contends that the Court's findings of fact and conclusions of law ignore evidence from the file history that the "plurality of elements" limitation permitted DMF to eliminate a firebox from its products, providing a benefit not present in the prior art. See Docket No. 750-2 at 12.

Even if credited, this evidence is of minimal probative value as to willfulness. Evidence that the patented invention is novel and non-obvious is relevant to the validity of the asserted patent, but the willfulness analysis necessarily assumes that the asserted patent is valid and infringed.

DMF argues that this evidence is relevant based on footnote 9 of the Court's findings of fact and conclusions of law.  There, the Court noted "that the issuance of the patent was quite uncertain in view of multiple rejections; and after this litigation was filed, the PTAB invalidated Claim 17."  Docket No. 739 at 14 ¶ 47 n.9.  However, the Court stated that "neither point is relevant to prove ELCO's then-existing state of mind (because there is no evidence ELCO knew of the application and rejections, and the PTAB proceedings occurred much later than the relevant pre-suit notice period) . . . ."  Id. Although the Court mused that "these facts may support the conclusion that ELCO did not act in a reckless manner when it decided to not immediately stop selling its products upon receiving the C&D letter," it ultimately concluded that it was "rel[ying] on ELCO's actions . . . not these external developments."  Id.  Because the Court did not rely on the asserted patent's file history in ruling on willfulness, DMF's proposed factual finding is not necessary to correct the record.

DMF also argues that the allowance of the patent claims immediately after adding the "plurality of elements" limitation supports the conclusion that ELCO acted in a reckless manner because it copied that feature from DMF.  This position is unpersuasive. Certainly, this evidence is not relevant to ELCO's state of mind at the time of copying or the time of patenting, because there is no evidence ELCO knew of the '266 Patent more than two weeks before this action was filed.  In addition, for the reasons the Court noted in its original findings of fact and conclusions of law, there is only a weak connection between a patent's file history and whether it has been willfully infringed.  Just as an initial rejection provides little reason to believe that the final claims will be invalid, the issuance of a patent only establishes a rebuttable presumption of validity.  As before, "the Court relies on ELCO's actions . . . not these external developments."  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

### 2.   Industry Award Related to "Plurality of Elements"

DMF argues that the Court has ignored that its product "received a prestigious award for innovation, because its configuration to recess within and mount to a junction box eliminated the need for a firebox, reflected in the 'plurality of elements' limitation." Docket No. 750-2 at 13. DMF also argues that ELCO knew about this award at the time it copied DMF's product.

Even if credited, this evidence has minimal probative value for largely the same reasons as the file history related to this limitation. Also, ELCO presented credible evidence that the award was awarded to the overall system rather than to the module at issue or specifically for any of the limitations claimed in the '266 Patent, including the "plurality of elements" limitation. TR1 at 67.[2] DMF presented some evidence that it would not have won the award with the patented module and that the patented module was necessary for the overall system to function. Id. at 73. However, on balance, there is insufficient evidence connecting the award to the "plurality of elements" limitation and the '266 Patent for the award to have much probative value. Also, although DMF presented evidence that ELCO knew about the award, DMF presented no credible evidence that ELCO knew that the award was related to the "plurality of elements" limitation or the claimed invention. See id. at 136. DMF presented some evidence that ELCO reviewed a catalog touting the benefit of this limitation, namely that the light requires no firebox. Id. at 147. But again, nothing connects this catalog to the "plurality of elements" limitation or the claimed invention. Id.

### 3.   Copying Related to "Plurality of Elements"

This issue is similar to the previous two. DMF argues that ELCO copied the "plurality of elements" limitation from the DMF's own DRD2 product, including certain index grooves that allow both products to fit into the same standard-sized junction box. Docket No. 750-2 at 13. DMF also points to evidence that ELCO marketed its product as "Tomorrow's LED Technology Delivered Today." Id.

DMF is correct that evidence of copying can support a finding of willfulness. Indeed, the Court concluded that this factor did support DMF's position somewhat.

---

[2] There appears to be a four-page offset between the page numbers in the Court's copy of the transcript from the first day of trial and the page numbers in the copy used by the parties. In this Order, the Court uses the page numbers from its own copy of the transcript. This discrepancy does not affect the transcript from the second day of trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

Docket No. 739 at 12 ¶ 38.  However, the weight of this factor is diminished because the copying occurred several years before the patent issued.  Id. at 12-13 ¶ 39.  The weight of this factor is further diminished because DMF presented no evidence that, upon receiving the C&D letter, ELCO acted in a way evidencing that it knew its earlier copies infringed and knew its continued conduct would be infringing.  Id.  Finally, the weight of this factor is diminished because ELCO eventually modified its module so that it diverged from DMF's module in several respects.  Id. at 13 ¶ 40.  These concerns, which DMF does not address in the present briefing, apply to all of the limitations ELCO copied, including the "plurality of elements" limitation.

As to ELCO's marketing statements, DMF has provided no evidence that these statements were made after ELCO learned about the '266 Patent.  See, e.g., Ex. 470 (showing statements made on or around July 25, 2018).  Further, the statement "Tomorrow's LED Technology Delivered Today" is vague.  It does not reasonably suggest that ELCO was trying to tout the benefits of the claimed invention over conventional technology or that ELCO invented the whole LED system.  Based on its review of the evidence, the Court is persuaded that this statement merely indicates that ELCO was claiming its systems were innovative or advanced in a general sense.

4.      Awareness of IMTRA Prior Art

Here, DMF argues that ELCO was aware of the IMTRA prior art at the time it chose to copy DMF's DRD2 product.  Docket No. 750-2 at 13.  DMF also argues that the IMTRA reference did not describe either installing the light inside a junction box or the ability to eliminate a firebox, and that copying the novel features of DMF's product supports a finding of willful infringement.  Id. at 13-14.

Neither DMF's citations to the record nor its citations to the case law are accurate. As to the record, the witness did not state that the IMTRA reference lacked the relevant features of DMF's product; rather, the witness was not aware of whether the IMTRA reference described these features.  TR2 at 64.  Turning to the case law, DMF relies on State Indus. v. A.O. Smith Corp., 751 F.2d 1226, 1236 (Fed. Cir. 1985) for the proposition that copying novel features supports willfulness.  In State, the Federal Circuit found that the district court's finding of willfulness was clearly erroneous because the "only novel parts" of the plaintiff's product were not copied.  Id.  The Federal Circuit did not hold or suggest that a finding of no willfulness would be clearly erroneous where the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

novel parts of the plaintiff's product were copied.  Indeed, that would be inconsistent with the principle that the willfulness analysis is not governed by rigid rules of thumb.

Also, <u>State</u> supports ELCO's position to some extent: <u>State</u> holds that "keeping track of a competitor's products and designing new and possibly better or cheaper functional equivalents is the stuff of which competition is made and is supposed to benefit the consumer.  One of the benefits of a patent system is its so-called 'negative incentive' to 'design around' a competitor's products, even when they are patented, thus bringing a steady flow of innovations to the marketplace." <u>Id.</u> at 1235-36.  As previously noted, ELCO copied DMF's product but later tinkered with its product, introducing significant changes.  Docket No. 739 at 13 ¶ 40.

Nevertheless, DMF is right that copying the novel features of a product is relevant to willfulness and that ELCO copied DMF's product.  However, even assuming DMF is right about the features of the IMTRA reference, copying is a factor that the Court has already considered.  For the reasons previously explained, the evidence of copying has less probative value than the other evidence that weighs against a finding of willfulness.

