O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DMF, Inc.,<br><br>                              Plaintiff,<br><br>            – v. –<br><br>AMP Plus, Inc. d/b/a ELCO Lighting,<br>and ELCO Lighting Inc.,<br><br>                              Defendants. | No. 2:18-cv-07090-CAS-GJSx<br><br>**[UNDER SEAL] RULING ON THE PARTIES' POST-JUDGMENT MOTIONS [891, 901, 910, 920, 926, 927, 934, 938]**<br><br>**[UNDER SEAL]** |

## I.    INTRODUCTION AND BACKGROUND

DMF, Inc. ("DMF" or "Plaintiff") brought this patent infringement action against AMP Plus, Inc. d/b/a ELCO LIGHTING and ELCO Lighting, Inc. ("ELCO" or "Defendants," generally, or "AMP Plus" and "ELI," only when it is necessary to discuss both entities separately) on August 15, 2018. Complaint, Docket No. 1. DMF alleged that ELCO's light emitting diode ("LED") products infringe U.S. Patent No. 9,964,266 (the "'266 Patent"). See id. ¶ 119. After a bench trial regarding infringement, damages, and invalidity, the Court determined that AMP Plus infringed Claims 1, 2, 4-8, and 13-15 of the '266 Patent and that DMF is entitled to $15,940.60 in damages for AMP Plus's infringement. Findings of Fact and Conclusions of Law ("FFCL"), Docket Nos. 829, 831 (sealed) § VI, ¶¶ 1-2.[1] The Court then entered a Final Judgment and Permanent Injunction. Final Judgment and Permanent Injunction, Docket No. 885. The injunction prevents AMP Plus from "making, using, selling, offering to sell, and importing into the United States Versions 1, 2, and 3 of the Residential ELL LED Module products and any products not more than colorably different from these products." Id. ¶ 8.

The parties filed several post-judgment motions and requests concerning fees, costs, alteration of the judgment, as well as requests to strike certain material:

- ELI's Application to Tax Costs (Appl., Docket No. 890; Obj., Docket No. 909; Resp., Docket No. 916)
- AMP Plus's Motion for Costs Pursuant to Fed. R. Civ. P. 68 and L.R. 54-8 (Motion, Docket No. 891; Opp'n, Docket Nos. 894, 899 (sealed); Reply, Docket Nos. 911, 917 (sealed))
- DMF's Application to Tax Costs (Appl., Docket No. 892; Obj., Docket No. 897; Resp.; Docket No. 904)
- DMF's Motion for Attorneys' Fees Under 35 U.S.C. § 285 (Motion, Docket Nos. 901, 906 (sealed); Opp'n, Docket Nos. 942, 947 (sealed); Reply, Docket No. 962)

---

[1]    The Court also made other rulings in its findings of fact and conclusions of law following both the bench trial concerning liability and damages and the bench trial concerning willful infringement. See generally, FFCL and Willfulness Findings, Docket No. 739. Those rulings are incorporated here by this reference to the extent necessary to resolve any of the pending motions or requests.

- DMF's Motion Under Rule 52(b) that DMF is the Prevailing Party on Defendant ELI's Declaratory Judgment Counterclaims (Motion, Docket No. 910; Opp'n, Docket No. 923)
- AMP Plus's Motion to Strike Argument from DMF's Davidson Declaration in Support of DMF's Motion for Attorneys' Fees (Motion, Docket No. 920; Opp'n, Docket No. 952; Reply, Docket No. 957)
- AMP Plus's Motion to Alter Judgment Under Rule 52(b) and 60(b) (Motion, Docket No. 926)
- AMP Plus's Motion to Alter Judgment Under Rule 52(b) and 60(b) (Motion, Docket Nos. 927; Memo in Support, Docket No. 927-1; Opp'n, Docket No. Docket; Reply, Docket No. 963)
- DMF's Motion to Strike Mediation Privileged Communications Submitted with ELCO's Motion for Costs (Motion, Docket Nos. 934, 940 (sealed); Opp'n, Docket Nos. 950, 956 (sealed); Reply, Docket Nos. 958, 960 (sealed))
- DMF's Motion to Amend Judgment Based on New Federal Circuit Ruling on Claim 22 (Motion, Docket No. 938; Memo in Support, Docket No. 938-1; Opp'n, Docket No. 948; Reply, Docket No. 961)

A hearing was held on May 19, 2025.  The Court rules as follows:

- The Objections to ELI's Application to Tax Costs (Docket No. 909) are **MOOT**.
- AMP Plus's Motion for Costs (Docket No. 891) is **GRANTED**.
- The Objections to DMF's Application to Tax Costs (Docket No. 897) are **OVERRULED** and **SUSTAINED** as indicated below.
- DMF's Motion for Attorneys' Fees (Docket Nos. 901, 906 (sealed)) is **DENIED**.
- DMF's Motion Under Rule 52(b) that DMF is the Prevailing Party on Defendant ELI's Declaratory Judgment Counterclaims (Docket No. 910) is **WITHDRAWN**.
- AMP Plus's Motion to Strike Argument from DMF's Davidson Declaration (Docket No. 920) is **DENIED AS MOOT**.
- AMP Plus's Motion to Alter Judgment Under Rule 52(b) and 60(b) (Docket Nos. 626 and 627) is **DENIED**.
- DMF's Motion to Strike Mediation Privileged Communications (Docket Nos. 934, 940 (sealed)) is **GRANTED**.
- DMF's Motion to Amend Judgment Based on New Federal Circuit Ruling (Docket No. 938) is **DENIED**.

## II.    MOTIONS AND REQUESTS CONCERNING COSTS

### A. Legal Standards

#### 1. Rule 68

A Rule 68 offer of judgment "is essentially a settlement offer," which plaintiff may accept any time within fourteen days of receiving it. <u>Kubiak v. Cnty. of Ravalli</u>, 32 F.4th 1182, 1185 (9th Cir. 2022). If the offeree ultimately wins a judgment that is not more favorable than the Rule 68 offer of judgment made by the offeror and refused by the offeree, the offeree is obligated to pay the offeror's costs incurred after the offer was extended. Fed. R. Civ. P. 68. Rule 68 offers of judgment are settlement offers analyzed according to the ordinary rules of contract construction. <u>Herrington v. Cnty. of Sonoma</u>, 12 F.3d 901, 907 (9th Cir. 1993) (citations omitted).

#### 2. Costs

Under Fed. R. Civ. P. 54(d)(1), the prevailing party in an action may ordinarily recover its costs. <u>See also</u> C.D. Cal. L.R. 54-1. "The losing party must show why costs should not be awarded." <u>Save Our Valley v. Sound Transit</u>, 335 F.3d 932, 945 (9th Cir. 2003) (citation omitted). District courts have discretion to deny costs but must explain the reasons for the denial. <u>See id</u>.