   5. <u>Statements by Patent Counsel</u>

DMF argues that ELCO filed two patent applications on its copy of the DRD2 technology.  Docket No. 750-2 at 14.  DMF further argues that ELCO's patent counsel made statements inconsistent with ELCO's position about the invalidity of the '266 Patent, namely that there was no "motivation to combine a lighting module and an electrical junction box such that 'a lighting module [is] installed in the junction lighting box unit,'" that this was "not taught by the prior art," that "it is not obvious to install a lighting unit in a junction box," and that there was "no common or other knowledge teach[ing]" such a device.  <u>Id.</u>

DMF's position that ELCO filed a patent application for an exact copy of its patented technology is unsupported by the evidence.  Instead, DMF proffered evidence that ELCO filed patent applications and that at least one covered "a system that uses a junction box and a module."  TR1 at 156, 160-63, 165-67.  However, a system is not a copy of the DRD2 technology just because it uses a junction box and a module.  DMF failed to present sufficient evidence linking any of ELCO's patent applications to the DRD2 technology.  To the extent that ELCO filed a patent application with some similarities to the DRD2 technology but with some differences, that is to be expected: all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|---|---|---|---|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

patents rely at least somewhat on the prior art.  Again, DMF failed to present sufficient evidence linking any of ELCO's patent applications to the DRD2 technology.

As to the statements made by ELCO's patent counsel, the Court is not persuaded that they are material because DMF proffered insufficient evidence that ELCO was aware of these statements.  Brandon Cohen conceded that his counsel made these statements but did not recall whether he worked with his counsel on this issue.  TR1 at 161.  Likewise, Brandon Cohen agreed that his father instructed him to call his patent counsel every few days to push counsel to pursue the patent application.  Id. at 163.[3]  But there was insufficient evidence linking these communications to the statement at issue.  There was also insufficient evidence linking these statements to ELCO's invalidity position: the statements made by ELCO's patent counsel were limited to the "junction box of COPP" rather than junction boxes in general.  See Ex. 1092A at 99.  The statements of ELCO's patent counsel are not inconsistent with ELCO's litigation position as to the invalidity of the '266 Patent.  See Ex. 164 at 4 (portion of ELCO's contention that the '266 Patent was invalid related to the junction box).[4]

6.    Receipt of the Cease and Desist Letter

DMF argues that ELCO refused delivery of the hard copy of DMF's cease and desist letter and misrepresented that it had not received the email copy until August 10, 2018.  Docket No. 750-2 at 14.  For the first time in its reply brief, DMF argues that ELCO made other misrepresentations in its August 10, 2018 email response.  Docket No. 759 at 17-19.  DMF argues that this evidence is relevant to willfulness because it shows that ELCO had a guilty mind.  Docket No. 750-2 at 14.

As the Court noted in its findings of fact and conclusions of law, "[t]he parties offered some competing evidence as to the precise day ELCO received the letter, but the

---

[3] DMF argues that, as a matter of law, a client is charged with knowledge of information provided to their attorney.  BSD Crown, LTD. v. Amazon.com, Inc., No. 3:23-CV-00057-WHO, 2023 WL 6519752, at *3 (N.D. Cal. July 27, 2023).  That may be true, but it does not follow that the client is charged with knowledge of arguments made by their counsel to the USPTO.  Nor does it follow that the attorney's statements are always compelling evidence the client's state of mind.  It is not uncommon for attorneys to know things that their clients do not.  BSD is also distinguishable because it merely held that "it seems possible for a plaintiff to allege a theory of knowledge imputation by pleading that the defendant's counsel knew of the patent and so the defendant knew of it, too."  Id. at *4.  It did not hold that this evidence would be sufficient to prevail at trial, let alone to compel a finding of willfulness.

[4] As the Court noted in its findings of fact and conclusions of law, this exhibit is considered only to provide chronological background or to show ELCO's actions, not to allow ELCO to rely on a later-developed litigation-inspired defense to avoid a finding of willfulness.  See Docket No. 739 at 11 ¶ 32 n.7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title    | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

earliest date is August 3, 2018." Docket No. 739 at 17 ¶ 56. The evidence with respect to the hard copy of the letter was that it was marked "RETURN TO SENDER," "NOT DELIVERABLE AS ADDRESSED," and "UNAVAILABLE TO FORWARD" for reasons that remain unclear. Ex. 160; TR1 at 173-75. However, the Court was not persuaded that there was sufficient evidence that ELCO refused delivery of the hard copy of DMF's cease and desist letter to obstruct DMF. For one thing, the envelope does not indicate the nature of its contents, only that it was certified. See Ex. 160. Nor does the Court find it especially plausible that ELCO would intentionally refuse delivery of the hard copy only to accept delivery of the email copy at most seven days later. See Docket No. 739 at 17 ¶ 56. Finally, as the Court noted in its findings of fact and conclusions of law, it gave DMF the benefit of the doubt and accepted its position that DMF provided adequate notice to ELCO on August 3, 2018. See id.

As to ELCO's alleged misrepresentations about its date of receipt of the letter, ELCO had some evidence in support of its position that it received the letter after August 3, 2018. See Docket No. 739 at 17 ¶ 56. The Court found ELCO's position reasonable, so this issue would not support a finding of willfulness. Also, contrary to DMF's position, the August 10, 2018 email response does not claim that the letter had just been received. Rather, it stated that "[o]ur customer service is in receipt of your letter." See Docket 759 at 17-18.

As for the other alleged misrepresentation in the August 10 email response, the statement that "[w]e are retaining legal [counsel] to respond" does not imply that counsel had just been retained or would be retained at some future time. See id. Instead, the August 10 email response does not specify the timing of the retention; it is consistent with DMF's position that, by August 10, ELCO had recently retained counsel who were preparing a response. Id.

Finally, DMF argues that, based on the August 10 email response, "[m]ankind has yet to invent a microscope powerful enough to detect the chance of resolution if only DMF had waited a week or two longer to file suit." Docket No. 759 at 19. For starters, the Court does not find DMF's characterization of the August 10 email response persuasive. Nor is the purpose of cease-and-desist letters limited to resolving the case: cease-and-desist letters also provide a valuable opportunity for the parties to narrow their disputes (even if they cannot be eliminated), including by reaching an agreement about the sale of future products that would not infringe. Because ELCO immediately began designing around the '266 Patent, DMF's position is unpersuasive. See TR2 at 47-48.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|---|---|---|---|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

Also, ELCO proffered some evidence that it solicited DMF's opinion on whether its redesign would continue to infringe the '266 Patent. <u>See</u> <u>id.</u> at 225-27. This also weighs against DMF's position that delaying suit would have been futile. Based on the number of limitations in the claims in the '266 Patent, the complexity of much LED technology, and the totality of the circumstances, DMF's 12-day notice period before filing suit weighed against a finding of willfulness. <u>See</u> Docket No. 739 at 17 ¶¶ 56-57.

       7.   <u>Exhibit 1211</u>

     DMF points to Exhibit 1211, contending that this exhibit shows ELCO encouraged increased infringement until the Court forced ELCO to stop. Docket No. 750-2 at 14.[5] The text of Exhibit 1211 does not support this position. That document is titled "ELCO LIGHTING INTRODUCES SUPERIOR ELL MODULE LINE AND DOES NOT INFRINGE ANY FRAUDULENT PATENT." Ex. 1211 at 1. This language reflects a belief that the '266 Patent was both invalid and not infringed, which weighs against a finding of willfulness. The document goes on to explain why the '266 Patent is invalid. <u>Id.</u> The document also states that ELCO "hereby confirm[s] that [its] ELL modules do NOT infringe even on their fraudulent patent." <u>Id.</u> at 1-2.[6] The document concludes that ELCO "100% stand[s] behind [its] sales reps and [its] products," and it "encourage[s] [its] sales representatives] to increase [their] sales effort in [its] ELL series product line, and dominate the market." <u>Id.</u> at 2. As the Court noted in its findings of fact and conclusions of law, this document reflects ELCO's belief that the '266 Patent was invalid, not that it encouraged increased infringement. Docket No. 739 at 11 ¶ 32.