#### 3. Mediation Privileged Communications

The Mediation Privilege Order (Docket No. 167) in this case provides "that, unless otherwise mutually agreed to in writing by all Parties, all documents (including drafts) and communications (oral or written) made specifically for purposes of this mediation shall remain confidential and such documents and communications shall not be discoverable or admissible in this or any other proceeding involving the Parties or anyone else." Courts strike mediation privileged communications submitted in support of post-trial motions. <u>See e.g.</u>, <u>Rutherford v. Palo Verde Health Care Dist.</u>, No. EDCV1301247JAKSPX, 2016 WL 11756792, at *18 (C.D. Cal. Aug. 23, 2016) (striking mediation communications

1  submitted with motion for attorneys' fees where parties executed confidentiality

2  agreements before participating in JAMS mediation).

3  **B. DMF's Motion to Strike**

4  DMF moves to strike mediation privileged communications AMP Plus submitted

5  in support of its Rule 68 Motion.  See generally, Memo, Docket Nos. 934-1, 940 (sealed).

6  AMP Plus discussed the communications in its reply (Reply, Docket Nos. 911, 917

7  (sealed)) at 8:14-28, and in the Declaration of Brandon Cohen ("Cohen Decl."), Docket

8  Nos. 911-3, 917-1 (sealed).  AMP Plus filed the mediation emails, which summarized the

9  parties' settlement efforts and positions for Judge McKinnon, at Docket Nos. 911-1, 917-

10 2 (sealed).  AMP Plus responds that it appropriately disclosed the email to rebut DMF's

11 account of the mediation, as discussed in DMF's opposition brief to the Rule 68 Motion.

12 Opp'n, Docket No. 956 at 2.

13 The briefing surrounding this issue is largely wasteful.  Both parties provide lengthy

14 discussions rehashing issues briefed in connection with both the Rule 68 Motion and

15 Motion for Attorneys' Fees and summarizing mediation communications.  Both parties

16 fault each other for disclosing confidential mediation communications and justify

17 additional disclosures to mitigate prejudice.  The Court declines to assign blame here.  The

18 law in this area is straightforward.  Communications made during or for purposes of

19 mediation are confidential and should be stricken when disclosed in support of post-trial

20 motions.  See § II.A.3, supra.  The Court **STRIKES** all discussions and disclosures of

21 confidential mediation communications from all briefing and documents filed in

22 connection with both the Rule 68 Motion and DMF's Motion to Strike, by either party.

23 As to the specific material to which DMF objects, the email chain (Docket No. 913-

24 3) appears to be a communication, including portions of a draft settlement agreement,

25 prepared in connection with mediation in this case.  Accordingly, the Court **STRIKES** the

26 document itself (Docket Nos. 911-1, 917-2 (sealed)), the summary of the document at

27 8:14-28 of AMP Plus's reply brief (Docket Nos. 911, 917 (sealed)), and the portions of

28

the Cohen Decl. (Docket Nos. 911-3, 917-1 (sealed)) at ¶¶ 5-8 discussing the document. DMF also appears to object to footnote 12 on page 8 of AMP Plus's reply brief, which references portions of DMF's Rule 68 Offer.  Reply, Docket Nos. 911, 917 (sealed) at 8, fn. 12 (citing DMF's Rule 68 Offer, Docket No. 840-5 ¶ 8).  DMF's offer is separate from AMP Plus's offers and is not at issue in any pending motion.  The Court **STRIKES** this material.  To the extent AMP Plus maintains that material improperly disclosed by DMF justifies AMP Plus's improper disclosures, the Court rejects that argument and instead strikes all improper disclosures, as indicated above.  The Court also declines to consider any supplemental materials submitted by either DMF or AMP Plus in connection with DMF's Motion to Strike.

For the foregoing reasons, DMF's Motion to Strike is **GRANTED**.  The Court declines to impose any sanctions here, beyond striking most of the material submitted by both sides in connection with this Motion.

### C. Motion for Costs

AMP Plus moves to apply the cost-shifting provision of Fed. R. Civ. P. 68(d) and L.R. 54-8.  Memo, Docket No. 891-1 at 1.  AMP Plus made four Rule 68 Offers of Judgment to DMF (Docket Nos. 840-1 to 840-4), as summarized in the table below:

|  | Offer 1 | Offer 2 | Offer 3 | Offer 4 |
|---|---|---|---|---|
| Date | April 25, 2019 | May 19, 2020 | April 28, 2023 | March 29, 2024 |
| Amount | $100,526 | $526,000 | $177,965 | $100,000 |
| Attorney Fees and Costs | Included. | Included. | Not included. DMF can seek costs and fees exceeding the amount offered. | Included. |

| Scope of Injunction | Selling or offering Versions 1, 2, and 3 of the ELL modules | Selling or offering Versions 1, 2, and 3 of the ELL modules | Preliminary injunction becomes final | Preliminary injunction becomes final |
|---|---|---|---|---|

Memo, Docket No. 891-1 at 6.  DMF rejected all four offers.  Id.  Following the bench trial regarding liability and damages, the Court found AMP Plus liable for infringement, awarded DMF $15,940.60, and entered a permanent injunction.  See § I, supra.

### 1.  The Rule 68 Cost-shifting Provision Applies Here

At the outset, DMF does not dispute that AMP Plus's Rule 68 offers were valid. See Memo, Docket No. 891-1 at 8; Reply, Docket Nos. 911, 917 (sealed) at 1.  The only remaining question is whether any of the offers were more favorable that the judgment. AMP Plus has the burden to prove its offers were more favorable.  Fernandez v. Long Beach Unified Sch. Dist., No. 2:21-CV-01215-SVW-SK, 2021 WL 5918319, at *3 (C.D. Cal. Sept. 15, 2021) (citations omitted).  All four offers are facially more favorable because the amount offered exceeds the judgment amount and each offer includes a permanent injunction covering the Versions 1, 2, and 3 products.

DMF argues the offers were not more favorable because (1) some offers do not preclude all acts of infringement; (2) no offer would not have created res judicata as to future infringement based on new products; (2) AMP Plus did not admit liability in any offer; (3) no offers finally resolve AMP Plus's invalidity counterclaim; (4) some offers would finally resolve DMF's trademark and unfair competition claims, as opposed to merely dismissing these claims without prejudice; and (5) the amount in some offers is less favorable than the judgment because those offers included attorneys' fees and costs in the settlement amount.  See generally Opp'n, Docket Nos. 894, 899 (sealed).  The Court considers each of these arguments.