    **C. State of Mind**

       1.   <u>Admissibility of State-of-Mind Testimony Allegedly Related to Advice of Counsel</u>

     DMF argues that ELCO witness testimony about a belief that the '266 Patent was invalid must be excluded, because that belief was "undoubtedly" formed from attorney communications on which ELCO blocked discovery and because ELCO waived reliance on an advice-of-counsel defense. Docket No. 750-2 at 15. ELCO responds that it did not

---

[5] There is some tension between DMF's position here and its later position that Exhibit 1211 is inadmissible. For purposes of this subsection, the Court assumes that DMF can rely on Exhibit 1211 for the purpose described here.
[6] The Court did not place any significant reliance on this piece of evidence because ELCO provides no explanation for its non-infringement position.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

raise a new theory or defense, did not block discovery as to its state of mind, and did not rely on the advice of counsel at trial. Docket No. 756 at 22-25.

"[Q]uestions of privilege and discoverability that arise from assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law," so "Federal Circuit law applies." In re EchoStar Commc'ns Corp., 448 F.3d 1294, 1298 (Fed. Cir. 2006) (internal quotation omitted). "[W]hen a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter." Id. at 1301. In addition, "[t]he doctrine of implied waiver is invoked when a party makes the content of his attorney's advice relevant to some claim or defense in the case. Even if the party does not expressly disclose the advice received, but only alludes to it, the privilege can be deemed waived by implication." Wi-LAN, Inc. v. Kilpatrick Townsend & Stockton LLP, 684 F.3d 1364, 1370 (Fed. Cir. 2012).[7]

DMF's argument is premised on a misunderstanding of the Court's findings of fact and conclusions of law. The Court concluded that the short pre-suit notice period "undermines DMF's suggestion that ELCO cannot rely on an invalidity defense because ELCO waived reliance on advice of counsel at trial." Docket No. 739 at 14 ¶ 46. The Court acknowledged that "ELCO undoubtedly formed its belief that the patent was invalid in conjunction with conversations with counsel," but focused on evaluating "ELCO's pre-suit state of mind," not "whether counsel's advice was right." Id. In other words, "[t]he point is not the specific details ELCO learned from counsel, but rather that, immediately after receiving the letter, ELCO took it seriously and responded." Id. The Court also "cautioned the parties to avoid questioning that would invade advice of counsel or privileged conversations." Id. at 14 ¶ 46 n.8 (citing, as one example, TR2 at 211). Beginning with that first statement, the Court did not intend to suggest that ELCO's witness' statements about their beliefs were relying on, or even alluding to, the advice of counsel. The Court was simply acknowledging that ELCO was consulting with counsel at the time it was responding to DMF's C&D letter. The Court also excluded

---

[7] DMF also relies on authority that "go[ing] beyond merely denying willfulness and . . . assert[ing] a good faith belief" that one's conduct is lawful, "which [is] based at least on part on advice from . . . attorneys" places privileged information at issue. Spin Master, Ltd. v. Zobmondo Ent., LLC, No. CV 06-3459 ABC PLAX, 2012 WL 8134011, at *3 (C.D. Cal. Mar. 9, 2012). However, this authority also requires a further showing that "allowing the privilege would deny the opposing party access to information vital to its defense." Because DMF has not met this last requirement here, the Court is not persuaded that adopting the Ninth Circuit's three-step test for implied waiver of the attorney-client privilege would alter the outcome of the analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

testimony that would run afoul of this limit.  Although ELCO has disclaimed reliance on
the advice of counsel, ELCO's testimony about its state of mind did not place the advice
of counsel in issue.  It would stretch the implied-waiver doctrine too far to preclude
ELCO from offering evidence of its state of mind just because its employees consulted
attorneys at the relevant time.  DMF also argues that ELCO's "we took it seriously"
argument also places the advice of counsel in issue, but the Court disagrees.  The Court
only relied on ELCO's beliefs about the C&D letter and the response of ELCO, not the
response of ELCO's counsel.[8]  Finally, DMF's objections to paragraph 46 are
unpersuasive because DMF does not identify where in the record the Court admitted
testimony that improperly invoked or alluded to the advice of counsel.

DMF's objections to paragraph 31 are not persuasive either.  DMF's objection is
based on testimony by Brandon Cohen that he read the claims of the '266 Patent
"[a]lmost essentially immediately" and that it "jumped out to [him] immediately . . . that
the '266 [P]atent described the IMTRA [prior art reference] in a lot of ways better than it
described the accused item."  TR2 at 21-23.[9]  However, this testimony necessarily did not
invoke or allude to the advice of counsel, because Brandon Cohen stated that he formed
this belief "immediately" upon receiving the letter rather than at the time Brandon Cohen
consulted counsel.  DMF argues that Brandon Cohen immediately consulted with
counsel, but the evidence DMF cites only indicates that Brandon Cohen consulted
counsel on August 9, 2018 about a letter dated August 3, 2018.  Ex. 2 at 11 (reference
number 10280).  Brandon Cohen also explicitly stated that his belief was based on his
familiarity with various prior art references, including the IMTRA item and others, as
well as his review of the '266 Patent and the catalog for DMF's product.  TR1 at 185-86.
Elsewhere, he stated that his beliefs about the invalidity of the '266 Patent were based on

---

[8] For example, DMF relies on <u>Volterra Semiconductor Corp. v. Primarion, Inc.</u>, No. 08-CV-05129-JCS, 2013 WL 1366037,
at *2 (N.D. Cal. Apr. 3, 2013), which concluded that "the introduction of any evidence that Primarion's investigation included
seeking advice of counsel would be sufficient to put that advice in issue and further, would result in unfairness to Volterra to
the extent it would leave the jury with the impression that Primarion relied on the advice of counsel."  Here, the evidence that
ELCO sought the advice of counsel was admitted not for the truth of the matter and not to establish the impression that
ELCO relied on the advice of counsel.

[9] Brandon Cohen also made similar statements at other points his testimony.  For example, he testified that he "was really
surprised [by the '266 Patent] because it really described a lot of items [he] was familiar with."  TR1 at 184.  He later
identified these items as "the IMTRA item," "the LMH2," the "E247," and "the Lithonia disk light," as well as "many other
disk lights very similar to that one . . . ."  <u>Id.</u> at 185-86.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

consultation with Steve Cohen. TR2 at 38-39. At no point did Brandon Cohen state or imply that he was relying on a consultation with counsel for this belief.[10]

DMF next turns to paragraph 32 and a related footnote. The portions of paragraph 32 relying on Brandon Cohen's belief do not support DMF's position for the reasons stated in connection with paragraph 31. DMF also objects to the testimony indicating that ELCO provided certain prior art references to its counsel, and DMF objects to ELCO's response to DMF's C&D letter. See TR2 at 31; Ex. 164. The Court agrees with DMF that the testimony about ELCO's decision to provide prior art references to its counsel should have been excluded because it invokes a communication between ELCO and its counsel. The last sentence of paragraph 32 of the Court's findings of fact and conclusions of law will be modified to omit reference to this evidence. However, this exclusion does not warrant amending the judgment because this evidence was merely cumulative: Brandon Cohen testified elsewhere that he relied on these same prior art references because he was aware of them from his experience in the industry. TR1 at 185-86.[11] As to ELCO's response to the C&D letter, the Court did not err because it admitted this evidence only for a limited purpose, "to provide chronological background and to show Cohen's actions . . . ." Docket No. 739 at 11 ¶ 32 n.7. The Court is not persuaded that ELCO placed the advice of counsel in issue simply because it proffered evidence that it responded to the C&D letter and did so on a particular date. Again, the Court did not rely on the content of that letter, including the legal analysis provided therein, to allow ELCO to rely on a later-developed litigation-inspired defense to avoid willfulness or for any other purpose that would waive the attorney-client privilege.