Acts of Infringement.  The proposed injunction in Offers 1 and 2 prevents only "selling" and "offering" the Versions 1, 2, and 3 products, as opposed to "making, using, selling, offering to sell, and importing into the United States" the Versions 1, 2, and 3 products.  Compare Offer 1, Docket No. 840-1 and Offer 2, Docket No. 840-2 with Final Judgment and Permanent Injunction, Docket No. 885.  AMP Plus argues this difference is "not substantial."  Reply, Docket Nos. 911, 917 (sealed) at 18 (citing SunEarth, Inc. v. Sun Earth Solar Power Co., No. C 11-4991 CW, 2014 WL 1569494, at *3 (N.D. Cal. Apr. 18, 2014)).  The SunEarth court found minor differences between a preliminary and permanent injunction insubstantial.  2014 WL 1569494, at *3.  The Court agrees that this difference is not substantial within the context of this case.  The relevant infringing acts are selling and offering to sell the accused products.  See Order re Preliminary Injunction, Docket Nos. 147, 148 (sealed) § IV.C.  One communication DMF relies upon proposes an injunction restricting all forms of infringement, including other terms, but includes no further discussion about why restricting the additional forms of infringement was important.  See April 25, 2019 Email Exchange, Docket No. 896-3.[2]  Accordingly, the Court does not find Offers 1 and 2 less favorable than the judgment.

Scope of Injunction.  DMF argues that none of the offers are more favorable than the judgment because the permanent injunctions proposed in those offers have a more limited scope than the permanent injunction DMF obtained.  Opp'n, Docket Nos. 894, 899 (sealed) at 20-21.  Specifically, DMF argues that the permanent injunctions proposed in the offers are all limited to only the Version 1, 2, and 3 products.  Id.  DMF argues that the scope of the permanent injunction it obtained is more expansive because it includes the Version 1, 2, and 3 products and products not more than colorably different from these products.  Id.  DMF relies on Panduit Corp. v. HellermannTyton Corp., 451 F.3d 819 (Fed. Cir. 2006) in support of its position.  Id. at 3.

---

[2]    DMF indicates this exchange was not part of the mediation even though it is labeled "Subject to Mediation Privilege."  See Docket No. 940 at 6-7.

Panduit involved a claim for breach of contract based on an out of court settlement agreement, which the Federal Circuit strictly construed. See 451 F.3d at 823-34. The Federal Circuit found that the settlement agreement was limited to only the specific product mentioned in the agreement and did not cover designs not colorably different from the named product. Id. at 826. The Panduit Court distinguished two previous decisions applying the "insubstantial differences" doctrine to determine the scope of injunctions. Id. at 826-27 (citing KSM Fastening Sys., Inc. v. H.A. Jones Co., 776 F.2d 1522 (Fed. Cir. 1985) and Foster v. Hallco Mfg. Co., 947 F.2d 469 (Fed. Cir. 1991)). It explained that unlike in these injunction cases, the inquiry in Panduit "is not a comparison between an accused and an adjudged device, but rather the interpretation of [the] express provision." 451 F.3d at 826-27.

Here, Panduit does not apply to Offers 1 and 2. The proposed injunctions in Offers 1 and 2 precluded ELCO from selling or offering to sell the Version 1, 2, and 3 products. Offer 1, Docket No. 840-1; Offer 2, Docket No. 840-2. Had DMF accepted either Rule 68 Offer, a consent decree would have issued including an injunction precluding AMP Plus from selling or offering to sell the Version 1, 2, and 3 products. The scope of that injunction would have been interpreted by applying the doctrine of insubstantial differences. KSM, 776 F.2d at 1526, overruled on other grounds by TiVo Inc. v. EchoStar Corp., 646 F.3d 869 (Fed. Cir. 2011) ("[W]here an injunction is written narrowly against a particular infringing device, contempt may, nevertheless, be found on the basis of a modified infringing device . . . . Again, the standard is whether the differences between the two devices are merely colorable.").

Panduit also does not apply to Offers 3 and 4. Offers 3 and 4 proposed that the preliminary injunction become permanent. Offer 3, Docket No. 840-3; Offer 4, Docket No. 840-4. The preliminary injunction enjoined the Versions 1, 2, and 3 products "or any other products that infringe the Patent." See Order re Preliminary Injunction, Docket Nos. 147, 148 (sealed) § V. Thus, unlike the settlement agreement in Panduit, these injunctions

would not have been limited to the specific listed products. Offers 3 and 4 are more like the scenarios in the <u>KSM</u> and <u>Foster</u> cases discussed in <u>Panduit</u>. Accordingly, Offers 3 and 4 are not less favorable than the judgment.

Relatedly, DMF appears to argue that the judgment is more favorable than any of the offers because it precludes future products. <u>See</u> Opp'n, Docket No. 894, 899 (sealed) at 25. That is not correct. The insubstantial differences doctrine applies. This inquiry is the same that would occur based on the resulting consent decree had DMF accepted any of the Rule 68 Offers.

<u>Admission of Liability</u>. At the hearing, DMF indicated it does not contend that the Rule 68 Offers are less favorable solely because they did not include an admission of liability. Accordingly, the Court does not consider this issue here.

<u>ELCO's Invalidity Counterclaim</u>. Unlike the judgment, none of the offers finally resolve ELCO's counterclaim that the '266 Patent is invalid. DMF argues that this renders the offers less favorable than the judgment. <u>See</u> Opp'n, Docket No. 894, 899 (sealed) at 14. DMF cites <u>Scosche Indus., Inc. v. Visor Gear Inc.</u>, 121 F.3d 675 (Fed. Cir. 1997) in support of its argument. <u>Id</u>. In <u>Scosche</u>, the accused infringer brought a declaratory judgment action against the patentee seeking a determination that the design patent at issue was not infringed and invalid. 121 F.3d at 676. The patentee brought a counterclaim for infringement. <u>Id</u>. The accused infringer then made a Rule 68 offer with respect to the infringement counterclaim. <u>Id</u>. The Rule 68 Offer did not, and could not have, encompassed invalidity because that was one of the accused infringer's claims. Only the party defending itself against a particular claim "may make an offer of settlement under Rule 68." <u>Id</u>. at 679. Here, AMP Plus could only have made a Rule 68 Offer with respect to infringement because that was DMF's claim. AMP Plus could not have made a Rule 68 Offer resolving its own counterclaim. <u>Simon v. Intercontinental Transp. (ICT) B.V.</u>, 882 F.2d 1435, 1439 (9th Cir. 1989) ("Rule 68, by its terms, applies to offers made by 'a party defending against a claim.'") (citing Fed. R. Civ. P. 68). Accordingly, the Court

does not find any of the offers less favorable solely because they did not dispense with AMP Plus's invalidity counterclaim.

Further, if DMF had accepted one of AMP Plus's offers, the Court would have entered a consent judgment finally resolving DMF's infringement claim. The infringement allegation is what creates a case or controversy here triggering the invalidity counterclaim. Accordingly, after entry of the consent judgment, the Court would not retain jurisdiction to consider the invalidity counterclaim. See Continuing Educ. Council Inc. v. Starks Realty Grp. Inc., No. CV-16-01641-PHXSRB, 2017 WL 5749772, at *3 (D. Ariz. Oct. 3, 2017) (finding "lack of subject matter jurisdiction favors dismissal without prejudice" as to "counterclaims [] not encompassed by the Rule 68 judgment").