Next, ELCO objects to the admission of Exhibit 1211 on the basis that it reflected invalidity beliefs formed by consultation with counsel. The Court concluded that this was a "non-privileged communication conveying [ELCO's] invalidity beliefs to suppliers." Docket No. 739 at 11 ¶ 32. However, although DMF has proffered evidence that ELCO's counsel was consulted on the letter, see Ex. 2 at 6-8, the letter is still

---

[10] DMF also argues that the reliance on Brandon Cohen's testimony is inconsistent with the finding that, even if "Brandon Cohen could not remember details from 2018 or could not speak in terms of patent law as a lay witness does not undermine the series of events that occurred in the short window between the letter and the Complaint." Docket No. 739 at 15 ¶ 49. Brandon Cohen's testimony was admissible and sufficiently credible. Although Brandon Cohen was not familiar with patent law jargon, he does have considerable experience with the relevant industry and technology, and the Court finds that he could testify about ELCO's state of mind with respect to the '266 Patent.

[11] To the extent this evidence can be appropriately considered, the testimony DMF objects to does not undermine this view of Brandon Cohen's state of mind. Because ELCO provided these prior art references to its counsel rather than the other way around, ELCO considered these references before it obtained any advice from counsel.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

relevant to ELCO's state of mind independent of any advice from counsel. The Court did not manifestly err in considering it.

The rest of DMF's objections, if any, are unpersuasive because DMF has not adequately identified which testimony was inadmissible or how the Court relied on it in its findings of fact and conclusions of law.

        2.    <u>Materiality of State-of-Mind Testimony Allegedly Related to Advice of Counsel</u>

Even if DMF were correct and all of ELCO's testimony about its state of mind were excluded because it is based on the advice of counsel, this would be a closer case, but the outcome would not change.

As a preliminary matter, the advice of counsel can support a finding of no willfulness. However, "[t]he failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent . . . ." 35 U.S.C. § 298.

Even without evidence of ELCO's state of mind, the second <u>Read</u> factor weighs slightly against willfulness. This factor does not favor a finding of infringement, because although DMF has the burden of proof, it has not presented credible evidence of ELCO's state of mind. For example, DMF presented no evidence of internal ELCO communications reflecting the required state of mind. DMF also presented no evidence that ELCO materially deviated from a relevant standard of behavior in the recessed lighting industry.[12] ELCO's attempts to search for patents its product might infringe,[13]

---

[12] At the oral argument on this motion, DMF argued that it had presented evidence of industry custom. For example, DMF cited an e-mail from Ulite that it "prefer[red]" not to copy other companies' products. TR2 at 87. DMF also noted that certain manufacturers raised concerns that DMF's product was "patent pending." TR1 at 104-05; TR2 at 92. This evidence was not raised in the motion, but even if it were timely, it does not undermine the finding here. The Court is not persuaded that one manufacturer's preference is evidence of a standard of behavior in the industry. DMF's evidence that multiple manufacturers inquired further arguably reflects a standard of behavior, but there is no evidence that ELCO materially deviated from this custom. As explained elsewhere, ELCO did inquire further: it conducted a patent search to determine whether DMF's product was protected by a patent. During its briefing and oral argument, DMF has not cited evidence that any manufacturer refused, or would have refused, to copy a product that was marked "patent pending" after an investigation was completed.

[13] As the Court noted in its findings of fact and conclusions of law, the Court noted that DMF's patent searches "might have been done more precisely." <u>See</u> Docket No. 739 at 14 ¶ 44. However, neither the quantity nor quality of these searches supports the conclusion that ELCO had the necessary state of mind to infringe the '266 Patent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|---|---|---|---|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

and DMF's inconsistent marking practices, also undermine DMF's argument that ELCO had the required state of mind. See Docket No. 739 at 13-14 ¶¶ 43-44. These issues reflect circumstantial evidence that ELCO did not have the required state of mind, even if ELCO could not present direct evidence due to its failure to disclose its communications with counsel.

If the evidence identified in the previous subsection were excluded, this would reduce the weight of the second <u>Read</u> factor. However, the totality of the circumstances would still favor ELCO. The sixth <u>Read</u> factor, which encompasses the extremely short pre-suit notice period, the absence of evidence of post-suit willfulness, and the short time between the filing of this suit and the imposition of the preliminary injunction, strongly weighs against a finding of willfulness. See Docket No. 739 at 17 ¶¶ 56-57. The extremely short pre-suit notice period and the lack of evidence of post-suit willfulness are especially significant. ELCO cannot willfully infringe a patent it does not know about. Even after ELCO learned of DMF's accusations, mere knowledge of those arguments with little time to study the '266 Patent is not sufficient, at least in the present circumstances. The seventh <u>Read</u> factor, which encompasses ELCO's efforts to redesign its products, has a similar effect. See <u>id.</u> at 17-18 ¶¶ 58-59. Most willful infringers have little reason to attempt to redesign their products in response to an accusation of patent infringement because they have specific intent to infringe the asserted patent. Evidence of ELCO's efforts to redesign its products, even without direct evidence of ELCO's thinking in implementing those redesigns, thus undermines DMF's position.

On the other side of the balance, the Court found much of the evidence proffered by DMF difficult to credit. Even when credited, the Court found that it was entitled to little weight. For example, ELCO's copying of DMF's product has little weight because the copying took place several years before the patent issued, and it is entirely permissible to copy products that are not protected by a patent or another form of intellectual property. See <u>id.</u> at 12 ¶ 39. There was also no credible evidence linking the earlier copying to ELCO's later state of mind. See <u>id.</u> at 12-13 ¶ 39. The weight of this initial copying was diminished because ELCO made material changes to its product between the time of copying and the commencement of this suit. See <u>id.</u> at 13 ¶ 40. Next, although DMF presented some evidence of ELCO's motive to take a risk of infringement, the circumstantial evidence suggesting that ELCO might have gone out of business without copying DMF was not especially persuasive. See <u>id.</u> at 18 ¶ 61. Finally, the evidence that ELCO removed DMF's name from the samples it used has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

limited weight because ELCO was unaware of the patent application at this time and the patent did not issue until years later. <u>See id.</u> at 19 ¶¶ 65, 67. The Court also incorporates by this reference the discussion in section III.B, which explains why several of DMF's arguments are unpersuasive.

For each of the foregoing reasons, the exclusion of the testimony challenged by DMF would not require an alteration in the judgment.

### 3. Other State-of-Mind Issues

Here, DMF has raised two sub-issues. First, it contends that only Steve Cohen's state of mind is relevant and that he has not testified as to a belief about the '266 Patent's invalidity. Docket No. 750-2 at 22-24. Second, it argues that its C&D letter did not contain a proposed claim construction and that nobody at ELCO relied on any such construction. <u>Id.</u> at 24.