Fees and Costs. "Where a Rule 68 offer explicitly states that it is inclusive of prejudgment interest and pre-offer costs and attorneys' fees, the judgment to which the offer is compared must include these items if they are awarded. Champion Produce, Inc. v. Ruby Robinson Co., 342 F.3d 1016, 1020 (9th Cir. 2003). "Only pre-offer costs and attorneys' fees are included for purposes of comparison, because post-offer costs and fees merely offset part of the expense of continuing the litigation to trial and should [therefore] not be included in the calculus." Id. (internal citations and quotations omitted). Here, Offer 3 does not include costs and attorneys' fees. The remaining offers do. Thus, to determine whether Offers 1, 2, and 4 are more favorable than the judgment, the Court must determine whether DMF would have been entitled to attorneys' fees and must determine the amount of costs that DMF incurred.

For the reasons discussed below, DMF is not entitled to attorneys' fees in this case. See § III.C, infra. Thus, whether Offers 1, 2, and 4 are more favorable than the judgment does not turn on attorneys' fees. As the prevailing party with respect to AMP Plus, DMF would have been entitled to its reasonable costs. See Fed. R. Civ. P. 54(d); C.D. Cal. L.R. 54-1. DMF's costs for the entire litigation are $174,733.54. See § II.D, infra. The damages award in the judgment and DMF's costs total $190,674.14. Thus, any offer

exceeding this amount is more favorable than the judgment. At $526,000, Offer 2 exceeds this amount and is more favorable than the judgment. Offers 1 and 4 do not exceed this amount. However, as to Offers 1 and 4, DMF would only be entitled to the costs it incurred before AMP Plus extended the offers. Champion Produce, 342 F.3d at 1020. The amount of Offer 1, $100,526, less the amount of the judgment, $15,940.60, is $84,585.40. Thus, Offer 1 would be at least as favorable as the judgment so long as DMF did not incur more than $84,585.40 in costs before AMP Plus extended Offer 1. DMF did not submit a breakdown of its costs incurred before each Rule 68 Offer. However, AMP Plus reviewed DMF's costs and determined a breakdown, which is set forth in AMP Plus's reply brief and supporting documents. AMP Plus represents that at the time of Offer 1, DMF's costs totaled only $17,192.25. Reply, Docket No. 917 at 15. DMF did not object to these calculations at hearing. The Court accepts AMP Plus's breakdown of DMF's costs. At the time of Offer 1, DMF incurred only $17,192.25 in costs, which is less than $84,585.40. Accordingly, the judgment is not more favorable than Offer 1.

Trademark and Unfair Competitions Claims. DMF argues that Offers 3 and 4 "would extinguish DMF's trademark and unfair competitions claims that the parties dismissed without prejudice." Opp'n at 14. Offer 3 states, "Judgment is entered . . . as to all claims Plaintiff DMF, Inc. . . . has asserted in this action, exclusive of costs and attorneys' fees." Offer 3, Docket No. 840-3 at 1; see also id. ("This Offer of Judgment is intended to resolve all claims Plaintiff has asserted in this action, other than claims for costs or attorneys' fees . . . ."). Offer 4 includes similar language. See Docket No. 804-4. The offers are not limited to pending claims or to DMF's infringement claim. If either were accepted, the resulting consent judgment would finally resolve DMF's claims for direct, indirect, and willful patent infringement, as well as trademark infringement and unfair competition. See generally, Complaint, Docket No. 1. The Court dismissed DMF's trademark infringement and unfair competitions claims without prejudice. Order Dismissing without Prejudice Trademark and Unfair Competition Claims, Docket No.

561.  The judgment also confirms that "[a]ll other claims and/or counterclaims by any party are dismissed without prejudice . . . ."  Final Judgment, Docket No. 886 ¶ 6.

The Court does not find that whether the trademark and unfair competitions claims are dismissed with or without prejudice to be a substantial factor in considering whether the offers are more favorable than the judgment.  Moreover, Offers 1 and 2 do not include the language at issue and each provide an independent basis to grant AMP Plus's motion.

For the foregoing reasons, the Court finds that Offers 1, 2 and 3 are at least as favorable as the judgment DMF obtained.  Accordingly, the Court **GRANTS** AMP Plus's Motion.  Because Offer 1 is the earliest more favorable offer, the Court awards AMP Plus all costs incurred after the date that offer was extended on April 25, 2019.

### 2.  AMP Plus is Entitled to Costs Incurred after the First Offer

AMP Plus is entitled to all reasonable costs incurred after April 25, 2019.  AMP Plus indicates these costs amount to $34,292.51.  Memo, Docket No. 891-1 at 9.  AMP Plus **SHALL** prepare an application to tax costs from this period through the end of the litigation.  DMF shall bear its own costs incurred after April 25, 2019.  Champion Produce, Inc. v. Ruby Robinson Co., 342 F.3d 1016, 1026 (9th Cir. 2003) ("A plaintiff that rejects a Rule 68 offer in excess of the judgment ultimately obtained at trial must bear its own and the defendant's post-offer costs.") (citation omitted).

### D. DMF's Application to Tax Costs

AMP Plus objects to DMF's Application to Tax Costs (Docket No. 892) in several respects.  Obj., Docket No. 897.  DMF filed a response.  Resp., Docket No. 904.

1.    The Court grants AMP Plus's Rule 68 Motion, as discussed above.  AMP Plus's objection to DMF's costs on Rule 68 grounds is **MOOT** given this ruling.  DMF is not entitled to any costs incurred after AMP Plus extended the first Rule 68 Offer on April 25, 2019.  To the extent any of the objections pertain to costs that DMF incurred after AMP Plus extended the first Rule 68 Offer, those objections are moot.  The Court still needs to consider DMF's Application to Tax Costs because (1) DMF is entitled to costs

incurred before the first Rule 68 Offer and (2) the Court must determine what DMF's costs would have been to determine whether the offers were more favorable than the judgment.

2.     AMP Plus argues that DMF may only recover half of its costs because it only prevailed as to AMP Plus but not the other defendant, ELI.  Objections, Docket No. 897 at 1.  The Court cannot practically untangle the costs associated with AMP Plus from the costs associated with ELI.  Further, DMF likely would have incurred the same costs even if it proceeded only against AMP Plus.  See Eljay Ltd. v. Transcon Cargo, Inc., No. CV 04-1136 CAS (CTX), 2006 WL 8563382, at *1 (C.D. Cal. May 3, 2006).  AMP Plus cites GATX/Airlog Co. v. Evergreen Int'l Airlines, Inc., No. C 96-2494 CW, 2002 WL 35651304, at *3 (N.D. Cal. June 24, 2002) in support of its argument.  That case involved an apportionment between two prevailing plaintiffs.  Here, the issue is how costs should be determined in an action in which the plaintiff prevailed only as to one defendant but not the other.  Eljay addressed this situation.  Accordingly, the Court follows the reasoning in Eljay.  The Court **OVERRULES** this objection.