The Court begins with the first issue. DMF's argument that only the beliefs of executives with decision-making authority are relevant is unpersuasive. DMF relies on <u>Harris Corp. v. Ericsson Inc.</u>, 417 F.3d 1241, 1259 (Fed. Cir. 2005). In <u>Harris</u>, the Federal Circuit found that "substantial evidence" "provided the jury with some basis for believing that [the defendant] ignored the opinion of counsel it received regarding the [asserted] patent; that the opinion was simply a rehashing of [the defendant's] own internal conclusions on noninfringement, without independent verification by opinion counsel; and that [the defendant] failed to convey accurate information to its opinion counsel." <u>Id.</u> One of the pieces of relevant evidence was the absence of testimony "confirm[ing] that any executive with decision-making authority . . . had ever relied on the opinion." <u>Id.</u> Nevertheless, the Federal Circuit noted that "the responsibilities of those who received the opinion are not dispositive of whether [the defendant] 'ignored' the opinion . . . ." <u>Id.</u> Thus, <u>Harris</u> does not support DMF's positions for two reasons. First, by emphasizing that the responsibilities of those who received the opinion are not dispositive, <u>Harris</u> shows that the relevant state of mind is not limited to a narrow class of executives. Second, <u>Harris</u> merely found that the failure to circulate counsel's opinion to upper management gave the jury some basis for believing that the defendant ignored that opinion. The Federal Circuit did not hold that the jury was compelled to find that the defendant ignored the opinion, nor did it hold that the jury would be compelled to find willfulness even if the defendant had ignored the opinion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

The Court also declines DMF's invitation to establish bright-line rules about which individuals' state of mind is relevant because the Federal Circuit has held that the totality of the circumstances governs. See Liquid Dyns. Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1225 (Fed. Cir. 2006).

Nor is the Court persuaded that Brandon Cohen's testimony is irrelevant because Steve Cohen played a greater role in deciding how to respond to DMF's allegations. Brandon Cohen testified that Steve Cohen would typically make a decision like whether to keep selling the ELL module and could not remember whether the two of them had discussed the issue. TR2 at 55. Brandon Cohen also testified that he and Steve Cohen together made the decision to change the design. Id. at 54. In addition, Brandon Cohen also testified that the two of them conferred about the validity of the '266 Patent and came to the conclusion that it was invalid. Id. at 38-41. There is little, if any, reason to stop selling a product that might infringe an invalid patent or that has been redesigned to avoid infringing a potentially valid patent. Once invalidity or infringement has been resolved, there is not much more to discuss about whether to continue selling the design. As a result, Brandon Cohen's inability to remember whether he was specifically consulted about continuing to sell the ELL module carries little weight given the other testimony that Brandon Cohen was involved in determining ELCO's position on validity and infringement.

DMF objects that ELCO proffered no testimony from Steve Cohen. But DMF ignores that it has the burden of proof. DMF could have called him as an adverse witness but chose not to. In its findings of fact and conclusions of law, the Court did not draw any conclusions either way about Steve Cohen's state of mind. For the reasons already explained, Brandon Cohen had sufficient personal knowledge to testify competently and credibly on the relevant issues.

DMF also contends that there is insufficient evidence that Brandon Cohen was an executive at ELCO. DMF provided testimony that both Steve Cohen and Brandon Cohen were "higher management," which the Court found credible. See TR1 at 130. Even though the witness was not privy to discussions between the Cohens and could not be sure which of them decided whether ELCO should continue selling its product, this does not undermine the witness' knowledge of the Cohen's roles at ELCO, which was based on his 20 years of experience at ELCO and his role as head of the Engineering Department at ELCO. See id. at 81. This testimony was sufficient to support an inference that Brandon Cohen was an executive. DMF argues that this testimony used

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|---|---|---|---|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

the phrase "higher management," rather than "officer," "director," or "executive." The Court is not persuaded that this is a material distinction. Even if Brandon Cohen had not been an executive, the other evidence cited here was sufficient to make his testimony competent and credible evidence of ELCO's state of mind. As noted above, <u>Harris</u> did not hold that the relevant states of mind were those of executives with decision-making authority. For similar reasons, it is not material that Brandon Cohen was not ELCO's Director of Operations or sales manager. <u>Id.</u> at 134-35, 178. Executives may fill roles other than these two. Finally, DMF argues that certain Brandon Cohen's statements were deemed "not attributable" to ELCO in an IPR proceeding. In that matter, it was determined that Brandon Cohen made those statements "in his individual capacity" rather than on behalf of the company. <u>AMP Plus, Inc. v. DMF, Inc.</u>, No. IPR2019-01094, 2020 WL 4680045, at *1 (P.T.A.B. Aug. 12, 2020). Even assuming that the PTAB's finding is binding here, that conclusion was based on the PTAB's finding that Brandon Cohen was not acting for ELCO at all, not a finding that Brandon Cohen was acting as a non-executive employee. Thus, the IPR does not support DMF's position that Brandon Cohen's beliefs cannot be attributable to ELCO.

DMF argues that the Court erroneously found that ELCO took remedial action based on a claim construction in DMF's C&D letter even though that letter contained no proposed construction and there was no testimony that ELCO relied on such a construction.[14] In its findings of fact and conclusions of law, the Court did hold that "ELCO took remedial action after receiving the cease-and-desist letter from DMF by 'immediately' changing its design based on the specific infringement allegations and proposed claim construction in the letter." Docket No. 739 at 17 ¶ 58. That letter described DMF's infringement contentions in detail. Ex. 159 at 4-9. It also indicated that "[t]he LED light source is positioned closer to the rear end of the aluminum casting than the open front end of the casting." <u>Id.</u> at 7. "Proposed claim construction" was perhaps the wrong word for this statement, but this statement explained the basis for DMF's position that the ELCO ELL module satisfied the "closer to" limitations in the '266 Patent.

DMF asserts that no ELCO witness explicitly stated that they relied on this statement. However, the record provides sufficient evidence that ELCO did so rely. ELCO proffered testimony that it made changes to the ELL module to get away from the

---

[14] Error, as distinguished from manifest error, is not a basis for relief under Fed. R. Civ. P. 52 and 59. Nevertheless, for the reasons explained here, the Court did not err.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                      **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title    | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

'266 Patent.  TR1 at 123-24.  ELCO also proffered testimony that it began the redesign immediately after receiving the cease and desist letter.  TR2 at 47-48.  ELCO also offered evidence that ELCO instructed a vendor that ELCO "need[ed] the LED chip [to] be at [the] midpoint from [the] top of the [c]ell to [the] bottom," which appears to reflect an attempt to design the product so the LED light source would not be closer to the rear end of the aluminum casting than the front end.  See Ex. 1279 at 2.[15]  Based on this evidence, it was proper to find that ELCO's redesign efforts were directed at responding to DMF's letter, whether the statements therein are more accurately characterized as infringement allegations or claim constructions.

DMF's final argument is that ELCO provided discovery and 30(b)(6) testimony on its contentions as to this claim limitation and ELCO did not identify any statement in the cease-and-desist letter.  However, none of the evidence cited by DMF was introduced at trial, and all of this evidence pertained to ELCO's position in this litigation rather than to the basis for its redesign.  See Docket No. 638-2 at 101-02; see also TR2 at 47-48 (explaining that ELCO undertook the redesign to avoid DMF's allegations even though it believed its product did not infringe).

### D. Willfulness Time Frame

#### 1.   Pre-Suit Willfulness

DMF argues that 12 days of pre-suit notice was sufficient as a matter of both fact and law.  Docket No. 750-2 at 24.  Specifically, DMF argues that: (1) ELCO provided no evidence that it needed additional time to analyze the '266 Patent; (2) ELCO provided no evidence that it needed additional time to consult with counsel; (3) the Court's ruling on willfulness conflicts with the principle that patents are presumed valid; and (4) the Court's ruling on willfulness is inconsistent with Power Lift, Inc. v. Lang Tools, Inc., 774 F.2d 478, 482 (Fed. Cir. 1985).