3.     AMP Plus argues that DMF is not entitled to costs under Tab 4 (transcripts) or Tab 6 (witness fees) because it filed the supporting documentation one day late.  Objections, Docket No. 897 at 1-2.  AMP Plus does not make any substantive challenge to these costs.  The Court **OVERRULES** this objection.

4.     AMP Plus objects to DMF's request for costs for fees for service of process as excessive.  Objections, Docket No. 897 at 3.  DMF requests $30,546.27 for this category.  DMF's Appl., Docket No. 892.  The Court **SUSTAINS-IN-PART** the objection.  The parties agree that the charge for service on ELI, $212.55, should be eliminated.  Objections, Docket No. 897 at 3.  The Court also agrees that the number of subpoenas DMF served in this case was excessive.  AMP Plus's argument that the costs are excessive because it incurred far less costs in the same category is not persuasive.  See Obj, Docket No. 897 at 3.  The parties were situated differently with respect to third party witnesses.  Response, Docket No. 904 at 3-4.  Still, the number of subpoenas (nearly 80)

13

is excessive given the scope of the litigation. Accordingly, the Court awards only 50% of the costs sought in this category.

5.     AMP Plus objects to the fees for Benya's trial and lodging as excessive because DMF initially included costs for eleven days. Objections, Docket No. 897 at 4. Benya testified on the first day of trial and was excused that day. Id. In its response, DMF clarifies that it only seeks costs for two days of trial attendance ($80), two nights of lodging ($439.22), and airfare ($369.98 and $517.99). The Court finds these adjusted costs reasonable.

6.     AMP Plus objects to DMF's fees for mandatory chambers copies. Objections, Docket No. 897 at 5. AMP Plus argues that fees for rush service are not taxable. Id. The Court agrees that rush premiums are not taxable costs and declines to award these costs, amounting to $1,295.75. AMP Plus also argues that DMF seeks excessive costs for chambers copies. Id. AMP Plus has not met its burden to show that the costs for chambers copies were excessive. The Court **SUSTAINS** the objection only as to the rush premiums.

7.     AMP Plus objects to the entirety of the Tab 10(g) costs (physically replicating or reducing materials). Objections, Docket No. 897 at 7-8. AMP Plus specifically objects to the $7,577.50 claimed cost for "e-Discovery Productions" but does not specifically object to any other costs. Id. It is not clear whether this material was prepared for DMF's own use, for the Court, or to give to AMP Plus. DMF also does not attach any agreement or order indicating that the material had to be formatted as prepared. L.R. 54-3.10(g). Accordingly, the Court **SUSTAINS** the objection.

8.     AMP Plus objects to DMF's request for "other costs" because it includes slides for DMF's expert and a physical exhibit. Objections, Docket No. 897 at 8. Costs for demonstratives used during trial are recoverable. See L.R. 54-3.12. AMP Plus has not met its burden to show these costs are improper. The objection is **OVERRULED**.

The Court determines that DMF's costs for the entirety of the litigation, given the rulings above, total $174.733.54. However, as discussed above, DMF is only entitled to costs incurred from the beginning of the litigation through April 25, 2019. Accordingly, DMF **SHALL** prepare a revised application to tax costs within the relevant period, consistent with these rulings.

### E. ELI's Application to Tax Costs

Though ELI is the prevailing party as between DMF and ELI, and ELI would ordinarily be entitled to its costs, there is no practical way to untangle the costs for ELI (prevailing defendant) from the costs for AMP Plus (non-prevailing defendant). See § II.D, ¶ 2, supra. Moreover, the Court granted AMP Plus's Rule 68 Motion, meaning AMP Plus is entitled to reasonable costs incurred after the first Rule 68 Offer. To award ELI full costs and AMP Plus full costs after the date Offer 1 was extended, would amount to awarding ELCO duplicate costs for the same litigation. Accordingly, the Court in its discretion declines to award ELI costs. As discussed above, AMP Plus shall be responsible for costs incurred before April 25, 2019 and DMF shall be responsible for costs incurred after April 25, 2019.

At the hearing, counsel for ELCO represented that it had assumed a fifty percent split would apply for the costs between ELI and AMP Plus. Counsel prepared ELI's Application to Tax Costs assuming this split. Counsel also determined AMP Plus's costs, as discussed in the above ruling on the Rule 68 Motion, assuming this split. Thus, counsel requested only fifty percent of the total costs for ELI and requested only fifty percent of the costs incurred after Offer 1 for AMP Plus. The Court declines to apply a fifty percent split for the reasons articulated above and finds it more sensible to consider costs to ELCO as a whole. Accordingly, ELCO **SHALL** file a revised application to tax costs. The revised application shall eliminate the assumed fifty percent split and shall be updated consistent with the ruling on the Rule 68 Motion, above. The objections to ELI's Application to Tax Costs are **MOOT**.

### III.    MOTIONS CONCERNING ATTORNEYS' FEES

### A. Legal Standard

Under the Patent Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  Although the Patent Act does not define "exceptional," the Supreme Court has construed it in this context to have its ordinary meaning, *i.e.*, "'uncommon,' 'rare,' or 'not ordinary.'" <u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 572 U.S. 545, 553 (2014).  Thus, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." <u>Id</u>. at 554.  Section 285 discourages certain "exceptional" conduct by imposing the cost of bad decisions on the decision maker.

District courts determine whether a case is exceptional "considering the totality of the circumstances." <u>Id</u>.  Fees may be awarded where "a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless" exceptional. <u>Id</u>. at 555. "A case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." <u>Id</u>.  A party must prove its entitlement to fees by a preponderance of the evidence. <u>Id</u>. at 557-58.  Other factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." <u>Id</u>. at 554 & n.6 (quotations omitted).

In the companion case to <u>Octane Fitness</u>, the Supreme Court held that "[b]ecause § 285 commits the determination whether a case is 'exceptional' to the discretion of the district court, that decision is to be reviewed on appeal for abuse of discretion." <u>Highmark Inc. v. Allcare Health Mgmt. Sys.</u>, 572 U.S. 559, 563 (2014).  The abuse-of-discretion standard applies to "all aspects of a district court's § 285 determination." <u>Id</u>. at 564.

### B. Motion to Strike

AMP Plus moves to strike improper attorney argument from the Declaration of Ben M. Davidson ("Davidson Decl.," Docket Nos. 901-1, 907 (sealed)) filed in support of DMF's Motion for Attorneys' Fees. Memo, Docket No. 920-1 at 1. AMP Plus argues the Davidson Decl. is excessive in length, includes improper legal argument, and is an attempt to circumvent applicable word count limitations. Id. AMP Plus asks the Court to strike the material at ¶¶ 27-74. Id. DMF faults AMP Plus for failing to sufficiently analyze the objectionable paragraphs. Opp'n, Docket No. 952 at 2.