DMF's position is unpersuasive for two preliminary reasons.  First, the first two arguments invert the burden of proof.  Although it is appropriate to evaluate ELCO's arguments and the evidence it did (and did not) submit, it is not ELCO's burden to proffer evidence of non-willfulness.  Second, as before, DMF has argued that the Court erred in its findings of fact and conclusions of law, but DMF has not tied its argument to

---

[15] That is not to say that ELCO's efforts were successful, only that ELCO's efforts reflect remedial intent rather than willful infringement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|---|---|---|---|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

the narrow circumstances where Fed. R. Civ. P. 52 and 59 afford relief. However, this
deficiency is ultimately immaterial because the Court did not commit any legal or factual
error in concluding that 12 days of pre-suit was insufficient here.

In support of its first argument, DMF cites testimony by Brandon Cohen that he
read the claims of the '266 Patent "[a]lmost essentially immediately" and that it "jumped
out to [him] immediately . . . that the '266 [P]atent described the IMTRA [prior art
reference] in a lot of ways better than it described the accused item." TR2 at 21-23.
DMF also contends that ELCO knew about the IMTRA reference for years prior to
receiving the C&D letter.[16]

However, the Court never held that the 12-day notice period precluded ELCO from
evaluating the letter at all. It merely held that DMF's letter, which demanded a response
within 7 days, forced ELCO to make a "quick determination" and rejected the argument
that "any analysis and beliefs formed by ELCO during this short timeframe had to be
bulletproof . . . ." Docket No. 739 at 14 ¶¶ 45, 47. Similarly, the Court held that "ELCO
could have addressed the issues of infringement, invalidity, and any number of other
issues in more detail" but "the relevant pre-suit notice period of 12 days does not demand
perfection." Id. at 15 ¶ 48. Finally, the Court noted that there is no "universal rule that to
avoid willfulness one must cease manufacture of a product immediately upon learning of
a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of
suit." Id. at 15 ¶ 50 (quoting Gustafson, Inc. v. Intersys. Indus. Prods., Inc., 897 F.2d
508, 511 (Fed. Cir. 1990)).

Based on this evidence, DMF's position is unpersuasive. It is true that no ELCO
witness identified with particularity the additional steps ELCO would have taken if given
more time. It is also true that ELCO knew about at least one of the prior art references it
relied on for years prior to receiving the cease and desist letter. However, these facts
have marginal probative value. The Court considered the number of limitations in the
claims in the '266 Patent, the complexity of much LED technology, and the totality of the
circumstances, as well as its own common sense, in determining that a full analysis of the
'266 Patent would require substantially more than 12 days. Even if Brandon Cohen
noticed immediately that the '266 Patent seemed to describe the IMTRA reference, DMF
has presented no evidence that Brandon Cohen had memorized the relevant details of the

---

[16] DMF has not cited trial testimony to support this portion of its argument, but this fact is assumed to be true for purposes of
this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|---|---|---|---|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

IMTRA reference. This is true even if Brandon Cohen, or others at ELCO, had learned about the IMTRA reference years before. A more detailed comparison was therefore necessary. And even if ELCO could have evaluated the IMTRA reference within the notice period, ELCO reasonably needed time to investigate other prior art references and other invalidity issues and infringement. Indeed, the record reflects that ELCO's invalidity position was not solely based on the IMTRA reference; it also relied on the CREE LMH2 LED Module, the Lithonia LED Versi Lite, and the E247 Assembly. TR1 at 185-86; Ex. 164 at 4, 9.[17]

For the same reasons, it is not material that ELCO consulted with patent counsel during the 12-day period.[18] The fact that ELCO's counsel were able to accomplish some analysis during that period does not undermine any of the findings or conclusions addressed in this subsection.

DMF argues that the Court's findings and conclusions permitted ELCO to presume that the '266 Patent is invalid until it had sufficient time to believe otherwise, when in litigation, patents are presumed valid. DMF cites the Federal Circuit's holding that "a person having knowledge of an adverse patent has an affirmative duty to exercise due care to avoid infringement of a presumptively valid and enforceable patent." SRI Int'l, Inc. v. Advanced Tech. Lab'ys, Inc., 127 F.3d 1462, 1464 (Fed. Cir. 1997). SRI held that "precedent displays the consistent theme of whether a prudent person would have had sound reason to believe that the patent was not infringed or was invalid or unenforceable, and would be so held if litigated." Id. at 1465. Thus, in SRI, the Federal Circuit

---

[17] Here, Exhibit 164 is relied on only to obtain the proper names of the products at issue.

At the oral argument in this matter, DMF cited evidence that Brandon Cohen accessed a catalog describing the IMTRA product "within a few days" and was able to inspect a physical sample of the IMTRA product "at the time" he received the C&D letter. See TR1 at 190; TR2 at 19. DMF also cited evidence that Brandon Cohen immediately connected the E247 with the '266 Patent. See TR2 at 18-19. DMF also cited evidence that ELCO was "very familiar" with the CREE LMH2. Id. at 29-30. DMF also cited evidence that ELCO was aware of the Lithonia prior art reference. Id. at 35. Even if timely presented, this testimony does not warrant a different result. There has not been sufficient evidence that the catalog contained all the relevant details of the IMTRA product, and the testimony that Brandon Cohen accessed the catalog "within a few days" is insufficient to establish how early in the 12-day period ELCO had access to this information. The testimony about the time that Brandon Cohen inspected the sample IMTRA product is equally vague. In addition, even if ELCO had access to all the relevant information before DMF filed suit, that does not show that ELCO had sufficient time to analyze that information. Likewise, evidence that ELCO was familiar with the other prior art references does not show that it had access to the necessary information during the 12-day period or that ELCO had sufficient time to evaluate the references.

[18] The Court notes that there is some tension between DMF's position that it can rely on the fact that ELCO retained counsel to respond to show its pre-suit notice period was sufficient and its position that ELCO cannot rely on the same evidence. However, it is assumed for purposes of this subsection that DMF is able to rely on this evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

evaluated the accused infringer's overall conduct, and it did not require an accused infringer to shutter its doors until it has time to fully analyze the asserted patent. Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1343 (Fed. Cir. 2004) is similar: it bars accused infringers from "flagrant disregard of presumptively valid patents without analysis" but it also does not require that the accused infringer drop everything until the invalidity analysis is complete. In practice, DMF's position would create a rule that "to avoid willfulness [the accused infringer] must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit." Gustafson, Inc. v. Intersys. Indus. Prod., Inc., 897 F.2d 508, 511 (Fed. Cir. 1990). Gustafson rejected such a rule, holding that "a party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer." Id.

DMF's argument is especially unpersuasive here, where Brandon Cohen testified that he spotted the potential invalidity issue almost immediately and only needed additional time to refine that analysis. See TR2 at 21-23. In other words, even if accused infringers were required to apply the same burden-of-proof framework applicable in litigation, DMF has not presented evidence that ELCO presumed the patent invalid.