Declarations should "set forth facts as would be admissible in evidence." King Cnty. v. Rasmussen, 299 F.3d 1077, 1082 (9th Cir. 2002) (citation omitted); see also C.D. Cal. L.R. 7-7 ("Declarations shall contain only factual, evidentiary matter . . . ."). They "should not be used to make an end-run around the page limitations . . . by including legal arguments outside of the briefs." Id. (citations omitted). Courts typically sustain objections to declarations to the extent the declaration "contains legal arguments or statements beyond the declarant's personal knowledge." Indep. Living Ctr. of S. California v. Kent, No. 208CV03315CASMANX, 2019 WL 3717793, at *10, fn.8 (C.D. Cal. Aug. 6, 2019). Courts overrule objections to declarations that "contain information about which [the declarant] has personal knowledge." Id.

Here, the Court agrees that the Davidson Decl. is improper to the extent it includes attorney argument instead of facts within Davidson's personal knowledge. See Davidson Decl. ¶ 27 (characterizing AMP Plus's litigating positions as "meritless," "non-sensical" or "frivolous.") However, the Court finds AMP Plus's Motion largely unnecessary because the objectionable portions of the Davidson Decl. were not useful in resolving DMF's Motion for Attorneys' Fees. Much of the declaration duplicates arguments made in the briefing. DMF also cites the Davidson Decl. in only a few places in its memorandum in support of its motion for attorneys' fees. See Motion, Docket Nos. 901, 906 (sealed) at 13, fn. 28 (citing Davidson Decl. ¶¶ 67-68) and 16, fn. 45 (citing Davidson Decl. ¶¶ 46-

17

49).  Accordingly, because the Court did not consider the objectionable portions of the Davidson Decl., AMP Plus's Motion is **DENIED AS MOOT**.

### C. Motion for Fees

At the outset, DMF's rejection of AMP Plus's Rule 68 Offers weighs against a fee award here.  Haworth v. State of Nev., 56 F.3d 1048, 1052 (9th Cir. 1995) ("When a plaintiff rejects a Rule 68 offer, the reasonableness of an attorney fee award under the FLSA will depend, at least in part, on the district court's consideration of the results the plaintiff obtained by going to trial compared to the Rule 68 offer.")  Though this is not an FLSA case, the reasoning here applies to the 35 U.S.C. § 285 fee provision.

However, to compare the favorability of the Rule 68 Offers and judgment, the Court needs to determine whether DMF would have otherwise been entitled to attorneys' fees. Considering the totality of the circumstances, DMF would not have been entitled to fees.

### 1. AMP Plus's Litigation Positions Were Not Objectively Baseless

First, though DMF did prevail on direct infringement of several claims of the '266 Patent, "each party has had some successes in its favor."  Willfulness Findings, Docket No. 739 ¶ 55.  DMF prevailed only as to AMP Plus but not as to ELI.  FFCL § VI.  DMF did not prevail as to induced infringement of Claims 16 and 30.  Id.  DMF also did not prevail on its claim for willful infringement.  Willfulness Findings, Docket No. 739 § V. The parties indicated this issue was important and that an early trial on willfulness would be a more efficient use of party and court resources.  See Order re Trial Procedures, Docket No. 675.  Independently sanctionable conduct, such as willful infringement, is not necessary for an exceptional case finding.  Octane, 572 U.S. at 555.  Still, taken together, the mixed result here and loss on the important issue of willfulness cuts against a finding that this case is exceptional.

Second, DMF's arguments regarding AMP Plus's invalidity positions are not entirely correct.  DMF faults AMP Plus for continuing to raise the same rejected invalidity arguments both throughout the course of this litigation and before the PTAB.  Motion,

Docket Nos. 901, 906 (sealed) at 1-8.  However, as discussed below, AMP Plus did not raise the same grounds at trial and before the PTAB.  See § IV.D, infra.  Additionally, the Court found a genuine issue of material fact as to the invalidity claims at the summary judgment stage and allowed these claims to proceed to the bench trial stage.  Summary Judgment Order, Docket No. 499 at 22-23 (discussing obviousness based on Imtra) and 27 (discussing Kim reference).  This suggests that AMP Plus's arguments were not "objectively baseless."  Even though the Court did not find the arguments sufficiently persuasive to warrant denial of the preliminary injunction, the applicable standard at each stage of the litigation is different.  The inquiry at the preliminary injunction stage is whether the evidence, on a not yet fully developed record, creates a substantial question of invalidity.  See Preliminary Injunction Order, Docket Nos. 147, 148 (sealed) at 16.  The inquiry at the summary judgment stage is whether there is a genuine dispute of material fact, based on a developed evidentiary record.  Summary Judgment Order, Docket No. 499 at 3-4.  The inquiry at trial is whether the defendant can establish invalidity by clear and convincing evidence.  See FFCL ¶ 51.  At most, AMP Plus's arguments were ultimately not persuasive at both the trial and preliminary injunction stage.  This is not enough to warrant an exceptional case finding.  SFA Sys., LLC v. Newegg Inc., 793 F.3d 1344, 1348 (Fed. Cir. 2015) (citing Octane Fitness, 572 U.S. at 545) ("[I]t is the 'substantive *strength* of the party's litigating position' that is relevant to an exceptional case determination, not the *correctness* or eventual success of that position." (emphasis in SFA Sys.).

DMF's arguments regarding unenforceability, indefiniteness, and non-infringement fail for similar reasons.  At most DMF establishes that AMP Plus's positions were ultimately not persuasive.  See Summary Judgment Order, Docket No. 499 at 9-10 (discussing "closer to" limitation) and 32-33 (discussing unclean hands defense).  DMF fails to establish that the arguments were "so meritless as to stand out from the norm."  Munchkin, Inc. v. Luv N' Care, Ltd., 960 F.3d 1373, 1380 (Fed. Cir. 2020).  The Court

1    also does not make much of the fact that it found some of these arguments unpersuasive

2    at multiple stages of litigation given the differences in the applicable legal standard.

3            2.  <u>Both Parties' Unreasonable Conduct Extended this Litigation</u>

4            To decide a motion for attorneys' fees, courts may consider both parties' conduct.

5    <u>Stone Basket Innovations, LLC v. Cook Med. LLC</u>, 892 F.3d 1175, 1181 (Fed. Cir. 2018)

6    ("The District Court was well within its discretion to factor in Cook's litigation conduct,

7    because the conduct of the parties is a relevant factor under *Octane*'s totality-of-the-

8    circumstances inquiry, including the conduct of the movant.") (internal citations and

9    quotations omitted).  Here, both parties litigated this case in an unreasonable manner.  The

10   Court will not expressly discuss every instance of unreasonable conduct but describes

11   some exemplary instances.