Finally, the Court's ruling on willfulness is not undermined by Power Lift, Inc. v. Lang Tools, Inc., 774 F.2d 478, 482 (Fed. Cir. 1985). In Power Lift, the lawsuit was filed only 9 days after the accused infringer had notice of the asserted patent. Id. DMF therefore reasons that a 12-day notice period was sufficient here. Power Lift is distinguishable, however. In Power Lift, the defendant was called by phone and offered a license and the defendant immediately responded that "before he would pay [plaintiff] a nickel, he'd see [plaintiff] in the courthouse[.]" Id. Here, as already stated, there was no similar evidence that ELCO would not even attempt to analyze the validity or infringement of the '266 Patent. Power Lift is also distinguishable because it merely held that, in that case, a 9-day notice period was sufficient evidence for a jury verdict of willfulness; it did not hold that a 9-day notice period was necessarily sufficient. Indeed, willfulness depends on the totality of the circumstances. Here, for the reasons stated in this Order and the Court's findings of fact and conclusions of law, the short notice period weighs significantly against a finding of willfulness.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

### 2.   Post-Suit Willfulness

DMF argues that the Court erred in failing to consider evidence of post-suit willfulness.  Docket No. 750-2 at 26-28.  In the alternative, DMF seeks leave to amend its Complaint to add allegations of post-suit willfulness.  Id. at 28.  ELCO responds that the Court properly determined that evidence of post-suit willfulness could not establish willfulness, that the Court found that DMF's evidence did not support a finding of post-suit willfulness, and that leave to amend should be denied at this stage.  Docket No. 756 at 27-32.

As an initial matter, the Court found that "the evidence presented at trial does not support a finding of post-suit willfulness."  Docket No. 739 at 17 ¶ 57 n.12.  The instant motion argues that the Court erred by concluding that willfulness had to be grounded exclusively in prefiling conduct.  However, DMF does not address the Court's alternative finding that there was no post-suit willfulness, even if post-suit willfulness had been relevant.  See Docket No. 750-2 at 26-28; Docket No. 759 at 29.  Here, "ELCO took remedial action after receiving the cease-and-desist letter from DMF by 'immediately' changing its design based on the specific infringement allegations and proposed claim construction in the letter."  Docket No. 739 at 17 ¶ 58 (citing TR1 at 127-28, TR2 at 47-48, Ex. 1279 at 2).  These efforts undermine DMF's position that ELCO willfully infringed after the lawsuit was filed.  The finding that there is insufficient evidence of post-suit willfulness is sufficient to dispose of this issue.

In addition, the portion of the Court's analysis targeted by DMF contains no manifest error.  The Court concluded that "[w]illfulness 'must necessarily be grounded exclusively in the accused infringer's prefiling conduct.'"  Docket No. 739 at 7 ¶ 16 (quoting Soteria Encryption, LLC v. Lenovo United States, Inc., No. CV 16-7958-GW(JPRx), 2017 WL 3449058, at *3 (C.D. Cal. Feb. 27, 2017)).  The Court also concluded that a "lack of pre-suit 'knowledge of the patents is fatal to [a] willfulness claim[.]"  Id. (quoting Finjan, Inc. v. Cisco Sys. Inc., NO. 17-CV-00072-BLF, 2017 WL 2462423, at *4 (N.D. Cal. June 7, 2017)).

DMF seeks to distinguish Soteria because the plaintiff there had no basis for pleading alleging willful infringement in the original complaint, so Soteria only held that "a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct."  Soteria, 2017 WL 3449058, at *3 (emphasis added).  DMF's attempt to distinguish Soteria fails because DMF never

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title    | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

moved to amend its pleadings to allege post-filing conduct that could constitute
willfulness.

DMF next relies on <u>Gustafson</u> for the principle that a finding of willfulness cannot
be based on post-suit conduct.  That is true in some cases, but <u>Gustafson</u> does not support
DMF here.  Generally, "a party may continue to manufacture and may present what in
good faith it believes to be a legitimate defense without risk of being found on that basis
alone a willful infringer." 897 F.2d at 511.  Likewise, "[t]hat such a defense proves
unsuccessful does not establish that infringement was willful."  <u>Id.</u>  However,
"[p]resentation in bad faith of a totally unsupportable, frivolous defense . . . may, in light
of all the circumstances, also constitute some evidence that continued infringement was
willful."  <u>Id.</u>  When "[t]here is no finding . . . that [the defendant's] defenses were
frivolous . . . coupled with [the defendant's] simultaneous receipt of knowledge of the
patent and a court summons, [this] precludes a finding of willfulness."  <u>Id.</u>  Although
DMF gave ELCO some pre-suit notice, "the Court [found] that the 12-day notice period
afforded in this case was akin to a token ambush letter followed by filing suit."  This
notice period is not much more than the "simultaneous receipt of knowledge of the patent
and a court summons" described in <u>Gustafson</u>.  And here, there has been no showing that
ELCO's position was frivolous.  In its briefing, DMF does not argue that ELCO's
position was frivolous, at worst arguing that this case was "not close to being a close
case."  Docket No. 750-2 at 10.[19]  <u>Gustafson</u> may not preclude a finding of willfulness
here, because there was a short pre-suit notice period and because certain of ELCO's
defenses were weak.  But <u>Gustafson</u> certainly supports a finding that ELCO did not
willfully infringe.

Next, DMF cites three district court cases suggesting a plaintiff can plead
willfulness based exclusively on post-suit knowledge.  <u>Softex LLC v. HP Inc.</u>, No. 1:22-
CV-1311-RP, 2023 WL 2392739, at *2 (W.D. Tex. Mar. 7, 2023) found that, "[i]n the
absence of Federal Circuit authority[,] . . . [the plaintiff's] complaint and claim charts
sufficiently support its claim for post-suit willfulness to survive a motion to dismiss[.]"
However, <u>Softex</u> "acknowledge[d] the reasonable concerns that have been expressed by
courts outside the Western District of Texas about allowing a willfulness claim to

---

[19] For the first time at oral argument, DMF contended that ELCO's position was frivolous.  This argument was not timely
presented as part of the motion.  But even if it were, the Court is not persuaded that ELCO's position was in fact frivolous.
The Court found that position unpersuasive at the time of the preliminary-injunction hearing, and ELCO was unsuccessful
during the IPR, but <u>Gustafson</u> remains dissimilar.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|---------------------------|------|-----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

proceed without detailed supporting facts." Id. Softex also indicated that the post-suit willfulness claim "may not stand," including "if discovery fails to produce facts that would support a finding of willfulness."[20] In IOENGINE, LLC v. PayPal Holdings, Inc., No. CV 18-452-WCB, 2019 WL 330515, at *7 (D. Del. Jan. 25, 2019), the plaintiff was not required to plead allegations "beyond knowledge of the patent and continuing infringement despite that knowledge." Ravgen, Inc. v. Ariosa Diagnostics, Inc., No. CV 20-1646-RGA-JLH, 2021 WL 3526178, at *2 (D. Del. Aug. 11, 2021) also followed the holding of IOENGINE, finding it sufficient that the amended complaint "pleads that [the defendant] has continued to willfully infringe since the original complaint was filed."

Many other district courts, especially in California, disagree with Softex and the other cases cited in the previous paragraph. See, e.g., Ravgen, Inc. v. Quest Diagnostics Inc., No. 221CV09011RGKGJS, 2022 WL 2047613, at *3 (C.D. Cal. Jan. 18, 2022) (acknowledging split of authority but concluding that "a claim of willful infringement, as pled in an original complaint, cannot be grounded in a prediction of defendant's post-suit actions" pursuant to Fed. R. Civ. P. 11); Lashify, Inc. v. Urb. Dollz LLC, No. CV 22-6148-GW-AFMX, 2022 WL 18278638, at *4 (C.D. Cal. Dec. 13, 2022); Playvuu, Inc. v. Snap, Inc., No. CV 22-6019-GW-PDX, 2022 WL 18359097, at *7 (C.D. Cal. Nov. 15, 2022); Maxell, Ltd. v. VIZIO, Inc., No. CV 21-6758-GW-DFMX, 2022 WL 2167619, at *18 (C.D. Cal. Mar. 9, 2022); Finjan, Inc. v. Cisco Sys. Inc., No. 17-CV-00072-BLF, 2017 WL 2462423, at *4 (N.D. Cal. June 7, 2017).