12           DMF litigated unreasonably.  For example, DMF served a "token ambush letter"

13   and then filed suit.  Willfulness Findings, Docket No. 739 ¶ 73.  AMP Plus also litigated

14   unreasonably.  For example, the Court had to admonish AMP Plus for discussing

15   settlement during the merits portion of the case.  Oct. 2, 2023 Hearing Tr., Docket No. 747

16   at 45:19-23.  Both parties rehashed decided issues throughout the course of this litigation.

17   <u>See</u> <u>Pirri v. Cheek</u>, 851 F. App'x 183, 188 (Fed. Cir. 2021).  For instance, DMF raised the

18   IPR estoppel issue concerning grounds involving the Imtra Hatteras reference several

19   times despite already receiving an unfavorable ruling.  <u>See</u> § IV.D, <u>infra</u>.  AMP Plus raised

20   the "closer to" and "dissipates heat" limitations again during the liability bench trial even

21   though the Court resolved those issues at the summary judgment stage.  <u>See</u> FFCL ¶¶ 24,

22   28.  AMP Plus also attempted to make an indefiniteness argument foreclosed by the

23   Court's claim construction order.  <u>Id</u>. ¶ 21.  Both parties also provided excessive briefing

24   on irrelevant and sometimes inappropriate issues.  For instance, both parties included

25   excessive discussions of confidential settlement communications in the briefing on the

26   Rule 68 Motion, this Motion for Attorneys' Fees, and DMF's Motion to Strike.  Because

27   both parties litigated unreasonably, awarding fees would not advance considerations of

28

compensation or deterrence.  See Octane, 572 U.S. at 554 (2014).  Awarding fees here would reward DMF's unreasonable litigation conduct solely because it happened to prevail on the merits, at least with respect to AMP Plus.  In its discretion, the Court finds a fee award based on the manner of litigation inappropriate here.

Accordingly, considering the totality of the circumstances, the Court **DENIES** DMF's Motion for Attorney Fees.

### IV.    MOTIONS TO ALTER JUDGMENT

#### A. Legal Standard

Under Fed. R. Civ. P. 52(b), "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings-or make additional findings and may amend the judgment accordingly."  "Motions made pursuant to Rule 52(b) 'are designed to correct findings of fact which are central to the ultimate decision." DCR Mktg. Inc. v. U.S. All. Grp., Inc., No. 819CV01897NSDFMX, 2023 WL 3152292, at *1 (C.D. Cal. Mar. 9, 2023) (quoting ATS Prods. Inc. v. Ghiorso, No. Cl0-4880, 2012 WL 1067547, at *1 (N.D. Cal. Mar. 28, 2012)).  Rule 52(b) "is not intended as a vehicle for securing a rehearing on the merits."  Id. (quoting Heikkila v. Barber, 164 F. Supp. 587, 592 (N.D. Cal. 1958)).  "Rule 52(b) motions are appropriately granted in order to correct manifest errors of law or fact or to address newly discovered evidence or controlling case law." Pan v. Tom Ming Chou, No. SACV1501528NSKESX, 2019 WL 1877445, at *3 (C.D. Cal. Feb. 6, 2019), aff'd sub nom. Pan v. Chou, 848 F. App'x 232 (9th Cir. 2021).  "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion."  Id. (quoting Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011)).

Fed. R. Civ. P. 59(e) permits "[a] motion to alter or amend a judgment [to] be filed no later than 28 days after the entry of the judgment."  "However, absent 'other, highly unusual circumstances,' reconsideration pursuant to Rule 59(e) [is appropriate] only where the court is presented with newly discovered evidence, the court committed clear error or

the initial decision was manifestly unjust, or there is an intervening change in controlling law." DCR, 2023 WL 3152292, at *2 (quoting Sch. Dist. No. lJ, Multnomah Cnty. v. AcandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993)). "Relief under Rule 59(e) is 'an extraordinary remedy which should be used sparingly.'" Nguyen v. Regents of Univ. of Cal., No. SACV1700423NSKESX, 2019 WL 3017678, at *1 (C.D. Cal. Mar. 25, 2019) (quoting Allstate, 634 F.3d at 1111).

Under Rule 60(b), the court may grant reconsideration of a final judgment, and any order based on: "(1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) extraordinary circumstances which would justify relief." Multnomah, 5 F.3d at 1263. Any Rule 60(b) motion must be brought within a reasonable time and, in certain circumstances, no later than one year after entry of judgment or the order being challenged. See Fed. R. Civ. P. 60(c)(1). "Rule 60(b) is meant to be remedial in nature and therefore must be liberally applied." Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984).

### B. DMF's Motion re Prevailing Party Issue

DMF has withdrawn its Motion Under Rule 52(b) that DMF is the Prevailing Party on Defendant ELI's Declaratory Judgment Counterclaims (Docket No. 910). Notice of Withdrawal, Docket No. 964.

### C. AMP Plus's Rule 52(b) and Rule 60(b) Motions

AMP Plus filed two motions, both titled "Motion to Alter Judgment under Rule 52(b) and Rule 60(b)" at Docket Nos. 626 and 627. These filings are identical. The Court considers only the filing at Docket No. 627.

In the filing at Docket No. 627, AMP Plus requests two amendments to the judgment. First, AMP Plus asks the Court to remove the "inducing" language from the permanent injunction. Memo, Docket No. 927-1 at 1. Second, AMP Plus asks the Court to vacate its infringement finding with respect to Claim 25 based on a recent Federal Circuit decision. Id. For the following reasons, AMP Plus's Motion is **DENIED**.

1    1. <u>The Inducing Language</u>

2    The permanent injunction currently prevents AMP Plus from "(a) making, using,

3    selling, offering to sell, and importing into the United States Versions 1, 2, and 3 of the

4    Residential ELL LED Module products and any products not more than colorably different

5    from these products and (b) inducing anyone to perform any of the foregoing acts."

6    Amended Final Judgment and Permanent Injunction, Docket No. 886 ¶ 7. After the bench

7    trial regarding liability and damages, the Court found that Plaintiff had not shown induced

8    infringement of either Claim 16 or Claim 30. FFCL ¶ 155. DMF did not assert induced

9    infringement for any other claims. <u>See</u> <u>Id</u>. § VI ¶ 1. Thus, the injunction did not need to

10   include induced infringement. Still, the scope of the injunction is not improper. Just

11   because AMP Plus was not found liable for induced infringement at the bench trial does

12   not mean that AMP Plus may indirectly infringe the '266 Patent. In other words, even if

13   the Court were to omit the "inducing" language from the injunction, that would not

14   authorize AMP Plus to indirectly infringe. Accordingly, because omitting the "inducing"

15   language would not change either party's rights, the Court **DENIES** AMP Plus's motion

16   on this issue.