The Court continues to agree with the reasoning of the majority of other courts in this District. Even after Halo, the Federal Circuit has explained that "in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct" because "a patentee must have a good faith basis for alleging willful infringement." Mentor Graphics Corp. v. EVE-USA, Inc., 851 F.3d 1275, 1295 (Fed. Cir. 2017) (quoting In re Seagate Tech., LLC, 497 F.3d 1360, 1374 (Fed. Cir. 2007), abrogated on other grounds by Halo, 579 U.S. at 105); see also Pavo Sols. LLC v. Kingston Tech. Co., Inc., 35 F.4th 1367, 1378 (Fed. Cir. 2022) ("The proper time to assess willfulness is at the time the infringer received notice . . . , making the relevance of later developments . . . questionable at best.") (quoting Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1276

---

[20] DMF argues that Softex reflects the majority position, relying on a citation in Softex to Therabody, Inc. v. Tuzmi Elecs. LLC, No. 21CV7803PGGRWL, 2022 WL 17826642, at *10 (S.D.N.Y. Dec. 19, 2022). However, Therabody only reflected "allegations of post-filing willful infringement in an amended complaint . . . ." Id. (emphasis added). There is no amended complaint here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

(Fed. Cir. 1999)).  At the commencement of a litigation where the defendant has no or minimal prior notice of the asserted patent, it is speculative to assert that the defendant will decide to engage in willful infringement rather than ceasing production or raising an appropriate defense to liability.  In other words, "a plaintiff cannot yet have a 'good faith basis for alleging willful . . . infringement based on post-suit conduct that has not yet occurred."  Quest, 2022 WL 2047613, at *3 (quoting Bush v. Seismic Techs. LLC v. Am. Gem Soc., Case No. 2:14-cv-1809-JRG, 2016 WL 9115381, at *3 (E.D. Tex. Apr. 13, 2016)).  Moreover, the defendant "may simply 'subjectively believe[] the plaintiff's patent infringement action has no merit" and "[i]t seems beyond the pale to expect every patent defendant to 'cease all allegedly infringing conduct once a complaint is filed' to force them to avoid enhanced damages for willful infringement."  Id. (quoting Slot Speaker Techs., Inc. v. Apple, Inc., Case No. 13-cv-01161-HSG, 2017 WL 4354999, at *2 (N.D. Cal. Sept. 29, 2017)).  Consistent with these principles, "a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct."  Soteria, 2017 WL 3449058.

        3.      <u>Leave to Amend</u>

        The Court further concludes that leave to amend to address post-suit willfulness would not be appropriate.  As explained in the previous subsection, leave to amend would be futile because there was insufficient evidence of post-suit willfulness.  Nor has DMF satisfied the relevant requirements.

        "If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended."  Fed. R. Civ. P. 15(b)(1).  "The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits."  Id.

        Notwithstanding the foregoing, "[o]nce [a] district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings that rule's standards control[]."  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992).  "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  Id. at 609.  Thus, a district court "may modify the pretrial schedule 'if it cannot reasonably be met despite

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|---|---|---|---|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

the diligence of the party seeking the extension.'" Id. (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)). "If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." Zivkovic v. S. California Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting Johnson, 975 F.2d at 609). Courts apply the Rule 16 analysis even after trial, and neither party has offered any reason why it would not apply here. Merrill v. Cnty. of Madera, No. 1:05-CV-0195 AWI SMS, 2007 WL 4365579, at *11 (E.D. Cal. Dec. 11, 2007), aff'd, 389 F. App'x 613 (9th Cir. 2010).

Here, DMF has not shown diligence. DMF does not argue that it was diligent. The gravamen of its post-suit willfulness theory is simply that ELCO has allegedly continued to infringe the '266 Patent. See Docket No. 750-2 at 27-28. Although this theory could not have been pled immediately after the complaint was filed in 2018, this theory certainly could have been pled soon after March 7, 2019, when the Court granted DMF's motion for a preliminary injunction. See Docket No. 147. DMF's failure to raise post-suit willful infringement in its interrogatories supports this finding. The interrogatory response in the record describing DMF's willful infringement contentions mentions no post-suit conduct. Docket No. 703-3 at 3-4; Ex. 1615 at 22-23 (same). DMF has not argued that it supplemented this response to add the relevant information. See Docket No. 750-2 at 27-28. DMF instead contends that it argued, in discovery, during the preliminary-injunction process, at summary judgment, and in its interrogatories, that ELCO's redesigned products, which were only sold after the filing of the complaint, infringed the '266 Patent. DMF's position is unpersuasive because infringement is not sufficient to show willful infringement. Even if DMF adequately disclosed its contention that the redesigned products infringed, it did not adequately disclose its contention that this conduct was willful infringement. See Docket No. 703-3 at 3-4; Ex. 1615 at 22-23. DMF also argues that ELCO amended its declaratory judgment counterclaims, seeking a declaration alleging that none of its products, including ongoing sales, were willful infringements. Docket No. 750-2 at 28. However, ELCO's counterclaims do not place ELCO on notice of DMF's theories. Likewise, ELCO's failure to raise this deficiency before the recent pretrial proceedings does not suggest that DMF was diligent. See id.

Because DMF's requested amendment is not permissible under Fed. R. Civ. P. 16(b), and because the requested amendment would be futile even if it were permitted, leave to amend is not proper.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

## IV.  CONCLUSION

In accordance with the foregoing, the Court DENIES DMF's motion to alter or amend the judgment or, in the alternative, for a new trial.  However, although no revisions are necessary to the judgment, the following revisions are made to the Court's findings of fact and conclusions of law:

Paragraph 15 is replaced with the following:  "Under *Halo*, the concept of "willfulness" requires [the trier of fact] to find no more than deliberate or intentional infringement."  Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc., 946 F.3d 1367, 1378 (Fed. Cir. 2020).  "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."  Id. (quoting Halo Elecs., Inc. v. Pulse Elecs., Inc., 579 U.S. 93, 105 (2016)).  In other words, "[t]o establish willfulness, the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct."  Bayer Healthcare LLC v. Baxalta Inc., 989 F.3d 964, 987 (Fed. Cir. 2021).

Paragraph 68 is replaced with the following:  After considering the above, non-exclusive factors in the context of the totality of the circumstances presented at trial, the Court finds that DMF has not proven by a preponderance of the evidence that ELCO deliberately or intentionally infringed the '266 Patent, or that ELCO had specific intent to infringe at the relevant time.  See Eko, 946 F.3d at 1378; Bayer, 989 F.3d at 987.

Paragraph 21 and the last sentence of paragraph 50 are withdrawn.

The last sentence of paragraph 32 is replaced with the following:  ELCO responded to DMF's letter on September 21, 2018, contending that the '266 Patent was invalid.  Tr. Ex. 164.[7]

///

///

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:18-CV-07090-CAS (GJSx) | Date | April 25, 2024 |
|----------|--------------------------|------|----------------|
| Title | DMF, INC. V. AMP PLUS, INC., ET AL. | | |

Further, the Court sets a Final Pretrial Conference in this matter for May 20, 2024, at 11:00 a.m. The parties shall comply with the Local Rules of this District, and the instructions on the Court's webpage, regarding preparation for trial. The Court sets a trial in this matter for June 25, 2024, with counsel to appear at 8:30 a.m. The Court reminds the parties that they must complete their trial presentations within the remaining time: 2 hours 53 minutes for DMF and 2 hours 28 minutes for ELCO. See Docket No. 741.

IT IS SO ORDERED.

|  |  | 00 | : | 00 |
|--|--|----|---|----|
| | Initials of Preparer | | CMJ | |