17   2. <u>Claim 25</u>

18   In its findings following the bench trial on liability, the Court found that "both

19   parties agreed that infringement of Claim 25 was resolved by the Court's summary

20   judgment order." FFCL ¶ 29; <u>see also</u> <u>id</u>. ¶ 135 ("Plaintiff has waived these issues."). The

21   summary judgment order evaluated Claim 1, not Claim 25, but the parties agreed that those

22   findings applied equally to Claim 25. <u>See generally</u> Summary Judgment Order, Docket

23   No. 499; Second Pretrial Order, Docket No. 652 at 1-2. The Court independently reasoned

24   that "the infringing system only needs to be connected to a building when in operation,

25   but a system may infringe the patent even when not in use." <u>Id</u>. ¶ 136.

26   The PTAB and Federal Circuit did not evaluate infringement. However, to support

27   its invalidity determination, the PTAB made findings as to the scope of Claim 25. <u>See</u>

28

generally Final Written Decision in IPR2019-01094 ("FWD"), Docket No. 926-2.  The PTAB found that Claim 25 "specifically require[s] installation in a building."  Id. at 8.  The PTAB ultimately found that the petitioner had not met its burden to prove unpatentability because it did not address whether the system disclosed in the prior art could be installed in a building.  Id. at 8-9.  The Federal Circuit affirmed this finding.  AMP Plus, Inc. v. DMF, Inc., 131 F.4th 1320, 1325 (Fed. Cir. 2025) (confirming that "ELCO failed to show the unpatentability of Limitation M of claim 22").

Here, the Court does not find that the Federal Circuit's ruling requires vacating the infringement finding.  The Federal Circuit did not address the circumstances under which a device infringes.  Rather, the decision faulted ELCO for not addressing the "installation in a building" portion of the claim.  This ruling could be consistent with the Court's determination at the bench trial that the system must be capable of being installed in a building but need not actually be installed in a building to infringe.  Accordingly, the Court **DENIES** AMP Plus's motion on this issue.

### D. DMF's Motion re New Authority

DMF asks the Court to amend the judgment to include findings that (1) AMP Plus infringes Claim 22 and (2) Claim 22 is not invalid over the prior art presented at the bench trial.  See generally, Memo, Docket No. 938-1.  DMF bases its request on the recent Federal Circuit ruling concerning Claim 22 of the '266 Patent.  Id. at 1, fn.1 (citing AMP Plus, Inc. v. DMF, Inc., 131 F.4th 1320 (Fed. Cir. 2025)).  The Federal Circuit affirmed the determination in Patent Trial and Appeal Board's ("PTAB") proceeding No. IPR2019-01094 that ELCO failed to show that Claim 22 is unpatentable.  AMP Plus, 131 F.4th at 1323, 1325.  Specifically, the Federal Circuit found that the petition did not sufficiently address the relevant claim language in Claim 22.  Id. at 1325.

At the outset, the Court will not amend the judgment with respect to infringement.  The Court never evaluated whether ELCO infringed Claim 22 because Claims 22 was not a part of the case.  Oct. 13, 2023 Hearing Tr., Docket No. 748 at 28:4-5 ("THE COURT:

I think [Claim 22 is] just simply out of the case based on the ruling."); DMF's Memorandum of Contentions of Fact and Law Post Willfulness Trial, Docket No. 765 at 2, fn. 5 ("Claim 22 itself will not be asserted at trial based on the Court's pretrial ruling on dismissing Claim 22 without prejudice."). The Federal Circuit ruling had nothing to do with infringement. At best, the Federal Circuit implicitly affirmed a PTAB claim construction determination that could have foreclosed certain infringement theories if Claim 22 were litigated. The ruling did not address the accused products and did not make any non-infringement finding.

As to invalidity, DMF misunderstands the Federal Circuit's ruling and ignores the Court's prior rulings on this very same issue. The Federal Circuit did not find Claim 22 valid over all prior art asserted in this case. Rather, the Federal Circuit found that ELCO failed to make a sufficient obviousness showing based on Imtra 2007 in view of Imtra 2011. AMP Plus, 131 F.4th at 1323, 1324. The Federal Circuit also affirmed the PTAB's finding that anticipation based on Imtra 2011 was an impermissible new ground that ELCO failed to raise in its petition. Id. at 1324 (finding ELCO's argument "meritless"). Id. at 1324-25. 35 U.S.C. § 315(e)(2) provides that a petitioner in an inter partes review ("IPR") proceeding may not assert "that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during the inter partes review" in a civil action. Accordingly, ELCO cannot argue that Claim 22 is obvious over Imtra 2011 in view of Imtra 2007 or anticipated by Imtra 2011. ELCO asserted a different reference, the Imtra Hatteras product, in this litigation. Order re Plaintiff's Motion that Issue Preclusion Bars Invalidity Challenge, Docket No. 613 at 10. Imtra Hatteras is system art. Id. System art cannot be asserted in IPR. Id. IPR estoppel does not apply. See Ingenico Inc. v. IOENGINE, LLC, No. 2023-1367, 2025 WL 1318188, at *7 (Fed. Cir. May 7, 2025).

DMF's issue preclusion argument fails for the same reason as its estoppel argument. Issue preclusion applies when "the identical issue was previously adjudicated." Kroy IP Holdings, LLC v. Groupon, Inc., 127 F.4th 1376, 1380 (Fed. Cir. 2025). The invalidity

grounds at issue in the IPR and subsequent appeal are different from the invalidity grounds asserted in this litigation. ELCO's assertion that "the evidence at trial confirms claim 22 is invalid" is also incorrect. <u>See</u> Opp'n at 18. The Court did not evaluate whether the Imtra Hatteras products rendered Claim 22 unpatentable at trial because Claim 22 is not in the case. ELCO is mistaken to assume that the Court would make an invalidity finding based on evidence presented in connection with other claims and issues. Further, DMF chooses to rehash an issue that this Court already decided. Order re Plaintiff's Motion that Issue Preclusion Bars Invalidity Challenge, Docket No. 613 at 10-11.

Finally, ELCO's improper request for sanctions is **DENIED**. <u>See</u> Opp'n at 948. The Court will not grant affirmative relief requested in an opposition brief.

For the foregoing reasons, the Court **DENIES** DMF's Motion.

## V.    CONCLUSION

For the foregoing reasons, the Court rules as indicated in the introduction section of this Order.

* * *

The Court orders the parties to meet and confer and, within 7 days, notify the Court via email to the Courtroom Deputy Clerk which parts of the sealed order should be redacted from the publicly filed version of the order. If the parties request that any portions of the order remain sealed, when submitting their request, they shall attach a copy thereof with proposed redactions for the Court's review.

IT IS SO ORDERED.

Dated: June 4, 2025

*Christine A. Snyde*

HONORABLE CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

Notice has been delivered by First Class U.S. Mail
to all counsel (or parties) at their last known address
of record in this action on this date

Date: June 04 2025, 9:20 am